1  SEYFARTH SHAW LLP
   William J. Dritsas (SBN 97523)
2  wdritsas@seyfarth.com
   560 Mission Street, 31st Floor
3  San Francisco, CA  94105-2930
   Telephone:    (415) 397-2823
4  Facsimile:    (415) 397-8549

5  SEYFARTH SHAW LLP
   Michael W. Kopp (SBN 206385)
6  mkopp@seyfarth.com
   400 Capitol Mall, Suite 2350
7  Sacramento, California 95814-4428
   Telephone:    (916) 448-0159
8  Facsimile:    (916) 558-4839

9  SEYFARTH SHAW LLP
   Timothy M. Rusche (SBN 230036)
10 E-mail:  trusche@seyfarth.com
   Mary Manesis (SBN 150372)
11 E-mail: mmanesis@seyfarth.com
   333 S. Hope Street, Suite 3900
12 Los Angeles, California 90071
   Telephone:    (213) 270-9600
13 Facsimile:    (213) 270-9601

14 Attorneys for Defendants

15 TESORO REFINING AND MARKETING COMPANY
   LLC and TESORO LOGISTICS GP, LLC

16

17              IN THE UNITED STATES DISTRICT COURT

18            FOR THE NORTHERN DISTRICT OF CALIFORNIA

19                   SAN FRANCISCO DIVISION

| | |
|---|---|
| 20 CHRIS AZPEITIA, EILEEN FOSTER, ANTONIO GARCIA, and SAMANTHA SCOTT, individually and on behalf of all similarly situated current and former employees, | Case No. 3:17-cv-00123-JST |
| 22 | CLASS ACTION |
| Plaintiffs, | NOTICE AND MOTION TO DISMISS |
| 23 v. | |
| 24 | Date:       April 27, 2017 |
| TESORO REFINING AND MARKETING COMPANY LLC, TESORO LOGISTICS GP, LLC, and DOES 1 through 10, inclusive | Time:       2:00 p.m. Dept:       Courtroom 9 - 19th Floor Judge:      Hon. Jon S. Tigar |
| 26 | Complaint Filed:  1/10/17 |
| Defendants. | |

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     PLAINTIFFS' ALLEGATIONS AND FACTUAL BACKGROUND ........................................ 3

        A.      Summary of Plaintiff's Factual Allegations and Theory of Liability. ................................. 3

        B.      Summary of Governing Collective Bargaining Agreements. ................................................ 4

        C.      Additional Collectively-Bargained Meal and Rest Period Policies at Wilmington ............ 8

        D.      The Collectively-Bargained Class Settlement of the *Burgess* and *Delagarza*
                Actions. ......................................................................................................... 9

III.    LEGAL ARGUMENT ........................................................................................... 11

        A.      Plaintiffs' Claims Are Preempted by the LMRA Because They Require
                Interpretation of the CBAs and Other Collectively-Bargained Agreements. ................... 11

                1.      Standard for Section 301 Preemption Under the LMRA. ...................................... 11

                2.      Plaintiffs' Claims Challenge Collectively Bargained Rest Break Policies,
                        and Require Interpretation of the CBAs and Negotiated Policies. ........................ 12

                3.      Plaintiffs' Claims Violate the Collectively Bargained Class Settlement,
                        and Interfere with the Collective Bargaining Obligations of Tesoro and
                        USW ...................................................................................................... 15

                4.      Plaintiffs' Claims Should Be Dismissed as Completely Preempted or for
                        Failure to Exhaust the CBA's Grievance and Arbitration Procedures. ................. 17

        B.      Plaintiffs' Derivative Claims that Fail to State a Viable Claim for Relief. ..................... 18

                1.      The Court Should Dismiss the Second Claim for Violation of Labor Code
                        Section 226 Because Wage Statements Need Not Include Unearned
                        Wages. .................................................................................................. 18

                        a.      Wage Statements Need Only List "Wages Earned." ............................... 18

                        b.      Claims For "Inaccurate Wage Statements" Cannot Be Predicted
                                Upon Rest Break Violations. ........................................................... 19

                2.      UCL Claims Cannot Be Predicated Upon Rest Break Penalties. ......................... 20

                3.      UCL Claims Cannot Be Predicated on Labor Code Section 226 Violations ........ 21

                4.      Plaintiffs May Not Seek Disgorgement of Profits Under the UCL. ..................... 21

                5.      Plaintiffs' PAGA Claim Fails to State a Claim for Relief. ................................ 22

                        a.      Plaintiffs Have Not Pleaded Facts Satisfying Administrative
                                Prerequisites for Recovery of PAGA Penalties. ................................. 22

i

b.      Plaintiffs' PAGA Claim Is Based on Inapplicable Labor Code Violations .......................................................................................22

i.      Plaintiffs Are Not Entitled To PAGA Penalties For Alleged Wage Statement Violations Because Labor Code Sections 226(e)(1), 226.3, and 226.6 Already Provide For Such Penalties. ...............................................................................23

ii.     Plaintiffs Are Not Entitled To PAGA Penalties For Alleged Rest Break Violations Under Labor Code Section 226.7(c)..........24

IV.     CONCLUSION............................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allis Chalmers Corp. v. Lueck,*
  471 U.S. 202 (1985)....................................................................................12, 17, 18

*Audette v. International Longshoremen's and Warehousemen's,*
  195 F.3d 1107 (9th Cir. 1999) .........................................................................16

*Buck v. Cemex, Inc.,*
  2013 WL 4648579 (E.D. Cal. Aug. 29, 2013) ...................................................15

*Burgess v. Tesoro Refining & Marketing Co.,*
  C.D. Cal., Case No. 10-5870-DMG .....................................................2, 9, 10, 15

*Burnside v. Kiewit Pac. Corp.,*
  491 F.3d 1053 (9th Cir. 2007) .........................................................................12

*Busey v. P.W. Supermarkets, Inc.,*
  368 F. Supp. 2d 1045 (2005) ...........................................................................18

*Carr v. Pacific Maritime Ass'n,*
  904 F.2d 1313 (9th Cir. 1990) .........................................................................18

*Cleveland v. Groceryworks.com, LLC,*
  2016 WL 4140504 (N.D. Cal. Aug. 4, 2016) .....................................................14

*Cole v. CRST, Inc.,*
  317 F.R.D. 141 (C.D. Cal. 2016) .......................................................................14

*Coria v. Recology, Inc.,*
  2014 WL 3885873 (N.D. Cal. Aug. 7, 2014) .....................................................14

*Curtis v. Irwin Indus.,*
  2016 WL 4975188 (C.D. Cal. Sept. 16, 2016) (Wright, J.)..................................17

*Delagarza v. Tesoro Refining & Marketing Co.,*
  N.D. Cal., Case No. 09-05803 EMC................................................... *passim*

*Duerson v. NFL,*
  2012 WL 1658353 (N.D. Ill. May 11, 2012) ....................................................14

*Frieri v. Sysco Corp.,*
  2016 WL 71882 (S.D. Cal. Dec. 12, 2016)........................................................20

iii

*General Teamsters, Auto Truck Drivers and Helpers Local 162 v. Mitchell Bros. Truck Lines,*
  682 F.2d 763 (9th Cir. 1982) ................................................................................16

*Gerardo Ayala v. Destination Shuttle Services LLC,*
  2013 WL 12092284 (C.D. Cal. Nov. 1, 2013)..........................................................15

*Hernandez v. Towne Park, Ltd.,*
  2012 WL 2373372 (C.D. Cal. June 22, 2012) ....................................................23, 25

*Hines v. Anchor Motor Freight, Inc.*
  424 U.S. 554 (1976).............................................................................................18

*Jones v. AT & T,*
  No. C 07–3888 JF, 2008 WL 902292 (N.D. Cal. Mar. 31, 2008) .............................4

*Jones v. Spherion Staffing LLC,*
   2012 WL 3264081 (C.D. Cal. August 7, 2012) ...............................................19, 21

*Kobold v. Good Sam. Reg'l Med. Ctr.,*
  832 F.3d 1024 (9th Cir. 2016) .........................................................................12, 17

*Lingle v. Norge Div. of Magic Chef, Inc.,*
  486 U.S. 399 (1988)...............................................................................................12

*Nguyen v. Baxter Healthcare Corp.,*
  2011 WL 6018284 (C.D. Cal., November 28, 2011)..........................................19, 25

*Parson v Golden State FC, LLC,*
  2016 WL 1734010 (N.D. Cal. May 2, 2016) .............................................................20

*Pette v. Int'l Union of Operating Engineers,*
  2016 WL 4596338 (C.D. Cal. Sept. 2, 2016) (Pregerson, J.) ..................................17

*Raphael v. Tesoro Refining and Marketing Co.,*
  LLC, 2015 WL 3970293 (C.D. Cal. June 30, 2015).....................................12, 13, 15

*Retail Clerks Intern. Ass'n, Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc.,*
  369 U.S. 17 (1962).................................................................................................16

*U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,*
  971 F.2d 244 (9th Cir. 1992) ...................................................................................9

*Rosenstein v. Pratt,*
  2016 WL 308593 (S.D. Cal. Jan. 25, 2016)......................................................23, 24

*Ruelas v. Costco Wholesale Corp.,*
  67 F. Supp. 3d 1137 (2014) ....................................................................................25

*Singletary v. Teavana Corp.*,
  2014 WL 1760884, at *4 (N.D. Cal. Apr. 2, 2014) .................................................25

*Tan v. GrubHub, Inc.*,
  171 F. Supp. 3d 998 (N.D. Cal. 2016) ....................................................................22

*Vaca v. Sipes*,
  386 U.S. 171 (1967).................................................................................................18

*In re Wal-Mart Stores, Inc. Wage and Hour Litigation*,
  505 F. Supp. 2d 609 (N.D. Cal. May 29, 2007)......................................................21

*Whittlestone, Inc. v. Handicraft Co.*,
  618 F.3d 970 (9th Cir. 2010) ....................................................................................3

*Woo v. Home Loan Group, L.P.*,
  2007 WL 6624925 (S.D. Cal. Jul. 27, 2007) ..........................................................21

*Young v. Anthony's Fish Grottos, Inc.*,
  830 F.2d 993 (9th Cir. 1987) ..................................................................................11

**State Cases**

*Amaral v. Cintas Corp. No. 2*,
  163 Cal. App. 4th 1157 (2008) ...............................................................................23

*Augustus v. ABM Security Servs., Inc.*,
  2 Cal. 5th 257 (Dec. 22, 2016)..................................................................2, 9, 11, 12

*Bright v. 99 Cents Only Stores*,
  189 Cal. App. 4th 1472 (2010) ..........................................................................23, 25

*Brinker Restaurant Corp. v. Superior Court*,
  53 Cal.4th 1004 (2012) ...........................................................................................14

*Caliber Bodyworks, Inc. v. Superior Court*,
  134 Cal. App. 4th 365 (2005) .................................................................................22

*Cortez v. Purolator Air Filtration Prods. Co.*,
  23 Cal. 4th 163 (2000) .................................................................................20, 21, 22

*Home Depot U.S.A., Inc. v. Superior Ct.*,
  191 Cal. App. 4th 210 (2010) .....................................................................23, 24, 25

*Kirby v. Immoos*,
  53 Cal. 4th 1244 (2012) ...............................................................................19, 20, 21

*Levy v. Skywalker Sound*,
  108 Cal. App. 4th 753 (2003) .................................................................................17

v

*Pineda v. Bank of Am.*,
   50 Cal.4th 1389 (2010) ................................................................................................ 21

*Stagner v. Luxottica Retail N. Am., Inc.*,
   2011 WL 3667502 (N.D. Cal. Aug. 22, 2011 ............................................................... 22

**Federal Statutes**

29 U.S.C. § 185 ................................................................................................................... 1

29 U.S.C. § 185(a) ............................................................................................................. 11

LMRA § 301 ............................................................................................................... *passim*

**State Statutes**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ......................................................................... 10

Cal. Lab. Code § 200(a) ..................................................................................................... 19

Cal. Lab. Code § 203 .................................................................................................... 19, 21

Cal. Lab. Code § 226 ................................................................................................... *passim*

Cal. Lab. Code § 226(a)(1) ................................................................................................ 19

Cal. Lab. Code § 226(a)(2) ................................................................................................ 19

Cal. Lab. Code § 226(a)(5) ................................................................................................ 19

Cal. Lab. Code § 226(e)(1) ................................................................................................ 23

Cal. Lab. Code § 226.3 ................................................................................................. 23, 24

Cal. Lab. Code § 226.6 ................................................................................................. 23, 24

Cal. Lab. Code § 226.7 ................................................................................................ *passim*

Cal. Lab. Code § 226.7(c) ............................................................................... 20, 21, 24, 25

Cal. Lab. Code § 512 ......................................................................................................... 18

Cal. Lab. Code § 512(e) ..................................................................................................... 14

Cal. Lab. Code § 514 ......................................................................................................... 14

Cal. Lab. Code § 2699 ....................................................................................................... 22

Cal. Lab. Code § 2699(f) .............................................................................. 23, 24, 25

Cal. Lab. Code § 2699.3 .................................................................................................... 22

vi

Cal. Lab. Code § 2699.3(a)..................................................................................................22

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................................1, 3

Fed. R. Civ. P. 12(f).........................................................................................................3

NOTICE AND MOTION TO DISMISS

**NOTICE OF MOTION AND MOTION**

NOTICE IS HEREBY GIVEN that on April 27, 2017, at 2:00 p.m. in Courtroom 9 of this Court, located at 450 Golden Gate Avenue, San Francisco, CA  94102, 19th Floor, Defendants TESORO REFINING AND MARKETING COMPANY LLC and TESORO LOGISTICS GP, LLC ("Defendants'), will and do hereby move the Court for an order under Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing Plaintiffs' claims.

**RELIEF SOUGHT**

Defendants seek dismissal of Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that Plaintiffs' claims are preempted by the Labor Management Relations Act (LMRA) and they failed to exhaust mandatory grievance and arbitration procedures.

Plaintiffs' Complaint also includes several deficient claims and grounds for relief alleged against Defendants.  Specifically, Plaintiffs improperly: (i) seek Labor Code Section 226 penalties based on the incorrect argument that wage statements must list unearned pay, such as missed rest break penalties; (ii) allege their Unfair Competition Law ("UCL") claim based on Labor Code rest break and wage statement provisions that cannot form the basis of such a claim; (iii) request disgorgement remedies not available under the UCL, (iv) assert a Private Attorneys General Act ("PAGA") claim that Plaintiffs did not exhaust prior to filing suit, (v) seek PAGA penalties for alleged violations that already provide a statutorily-defined penalty, and (vi) seek relief for putative class claims released in a prior class action.

Accordingly, Defendants moves to dismiss (or in the alternative partially dismiss) Plaintiffs' Complaint. This motion is based on this Notice and Memorandum of Points and Authorities, the declaration of Karen Kawano and Exhibits thereto, the Requests for Judicial Notice, the files and records in this action, and such other further matters adduced at the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

**I.      INTRODUCTION**

The Complaint should be dismissed pursuant to FRCP 12(b)(6) because Plaintiffs' claims are preempted under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

Plaintiffs filed this putative class wage and hour action only nineteen days after the California

Supreme Court issued the *Augustus v. ABM Security Servs., Inc.,* 2 Cal. 5th 257 (Dec. 22, 2016) decision, which Plaintiffs seemingly interpret as announcing it is now unlawful to require employees to be "on-call" and carry a pager or communication device during rest breaks because they would be under the direction or control of the employer. Plaintiffs allege that Tesoro's policies and practices do not "authorize and permit" compliant rest breaks under *Augustus* because they allegedly require refinery Operators to "remain attentive, carry radios, and be reachable at all times during their shifts." (Compl. ¶ 20.) Plaintiffs further allege Tesoro's policies fail to provide payment of required premiums for missed rest periods. (Id. ¶ 45.)

Plaintiffs' claims are preempted by the LMRA in two broad respects. *First,* they necessarily require interpretation of a number of collective bargaining agreements (CBAs) addressing the terms and conditions of Tesoro's authorization of rest breaks. These CBAs set forth Tesoro's policies authorizing and permitting rest periods, the scheduling and length of rest periods, the nature and extent of employees' release from duty during rest periods, and employees' rights to report violations and receive premium pay for any non-compliant rest breaks. Tesoro has also collectively bargained the terms and conditions of additional rest break policies supplemental to the CBAs. Plaintiffs' claims place the terms of these CBAs, letters of agreement, and negotiated policies squarely at issue. Because Plaintiffs' claims are substantially dependent upon and intertwined with these CBAs, they are preempted by the LMRA.

*Second*, in their rush to court following *Augustus*, Plaintiffs seek a Court-ordered injunction restructuring Tesoro's rest break policies and practices, rather than a collectively-bargained modification of any allegedly non-compliant policy or practice with respect to radio usage and rest breaks. This violates and interferes with the terms of the prior class settlement referenced in Plaintiffs' Complaint, which resolved the consolidated *Delagarza, Burgess, and USW* lawsuits. The Union representing Plaintiffs and the putative class (United Steel Workers ["USW"]) previously entered a collectively-bargained class settlement addressing the issue of radio usage and wage and hour compliance. Specifically, the class settlement negotiated with USW included a release of rest break claims and further addressed the usage of radios within Tesoro's refinery by providing for on-duty meal period agreements and meal period waivers. The agreement further provided that "any changes in law that rendered the Agreement unnecessary, illegal or ineffective" (*e.g.*, Plaintiffs allegations here) required the

Union and the Company to promptly meet to bargain over the terms of a new agreement to address any purported violation. Rather than do so, the same counsel who represented the USW in the prior consolidated class actions now seeks to have the Court address and impose court-ordered alterations to allegedly non-compliant rest break practices and radio usage, in violation of the parties' prior collectively-bargained class action settlement agreement.

In sum, Plaintiffs' Complaint directly places multiple collectively bargained agreements at issue and interferes with the underlying labor relations and negotiations giving rise to these agreements. Because their claims are substantially dependent upon and intertwined with the CBAs, Plaintiffs' Complaint is completely preempted by federal law and can only be brought against Defendants (if at all) as a converted Section 301 claim under the LMRA. Because Plaintiffs never exhausted the CBA's mandatory grievance and arbitration procedures, any Section 301 claim they might raise is barred as a matter of law, and their Complaint must be dismissed with prejudice.

In addition, Plaintiffs' Complaint includes several deficient claims. Specifically, Plaintiffs improperly: (i) seek Section 226 penalties based on the incorrect claim that wage statements must list unearned pay, such as rest break penalties; (ii) allege their UCL claim based on statutory rest break and wage-statement provisions that cannot support such a claim; (iii) request disgorgement remedies not available under the UCL, (iv) assert a PAGA claim that Plaintiffs did not exhaust prior to filing suit, (v) seek PAGA penalties for violations that already provide a statutorily-defined penalty, and (vi) seek relief for putative class claims released in a prior class action. These claims and requested remedies thus fail.[1]

## II.     PLAINTIFFS' ALLEGATIONS AND FACTUAL BACKGROUND

### A.     Summary of Plaintiff's Factual Allegations and Theory of Liability.

Plaintiffs Eileen Foster, Antonio Garcia and Samantha Scott work as Operators at Tesoro's Golden Eagle ["Martinez"] Refinery in Martinez, California. (Comp. ¶¶ 36-39.) Plaintiff Chris Azpeitia works as an Operator at Tesoro's Los Angeles Refinery. (Comp. ¶¶ 36.) Tesoro's "Golden Eagle facility located in Martinez, California . . . includes an oil refinery, chemical plant, and distribution facilities[.]" (Compl. ¶ 13.) Tesoro also owns "the Los Angeles Refinery, which includes an oil refinery, sulfur plant,

---

[1] Defendants bring this motion pursuant to Fed. R. Civ. P. 12(b)(6).  *See Whittlestone, Inc. v. Handicraft Co.*, 618 F.3d 970, 973-76 (9th Cir. 2010) (Rule 12(b)(6) motion is the proper procedure - rather than Rule 12(f) - to challenge facially defective claims and requests for legally unavailable remedies).

and distribution facilities located in or around Carson and Wilmington, California." (Compl. ¶ 14.)

Plaintiffs' claims derive from the core allegation that the California Supreme Court's recent *Augustus v. ABM Security Services, Inc.*, decision renders the rest breaks provided at Tesoro's refineries unlawful, due to the alleged requirement that "Tesoro requires [them] to remain attentive, carry a radio, and be reachable at all times during [their] shift." (Comp. ¶¶ 36-39, 42.)

Plaintiffs seek recovery of damages, restitution, penalties, disgorgement of profits, and declaratory and injunctive relief on behalf of a putative class, for claims arising from Defendants' alleged (1) "policy or practice" of failing to authorize and permit duty free rest breaks, and (2) "policy or practice" of failing to pay one hour of pay when employees were not provided rest breaks. (Compl. ¶¶ 44, 45, Prayer for Relief.) Plaintiffs allege four claims based on these predicate allegations: (1) "failure to authorize and permit rest breaks"; (2) "failure to furnish accurate wage statements"; (3) "Private Attorneys General Act"; and (4) "unfair business practice and unfair competition." *See* Compl. ¶¶ 47-66.

Plaintiffs attempt to assert these claims on behalf of themselves and on behalf of:

> All current and former employees of Defendants Tesoro Refining and Marketing Company LLC and Tesoro Logistics GP, LLC who worked as an operator at the Golden Eagle Refinery in Martinez, California, since January 10, 2013, and all current and former employees of Defendants Tesoro Refining and Marketing Company LLC, and Tesoro Logistics GP, LLC who worked as an operator at the Los Angeles Refinery since July 19, 2013.  (*See* Compl. ¶ 10.)[2]

**B.    Summary of Governing Collective Bargaining Agreements.**

The terms and conditions of Plaintiffs' (and the putative class members') employment are governed by ten CBAs between Tesoro and Plaintiffs' collective bargaining representative, United Steel Workers (USW), applicable to different bargaining units at different locations for different periods of time covered by the putative class period. (Declaration of Karen Kawano In Support of Motion to Dismiss ("Kawano Decl.") ¶¶ 5-31 Exs. A-N.)[3]  At Tesoro's Martinez (Golden Eagle) refinery, the following CBAs and further collectively bargained agreements apply to the putative class:

- USW Golden Eagle Refinery CBA, entitled "Articles of Agreement Between Tesoro Refining Company Golden Eagle Refinery and United Steelworkers International Union Local 5 and United Steelworkers International Union, effective February 1, 2012 to January 31, 2015." (Kawano Decl. Ex.

---

[2] The Complaint incorrectly identifies the *Delagarza* release period as ending January 10, 2013.  *See* Request for Judicial Notice, Ex. A ¶¶ 7, 10, 43, Ex. B ¶ 10 (release extends to July 19, 2013).

[3] Courts routinely take judicial notice of the governing CBAs where necessary to resolve issues of preemption.  *Jones v. AT & T*, No. C 07–3888 JF, 2008 WL 902292, *2 (N.D. Cal. Mar. 31, 2008).

K.)

- USW Golden Eagle Chemical CBA, entitled "Articles of Agreement Between Tesoro Refining Company Golden Eagle Chemical Plant and United Steelworkers International Union 5, effective March 1, 2012 to February 29, 2015." (Id., Ex. L.)

- USW Martinez Refinery CBA, entitled "Articles of Agreement Between Tesoro Refining Company Martinez Refinery and United Steelworkers International Union Local 5 and United Steelworkers International Union, [effective] February 1, 2015." (Id., Ex. M.)

- USW Martinez Chemical CBA, entitled "Articles of Agreement Between Tesoro Refining Company Martinez Chemical Plant and United Steelworkers International Union 5, effective March 1, 2015." (Id., Ex. N.)

- USW Golden Eagle Refinery On-Duty Meal Period Agreement. (Id., Ex. B.)

    At Tesoro's Southern California refineries (the LAR refinery, including the Wilmington and Carson operations), the following CBAs and additional side letters are applicable to the putative class:

- USW Carson CBA, entitled "Articles of Agreement between BP West Coast LLC Carson Refinery and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, A.F.L.-C.I.O., C.L.C., effective February 1, 2012 to January 31, 2015." (Id., Ex. E.)

- USW Pipelines CBA, entitled "Articles of Agreement Between BP Pipelines (North America) Inc. and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, A.F.L.-C.I.O., C.L.C., on behalf of its Local 675, effective February 1, 2012 to January 31, 2015." (Id., Ex. D.)

- USW Wilmington CBA, entitled "Agreement Between Tesoro Refining and Marketing Company and United Steelworkers A.F.L. - C.I.O., CLC USW Local 675 Covering Employees of Los Angeles Refinery and Long Beach Terminal and Wilmington Sales Terminal," May 12, 2012 through April 30, 2015. (Id., Ex. C.)

- USW Los Angeles Refinery CBA, entitled "Articles of Agreement Between Tesoro Refining & Marketing Tesoro Los Angeles Refinery Carson Bargaining Unit and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, A.F.L.-C.I.O., C.L.C. Effective Feb. 1, 2015." (Id., Ex. F.)

- USW Tesoro Logistics G.P. CBA, entitled "Articles of Agreement Between Tesoro Logistics G.P. and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, A.F.L.-C.I.O., C.L.C. on Behalf of its Local 675, Effective February 1, 2015 through January 31, 2019 (Id., Ex. G.)

- "Tesoro Los Angeles Refinery (Wilmington Bargaining Unit) Settlement Offer to USW Local 675" (Id., Ex. H.)

- The Los Angeles Refinery On-Duty Meal Period Agreement. (Id., Ex. A.)

- The "Memorandum of Agreement Timekeeping, Meal and Rest Wilmington" agreement reached between Tesoro and USW Local 675 on April 7, 2016. (Id., Ex. I.)

These CBAs and side letter agreements govern Plaintiffs' wages, hours, and conditions of employment, and set forth specific provisions addressing the working conditions, entitlement to and rates of pay, and final and binding arbitration for alleged violations of the CBAs.

Several of the CBAs also specifically address employees' entitlement to rest breaks, the manner in which the rest breaks are authorized and permitted, verification of rest breaks, the independent authority of employees to take duty-free rest breaks, a reporting mechanism for employees to identify any non-compliant rest breaks, and provisions for when and how much additional compensation will be paid to an employee for non-compliant rest breaks. These CBAs also provide that disputes pertaining to compliance with the rest break provisions are subject to the mandatory grievance procedure.

For example, the current CBA between USW covering operators at Tesoro Logistics G.P.'s Los Angeles Refinery terminals (effective February 1, 2015) extensively details the terms and conditions of Tesoro's policy for the authorization and provision of rest breaks in several different provisions.

- Article VII of the CBA establishes that it is intended to define rest break policy and practice:

  "The intent of this Article is to effect *more specific procedures governing* meal periods and r*est periods for all refinery employees represented by USW*. Additionally, this Article requires all employees to comply with Company policy related to meal periods and rest periods, including timekeeping policies related thereto."

(Kawano Decl., Ex. G, p. 13.) (emphasis added). It goes on to define in detail the terms and conditions of the rest breaks authorized and permitted to putative class members. Specifically,

- Article VII.3.a provides for the provision of rest breaks at a frequency in excess of that required by the DLSE:

  "Employees are authorized and permitted to take a ten (10) minute Rest Period for every four (4) consecutive hours of work or major fraction thereof. A major fraction is defined as *anything more than two (2) consecutive hours of work*. Rest periods are to be taken in ten (10 minute increments. Rest Periods cannot be taken for shorter amounts of time and cannot be combined together or combined with an Off-Duty Meal Period."

- Article VII.3.a emphasizes that employees "are not required to perform their job duties during Rest Periods," in direct contradiction to Plaintiffs' theory of recovery. (Kawano Decl. Ex. G, p. 15)

- Article VII.3.b provides failsafe authorizations and reporting mechanisms to ensure the

6

authorization and permitting of compliant rest breaks:

"Rest periods should be taken as close to the middle of the four (4) hour increments as practicable, or as scheduled by management or a supervisor or his or her designee. *However, employees are independently authorized and permitted to take Rest Periods even if such Rest Periods are not scheduled.*"

- Article VII.3.e provides a reporting procedure and a contractual policy for the payment of premiums of any violation:

"An employee who is forced by management or a supervisor or their designee to forgo a Rest Period as provided herein must immediately report the failure to the Human Resources Department. [E]mployees who are forced to forgo a Rest Period as outlined herein shall receive an additional one (1) hour of pay at the employer's regular rate of pay for each day a Rest Period is not permitted. No more than (1) additional hour of pay per day will be paid to any employee under this provision."

- Article VII provides that the terms of the CBA may be modified in response to changes in law regarding meal and rest break requirements:

"The company reserves the right to unilaterally modify the terms and conditions of the collective bargaining agreement as it relates to meal and rest periods consistent with any changes or controlling clarifications in state or federal law or other clarifications issued by a state or federal administrative agency responsible for enforcing wage and hour issues. However, if it is determined to be more practicable, the Collective Bargaining Agreement *may be subject to a side letter agreement rather than an immediate amendment, if there are any changes or clarifications with respect to state or federal law regarding these issues.*"

- Article VII.5 provides that disputes regarding the provisions of the meal and rest provisions are subject to the grievance and arbitration procedure:

"Any disputes about the provisions of this article are subject to Section XIX concerning grievances and employees must exhaust the grievance procedure before seeking other remedies."

(Kawano Decl., Ex. G, pp. 13-16.) In addition, the prior BP Pipelines CBA (effective Feb. 1, 2012 - Jan. 31, 2015) contained comparable meal and rest period provisions. (Kawano Decl., Ex. D, pp. 13-16.)

The separate CBA between USW and Tesoro applicable to the Carson Bargaining Unit (effective Feb. 1, 2015) details Tesoro's policy for authorizing rest breaks at Carson. Specifically:

- Article VIII provides that "[t]he intent of this Article is to affect *more specific procedures* governing meal periods and *rest periods* for all Bargaining Unit employees represented by USW." (Kawano Decl., Ex. F, p. 61.)

- Article VIII.C provides:

Employees *shall be permitted* to take one ten minute rest period for every four hours they work or major fraction thereof. A major fraction is defined as anything more than two hours for purpose of calculating rest periods.

- Appendix E confirms Tesoro's policy of authorizing and permitting rest breaks:

7

Employees are permitted a 10-minute paid rest period for each four hours of work or major fraction thereof.  To the extent practicable, rest periods will be taken in the middle of the four-hour work period.  Subject to the above, the timing of rest periods will be at the Company's reasonable discretion."

(Kawano Decl., Ex. F, p. 133.)

- Article VIII.D provides a policy for payment of one hour of premium pay for any failure to follow the rest period requirements, contrary to Plaintiffs' allegations:

There will be a maximum of *an additional one (1) hour of pay per day* for an employee for any combination of any failure to follow the requirements for an Off-Duty Meal Period, On-Duty Meal Period or *Rest Period*.  Any payment of one (1) additional hour of pay for Meal Period or Rest Period violations shall not be counted as hours worked for purposes of calculating overtime.

(Kawano Decl., Ex. F, p. 63.)

- Article XX provides detailed and comprehensive procedures for the settlement of disputes under the Agreement.  (Kawano Decl., Ex. F at pp. 79-82.) (emphasis added).

In addition, the prior Carson CBA (effective Feb. 1, 2012 - Jan. 31, 2015) contained comparable meal and rest period provisions. (Kawano Decl., Ex. E, pp. 61-64; 88-90.)

### C.    Additional Collectively-Bargained Meal and Rest Period Policies at Wilmington

Tesoro and the USW further collectively bargained the terms and conditions of the meal and rest period policies at the Wilmington refinery - a policy directly at issue in this litigation. In 2014 Tesoro presented the USW Local 675 with a proposed Wilmington meal and rest period policy for review and comment.  Negotiations continued off and on through the spring of 2016. (Kawano Decl. ¶ 23.)

In approximately April 2016, after obtaining Union's negotiated consent, Tesoro distributed the written meal and rest period policy for the Wilmington refinery. (Id. ¶ 24.) The policy states that it "supplements but is not intended to conflict with or supersede the Collective Bargaining Agreement between Tesoro and the United Steel Workers."  Id., Ex. O  The policy authorizes rest periods, prohibits anyone from discouraging employees from taking rest periods, requires employees to report when they were not permitted to take a full rest period, and provides for premium payment for missed rest periods. (Id.)  The policy further provides that "The Company's policy is to provide meal and rest periods in accordance with the requirements of the California Labor Code and California's applicable Industrial Welfare Commission Wage Orders, except where the Company's policy is more generous."  (Id.)

Concurrently, Tesoro and the USW entered a "Memorandum of Agreement Timekeeping, Meal and Rest Wilmington" to expand the application of the prior agreements to additional positions

8

(including operators in the Azpeitia putative class). This agreement was ratified by USW members. (Kawano Decl. ¶ 17, Ex. J.)  In addition, in connection with the April 2016 rollout of the meal and rest period policy, Tesoro developed an "FAQ" document and training slides to answer anticipated bargaining unit questions regarding the practical application of the meal and rest period policy, and provided the Union advanced copies for negotiation and feedback.  (Id. ¶¶ 25 -27, Exs. P, Q.)  The USW continued to discuss the practical operation of the rest break policy following implementation.  For example, at the December 20, 2016 meeting between Tesoro and the USW Local 675 (two days before the *Augustus* decision), the parties discussed rest breaks for Console Operators and other Operators, including as to the provision of relief (at issue in the Complaint allegations), and reporting and provision of penalty payments for any violation. (Id. ¶ 28, Ex. R.)  These discussions continued through February 20, 2017, at which time Tesoro and the Union signed off on the December 20, 2016 meeting minutes, confirming the "Breaks for Console Operators" was a "Closed" item.  (Id. ¶ 29, Ex. R.)

### D.      The Collectively-Bargained Class Settlement of the *Burgess* and *Delagarza* Actions.

The USW and Tesoro previously entered into a "Joint Stipulation of Class Action Settlement" ("Class Settlement") on March 15, 2013 to resolve three class and putative class actions (*Delagarza v. Tesoro Refining & Marketing Co.*, N.D. Cal., Case No. 09-05803 EMC ["*Delagarza*"], *Burgess v. Tesoro Refining & Marketing Co.*, C.D. Cal., Case No. 10-5870-DMG (PLAx) ["*Burgess*"], and *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC, and Richard Floyd and Eduardo Carbajal, on behalf of all similarly situated current and former employees v. Shell Oil Co., Tesoro Refining & Marketing Co.*, C.D. Cal., Case No. 08-3693 RGK ["*USW*"]. (Compl. ¶ 26; Request for Judicial Notice (hereinafter "RJN") Ex. A, ¶¶ 1,7, 12, 25, 34, 43.)[4]

The *USW* putative class action was filed on April 25, 2008, by the Plaintiffs' same counsel here, alleging (1) failure to provide meal periods; (2) failure to provide rest breaks; (3) failure to furnish timely and accurate wage statements; (4) failure to provide wages due at the time of termination; and (5) violation of California's Unfair Competition Law.  (RJN, Ex. A, ¶ 26.)  After class certification was denied, various members of the *USW* putative class, represented by the same counsel, filed *Delagarza*

---

[4] Federal courts may take judicial notice of other courts' proceedings. *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

9

and *Burgess*, in which the plaintiffs alleged claims for (1) failure to provide meal periods; (2) failure to

pay all wages due at termination; and (3) violation of California's UCL.  (Id., Ex. A ¶ 27.) The Class

Settlement resolved the *USW, Delagarza* and *Burgess* actions, "including without limitation:

> claims based upon Tesoro's alleged failure to provide an off-duty meal period; failure to provide an on-duty meal period; *failure to authorize or permit a rest period*; failure to furnish timely and accurate wage statements due to the failure to provide an off-duty meal period, failure to provide an on-duty meal period, or *failure to authorize and permit a rest period*; and failure to pay wages due upon termination arising from the failure to provide an off-duty meal period, failure to provide an on-duty meal period, or *failure to authorize and permit a rest period*; and claims derivative of those alleged in the complaints filed in *USW, Delagarza,* or the First Amended Complaint filed in *Burgess* arising under the California Labor Code (including Sections 201, 202, 203, 204, 210, 215, 216, 218, 218.5, 221, 222, 223, 224, 226, 226.6, 226.7, 512, 558, and 1199); California's Unfair Competition Law, codified at Cal. Bus. & Prof. Code §§ 17200 *et seq.*; California Industrial Welfare Commission Wage Order 1-2001 sections 7, 11, and 12, codified at 8 Cal. Code Reg. § 2698 *et seq.* ("PAGA").

(RJN, Ex. A, para. 43) (emphasis added).

USW's consent to the Class Settlement was the product of a collectively-bargained negotiation.

The Class Settlement provided that "USW and Tesoro have engaged in collective bargaining, and, as a

condition of this Agreement, have agreed (or will agree) to certain terms and conditions of employment

regarding Covered Employee's meal periods. Copies of such agreements are attached hereto as Exhibit

A and are hereby made part of this Agreement." (RJN, Ex. A, ¶ 38.)

The Class Settlement further provided for a ratification by each local USW membership, and

stated that absent such ratification, Tesoro could void the agreement.  (Id., ¶ 40.)   The meal period

agreement attached to the Class Settlement specifically referenced that the agreement was negotiated in

reference to "the requirement that they [Covered Employees] generally *carry radios or otherwise

remain in contact or available* to be contacted during meal periods."  (RJN, Ex. A, p. 46 of 97.)

(emphasis added).  Tellingly, the parties (including the USW) did not perceive there to be any radio

usage requirements during rest breaks (or that if there were, that remaining in contact interfered with rest

breaks). The Class Settlement was intended to not only conclusively resolve the meal and rest break

claims in the context of communication requirements in the high hazard, safety sensitive nature of

refinery operations, but to provide a mechanism for the resolution of subsequent issues should there be a

change in law. The attached meal period agreements to the Class Settlement provide:  "If a statutory

change, regulation, revision, Court determination, or other change in law renders this Agreement

10

unnecessary, illegal, or ineffective, then the Union and the Company shall promptly meet to bargain over the terms of a new agreement covering provision of meal periods."  (RJN, Ex. A, p. 47 of 97.)This collectively bargained class settlement was reviewed and approved by the Court.

Through subsequent collective bargaining, Exhibit A to the Class Settlement was ratified as to Tesoro's Martinez and LAR refineries, including the requirement that the Union and Tesoro are required to bargain in the event any Court determination or other change in law impacts the parties' agreement. (Kawano Decl., Exs. A, B.)  Plaintiffs identify no attempt by the Union to return to the bargaining table prior to counsel's filing of the instant action immediately following the *Augustus* decision.

## III.   LEGAL ARGUMENT

### A.   Plaintiffs' Claims Are Preempted by the LMRA Because They Require Interpretation of the CBAs and Other Collectively-Bargained Agreements.

The Court should dismiss Plaintiffs' Complaint because Plaintiffs cannot allege facts that would entitle them to relief, as their challenge of the rest break policies and practices at Tesoro's California refineries is preempted by LMRA section 301. Plaintiffs' claims are preempted because they require the Court to interpret the terms of multiple CBAs and collectively-bargained policies applicable to the class, which address rest break authorization, scheduling, and a reporting and penalty payment process for non-compliant rest breaks. In addition, Plaintiffs' claims violate the terms of the collectively bargained Class Settlement of USW's prior class action. Once preemption applies, claims are either (1) dismissed as completely preempted, or (2) converted to a Section 301 claim, provided plaintiffs have exhausted the grievance process.  As discussed below, both procedural paths require dismissal of the Complaint, because Plaintiffs have not (and cannot) allege exhaustion of the mandatory grievance process.

### 1.   Standard for Section 301 Preemption Under the LMRA.

LMRA section 301 provides federal jurisdiction over "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a).  "The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement, *and any state claim whose outcome depends on analysis of the terms of the agreement*."  *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (citations omitted) (emphasis added). Although the language of § 301 [of the LMRA] is limited to "suits for violation of contracts," it has been

construed quite broadly to cover state-law actions that require interpretation of labor agreements. *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) ("When resolution of a state law claim is *substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract*, that claim must either be treated as a § 301 claim, or *dismissed as preempted by federal labor-contract law*." (internal citations omitted)) (emphasis added).   If the state law claim is either (1) based directly on rights created by a collective bargaining agreement or (2) substantially dependent on analysis of a collective bargaining agreement, it is "considered, from its inception, a federal claim," preempted by Section 301.  *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007);  *Raphael v. Tesoro Refining and Marketing Co.*, LLC, 2015 WL 3970293, *3 (C.D. Cal. June 30, 2015) ("To further the goal of uniform interpretation of labor contracts, the preemptive effect of § 301 has been extended *beyond suits that allege the violation of a collective bargaining agreement . . . [a] state law claim will be preempted if it is so "inextricably intertwined" with the terms of a labor contract that its resolution will require judicial interpretation of those terms*.") (emphasis added).

This policy in favor of national uniformity in labor law displaces state law with respect to claims involving the interpretation or enforcement of collective bargaining agreements.  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 (1988).  "In addition to promoting the development of a uniform federal labor law, § 301 preemption doctrine is designed in large part to assure that agreements to arbitrate grievances would be enforced, regardless of the vagaries of state law and lingering hostility toward extrajudicial dispute resolution."  *Kobold v. Good Sam. Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016).

### 2.   Plaintiffs' Claims Challenge Collectively Bargained Rest Break Policies, and Require Interpretation of the CBAs and Negotiated Policies.

Plaintiffs' claims rest on the allegation that operators at Tesoro's California refineries were not provided compliant rest breaks under the standard articulated in *Augustus*, due to (1) "a policy or practice of failing to authorize and permit Plaintiffs and putative class members to take the rest breaks to which they are entitled under California law" and (2) "a policy and practice of failing to pay Plaintiffs and the putative class members who were not provided with a rest break as required an additional one hour of compensation at each employees' regular rate of pay."  (Compl. 44, 45.)

Plaintiffs' claims necessarily rest upon and require interpretation of the applicable CBAs and additional negotiated rest period policies.  The CBAs contain provisions regarding hours of work, regular rates of pay, payment of wages and benefits. Of critical importance to Plaintiffs' claims, several of the CBAs specifically define the terms and conditions for the provision of authorized rest breaks.  In addition, Tesoro negotiated local rest break policies supplemental to the CBAs with the USW.  (Kawano Decl., Exs. A-S.)   The CBAs further provide for final and binding arbitration of any dispute between the Employer and the Union or between an employee and the Employer. (Id., Exs. D-H, K-N.)

The need to interpret the substantive impact of the various CBAs and negotiated rest break provisions is not limited to determining the substantive merit of the claims, but is also necessary for purposes of resolving class certification. The task becomes more complex because there are a number of CBAs and negotiated rest break policies and interpretive materials applicable to the putative class that the Court will need to analyze and interpret in connection with considering whether class certification is appropriate for Plaintiffs' rest break and derivative claims.  *See, e.g. Raphael,* 2015 WL 3970293 at *6-7 (preemption argument carried even more force where multiple CBAs applied to the putative class). For example, Plaintiffs' rest break claim identifies as one the allegedly common questions:  "Whether Defendants *maintain or have maintained **policies** that adequately provide for off-duty rest breaks* in accordance with the requirements of applicable California law."  (Compl. ¶ 30.e.) Several of the CBAs that applied to members of the putative class directly address and define rest break entitlement, contractually authorize and permit duty free rest breaks, and provide a reporting mechanism and premium payment process. (pp. 7-8, *supra*.) At the Wilmington Refinery, Tesoro and the USW further negotiated a rest break policy supplemental to the CBA, as well as FAQ's and additional guidance. (Kawano Decl. ¶¶ 22-31, Exs. O-Q.) Addressing Plaintiffs' allegations that these various policies are non-compliant will require the Court to interpret the CBAs' rest break provisions, the collectively bargained rest break policies, what they authorize and provide, whether those provisions authorize and permit duty free rest breaks, whether those provisions are compliant with California law, and whether there is a policy for payment of missed rest breaks.[5]

---

[5] Even partial application during the class period of the CBAs to the putative class requires preemption. *See, e.g., Duerson v. NFL*, 2012 WL 1658353, at *3 (N.D. Ill. May 11, 2012) (preemption applies where the "CBAs were in effect during at least some of the events alleged in the complaint").

The interpretation of these CBA provisions and negotiated rest period provisions will be required both as to liability and the determination of the suitability of the claims to certification.  That is because California law requires an employer to authorize and provide rest breaks, but does not require employers to ensure that employees actually take their rest breaks. Indeed employees have the discretion to voluntarily elect not to take a rest break.  Unions, as the employees' exclusive representative, have the authority to exercise discretion on behalf of their members. This squarely places the terms of the collectively bargained rest break *policies* at issue.  Where claims fail to demonstrate an unlawful *policy*, but rather identify divergent, individuated, non-complaint practices, class certification is properly denied.  *Cole v. CRST, Inc.*, 317 F.R.D. 141, 144-45 (C.D. Cal. 2016) (determining that employer's *policy authorized compliant breaks*, and rejecting the argument that the *Brinker*[6] standard that employers are not required to police breaks applies only to meal periods).  An interpretation of what the CBA authorizes, including how the Union has exercised discretion on behalf of the employees as to rest breaks, is therefore necessarily at issue, because "an employer is not liable for failure to provide rest breaks if it authorizes and permits an employee to take his or her rest break and the employee—absent coercion or encouragement on the part of the employer—foregoes his or her rest break." *Cleveland v. Groceryworks.com, LLC*, 2016 WL 4140504 at *18 (N.D. Cal. Aug. 4, 2016).

Moreover, Plaintiffs' anticipated argument that the rest break claim is predicated upon state law rest break entitlements does not permit the claim to avoid the preemptive force of the LMRA, where the claim requires interpretation of the CBAs. Courts have repeatedly held that when wage and hour suits under California law are substantially dependent upon interpretation of the parties' CBA, they are preempted under the LMRA. *See e.g., Coria v. Recology, Inc.*, 2014 WL 3885873 (N.D. Cal. Aug. 7, 2014) (holding that California state law meal period and overtime claims are preempted by the LMRA because they require an analysis of the CBA to determine the application of Labor Code § 512(e) and § 514 overtime and meal period exemptions for employees covered by qualifying collective bargaining agreements); *Buck v. Cemex, Inc.*, 2013 WL 4648579 (E.D. Cal. Aug. 29, 2013) (LMRA preemption where meal period claim must be resolved by consulting the CBA); *Gerardo Ayala v. Destination Shuttle Services LLC*, et al., 2013 WL 12092284 at *4-5 (C.D. Cal. Nov. 1, 2013) (accord).

---

[6]  *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1041 (2012).

This principle carries particular force where, as here, there are multiple CBAs with application to the claims at issue and the putative class.  With direct application here, in *Raphael v. Tesoro*, 2015 WL 3970293, *6-7, the Court found the plaintiff's meal period claim preempted under Section 301, noting that the impact of the interpretive questions on the Section 301 preemption analysis carried particular force where a number of CBAs applied to Tesoro's workforce.  *Id.* at *6-7 ("Tesoro has affirmatively presented the Court with a plethora of provisions in need of interpretation throughout the eight separate CBAs covering Raphael and the aggrieved employees he seeks to represent.")

### 3. Plaintiffs' Claims Violate the Collectively Bargained Class Settlement, and Interfere with the Collective Bargaining Obligations of Tesoro and USW.

Plaintiffs' claims violate the terms of the collectively-bargained Class Settlement of the *Burgess, Delagarza*, and *USW* actions, which directly addressed the issue of certain plant radio usage and provided a collectively-bargained solution to comport wage and hour practices with the various communication requirements of Tesoro's California refineries.  In the process of resolving meal and rest break claims, the parties' Class Settlement acknowledged "the requirement that [covered employees] generally carry radios or otherwise remain in contact or available to be contacted during meal periods," and fashioned the collectively-bargained solution of providing an on-duty meal period agreement between Tesoro and the USW.  The execution of that on-duty meal period agreement was a condition precedent to the settlement agreement resolving the Union's rest break claims. (RJN, Class Settlement, Ex. A, ¶¶ 38-41, 43, Ex. A.)  Although Tesoro denies that there is any radio usage requirement that interferes with rest breaks, if members of the USW's bargaining units believe radio usage policies and agreements interfere with their rest breaks, the Court must look to policies defining radio usage, which are addressed, among other places, in the parties' collectively bargained on-duty meal period agreement. Specifically, that agreement reflects the mutual understanding that carrying radios is only required during meal periods - <u>not</u> during rest periods.  (RJN , Ex. A, Class Settlement, p. 47 of 97.)  To the extent the Union disputes that interpretation, that presents an interpretive issue the Court would have to resolve. Moreover, the agreement provides that if there are any changes in the law impacting the legality of the agreement (e.g., including radio usage), the parties are to return to the bargaining table. (RJN, Ex. A, Class Settlement, p. 47 of 97.) The Union, however, has not sought any such bargaining. Instead, it

15

requests a court-imposed (rather than collectively bargained) restructuring of radio or rest break practices. This violates the collectively-bargained agreement to negotiate any needed changes in reaction to developments in applicable California law, and interferes with the labor relations and negotiations giving rise to the Class Settlement and meal period agreements.

Plaintiffs cannot avoid the preemptive force of this agreement by arguing it is outside the CBA. First, the meal period agreement attached to the Class Settlement was separately and formally agreed to and ratified by the Union and its membership. (Kawano Decl., Exs. A, B.) *Second*, it is not simply CBAs that give rise to preemption. Side agreements, settlement agreements, and other collectively-bargained agreements give rise to Section 301 preemption where the plaintiffs' claims require interpretation of those agreements. For example, in *Retail Clerks Intern. Ass'n, Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc.,* 369 U.S. 17, 28 (1962), the U.S. Supreme Court rejected an argument that Congress limited § 301(a) jurisdiction to contracts that are "collective bargaining contracts," and held that a strike settlement agreement was a "contract" for purposes of § 301(a).

> "Contract in labor law is a term the implications of which must be determined from the connection in which it appears . . . It is enough that this is clearly an agreement between employers and labor organizations significant to the maintenance of labor peace between them . . . It resolved a controversy arising out of, and importantly and directly affecting, the employment relationship. Plainly it falls within § 301(a)."

Likewise, the Ninth Circuit held that the term "contracts" under the LMRA extends beyond CBAs. *See General Teamsters, Auto Truck Drivers and Helpers Local 162 v. Mitchell Bros. Truck Lines*, 682 F.2d 763, 765 (9th Cir. 1982) (rejecting plaintiff's argument that under the LMRA, the word "contracts" was limited to CBAs, and holding that a strike settlement agreement was a contract for LMRA purposes.)

Moreover, "strike settlements" are not the only type of collectively-bargained settlement agreement subject to Section 301 preemption. In *Audette v. International Longshoremen's and Warehousemen's*, 195 F.3d 1107 (9th Cir. 1999), an employee sued an employer's association and her union in state court, alleging she had been denied registration under the CBA because of her gender in violation of state law. The parties entered into a settlement agreement. The employee later sued the employer's association and union in state court, alleging claims for breach of the settlement agreement. After defendants removed on the ground of preemption, the district court granted their motion for summary judgment. The Ninth Circuit found that although the settlement agreement did not settle a

16

grievance that arose under the CBA, its "performance implicate[d] various provisions of the CBA" and thus was preempted, where determining whether a breach of the settlement agreement occurred would necessarily "require[ ] the interpretation of [the CBA]." (citing *Lingle,* 486 U.S. at 413). Likewise, in *Levy v. Skywalker Sound*, 108 Cal. App. 4th 753 (2003), the court rejected the argument only CBAs can support LMRA preemption. *Id*. at 763 ("[Plaintiff] has cited no case holding that the scope of federal preemption under section 301 depends on whether the labor-management agreement involved in the case is labeled a 'collective bargaining agreement' as opposed to a 'side letter' or other such document.).

### 4.    Plaintiffs' Claims Should Be Dismissed as Completely Preempted or for Failure to Exhaust the CBA's Grievance and Arbitration Procedures.

Once Section 301 preemption attaches to Plaintiffs' claims, there are two potential procedural outcomes, both of which require the dismissal of Plaintiffs' claims here:  either (1) the claims are <u>completely</u> preempted under Section 301 and subject to dismissal, or (2) the preempted claims are converted to Section 301 claims, which can only be prosecuted where the plaintiffs have previously exhausted the CBAs' grievance process.  *Allis Chalmers Corp.*, 471 U.S. at 220 ("When resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, <u>that claim must either [1] be treated as a § 301 claim, or [2] dismissed as preempted by federal labor-contract law</u>." (internal citations omitted) (emphasis added).

Here, the Court should dismiss Plaintiffs' claims as completely preempted, particularly where the Union and Tesoro are contractually obligated to bargain regarding changes in the law impacting rest break practices, and the Union has not attempted to plead a Section 301 claim. *See Kobold,* 832 F.3d at 1033, 1036-37 (9th Cir. 2016) (plaintiff's state-law wage claims completely preempted and properly dismissed as a matter of law because they were dependent upon interpretation of a CBA provision); *Pette v. Int'l Union of Operating Engineers*, 2016 WL 4596338 at *9-11 (C.D. Cal. Sept. 2, 2016) (Pregerson, J.) (ordering dismissal of plaintiff's claims "[b]ecause resolution of [plaintiff's state law claim] might substantially depend on interpretation of the CBA"); *Curtis v. Irwin Indus*., 2016 WL 4975188 at *2-4 (C.D. Cal. Sept. 16, 2016) (Wright, J.) (dismissing claims as completely preempted as a result of need to look to CBA to determine applicability of overtime exemption in Labor Code § 512).

If not dismissed as completely preempted, Plaintiffs' preempted claims can only be brought as a

---

17

converted Section 301 claim.  *Allis Chalmers Corp.*, 471 U.S. at 220 (once claims is subject to Section 301 preemption, it is either dismissed as completely preempted, or converted to a Section 301 claim, *supra*).  Plaintiffs, however, fail to satisfy the prerequisites for a Section 301 suit.

It is well established that where collectively-bargained grievance procedures are the exclusive and final remedy for breach of a CBA, a plaintiff may not sue under Section 301 until timely completing those procedures. *See Hines v. Anchor Motor Freight, Inc.* 424 U.S. 554, 563 (1976) (unless an employee attempted to utilize the contractual procedures for settling his dispute with the employer, his independent suit against the employer would be dismissed); *Vaca v. Sipes*, 386 U.S. 171, 184 (1967); *Carr v. Pacific Maritime Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990) (accord).

Here, Plaintiffs have failed to plead that they exhausted the CBA's grievance and arbitration procedures, which are mandatory under the CBAs. (Compl., *passim*.) There is no question that exhaustion of these procedures is a mandatory prerequisite to asserting claims under Section 301. *Carr*, 904 F.2d at 1317 (plaintiffs must exhaust exclusive grievance and arbitration procedures established by the bargaining agreement prior to commencing suit). Accordingly, the Court should dismiss their Complaint in the entirety. *See Busey v. P.W. Supermarkets*, *Inc.*, 368 F. Supp. 2d 1045, 1054-55 (2005) (where plaintiffs failed to allege exhaustion of the grievance and arbitration remedy in the CBA, Section 301 claims must be dismissed).

**B.      Plaintiffs' Derivative Claims that Fail to State a Viable Claim for Relief.**

**1.      The Court Should Dismiss the Second Claim for Violation of Labor Code Section 226 Because Wage Statements Need Not Include Unearned Wages.**

Plaintiffs' Labor Code section 226 cause of action for wage statement violations is based on the assertion that their wage statements failed to include missed rest break penalties. *See* Compl. ¶ 48. The Court should dismiss the claim because wage statements need not list rest break penalties.

**a.      Wage Statements Need Only List "Wages Earned."**

Labor Code section 226 specifies the information that must be included on wage statements, and in terms of wages, it only requires wage statements to include "wages earned."  Cal. Labor Code § 226(a)(1), (2), and (5). See Cal. Labor Code § 226(a)(1) (gross wages earned); § 226(a)(2) (total hours worked); and § 226(a)(5) (net wages earned). The references to net or gross "wages earned" means

18

"amounts for labor performed by employees." Cal. Lab. Code § 200(a) (emphasis added).

### b. Claims For "Inaccurate Wage Statements" Cannot Be Predicted Upon Rest Break Violations.

Courts have repeatedly held that derivative Section 226 wage statement claims based on the alleged failure to list rest break premium pay fail to state a claim for relief. In *Jones v. Spherion Staffing LLC*, et al., 2012 WL 3264081, at *8 (C.D. Cal. August 7, 2012), the court held that there can be no Section 226 claim for wage statement violations based on rest break violations or the lack of penalty pay. "[P]laintiff cannot advance a claim for *noncompliant wage statements* pursuant to section 226(a) or failure to pay wages due upon termination pursuant to section 203 *solely based on alleged violations of section 226.7*" for missed rest breaks. *Id.* (emphasis added). The court found such a claim barred because a 226.7 rest break claim is not for the nonpayment of "wages" such that premium payments are required to be identified on a wage statement, and predicating a Section 226 claim upon failure to provide a missed rest break results in an improper double recovery. *Id.* at *8-9.

In *Nguyen v. Baxter Healthcare Corp*., 2011 WL 6018284, at *8 (C.D. Cal., November 28, 2011), the court also held that "the plain language of Section 226(a) does not require that [a] wage statement include an itemized listing of any premium payments owed to [plaintiff] for missed meal periods." *Id.*[7] The legislative history confirms the purpose of Section 226 was "'to ensure that employers provide accurate wage statements to employees, not to govern employers' obligations with respect to meal periods.'" *Id.* "[M]issed meal breaks must be compensated under Section 226.7 and [are] properly considered liquidated damages, not wages earned for purposes of Section 226(a)." *Id.* The court concluded that "[plaintiff] does not offer any legal support -- and the Court is aware of none -- for the proposition that meal period premiums must be included in an employee's wage statement." *Id.*

The California Supreme Court in *Kirby v. Immoos*, 53 Cal. 4th 1244, 1256 (2012) held that a claim to recover rest break premium pay under Labor Code section 226.7 is not a claim for "nonpayment of wages." *Id.* at 1255. As the Court explained, an action for nonpayment of wages "refer[s] to suits where the allegedly unlawful conduct is the employer's failure to comply with an obligation to pay wages or benefits." *Id.* at 1257-1258. In contrast, the allegedly unlawful conduct under Labor Code

---

[7] The same statutory provision governs missed meal and rest period penalties. Cal. Lab. Code § 226.7

NOTICE AND MOTION TO DISMISS

section 226.7 is "the nonprovision of meal and rest breaks, not for the nonpayment of *wages*." *Id*. at 1255 (emphasis in original). *See also id*. at 1256 ("Nonpayment of wages is not the gravamen of a section 226.7 violation."). As *Kirby* held that an action for rest break premium pay is not an action for an obligation to pay wages, the failure to include premium pay on a wage statement cannot support a Section 226 claim. Accordingly, the Court should dismiss Plaintiffs' Second Cause of Action.

### 2.     UCL Claims Cannot Be Predicated Upon Rest Break Penalties.

Pay for missed rest breaks under Labor Code Sections 226.7(c) is not recoverable under the UCL because it is not restitution. *Parson v Golden State FC, LLC*, 2016 WL 1734010, at *6-7 (N.D. Cal. May 2, 2016) (dismissing UCL claim based on penalties for violations of Labor Code section 226.7); *Frieri v. Sysco Corp.*, 2016 WL 71882 at *6 (S.D. Cal. Dec. 12, 2016) (citing *Jones* and *Nguyen* for the principle that plaintiff cannot use missed rest breaks as a predicate for the derivative claim).

The California Supreme Court has made clear that the UCL's restitution remedy is limited. In *Cortez v. Purolator Air Filtration Prods. Co*., 23 Cal. 4th 163 (2000), the California Supreme Court held that (1) an analysis of the wage in question is required to determine whether "the wages owed may not be recovered as restitution in a UCL action," and (2) "[a]n order that *earned wages* be paid is. . . a restitutionary remedy authorized by the UCL." *Id*. at 174-78 (emphasis added). *Cortez* specifically limited its holding to *earned wages*; "[o]nce *earned*, those unpaid wages became property to which the employees were entitled." *Id*. at 168 (emphasis added).

Plaintiffs seek *unearned* pay under Sections 226.7(c) -- money that is due not because they performed labor but because Defendants allegedly violated a statute. Although the California Supreme Court has not yet directly addressed whether unearned wages are recoverable as restitution, such an award would be inconsistent with *Cortez*. As *Cortez* explained, "*earned* wages that are due and payable . . . are as much the property of the employee *who has given his or her labor to the employer* in exchange for that property as is property a person surrenders through an unfair business practice." *Id*. at 178.

Premiums for missed rest breaks under Labor Code section 226.7, however, represent a form of liquidated damages, or unearned wages. *Kirby*, 53 Cal. 4th at 1256 ("a section 226.7 action is brought for the nonprovision of meal and rest periods, not for the 'nonpayment of wages.'"; nonpayment of wages is "not the gravamen of a Section 226.7 violation.") A Section 226.7 claim, therefore, is not for

1  nonpayment of wages, but for failure to provide breaks. *Id*. at 1257. *Jones*, 2012 WL 3264081, at *6

2  (*Kirby* clarifies that meal and rest claims are not wage actions).

3        The Supreme Court's opinion in *Pineda v. Bank of Am.,* 50 Cal.4th 1389 (2010), holding that

4  203 waiting-time penalties cannot be recovered as restitution under the UCL, is instructive. *Id.* at 1401.

5  *Pineda's* requirement that a plaintiff have an ownership interest in wages is consistent with *Cortez. See*

6  *id*. In the context of *Cortez*, the Section 203 penalties considered in *Pineda* were not recoverable as

7  restitution, because the wages were unearned, *i.e*., the employee had not expended any labor to earn the

8  money. *Pineda* further recognized that Section 203 wages are "not designed to compensate employees

9  for work performed," but rather are "intended to encourage employers to pay final wages on time." *Id*. at

10  1401-02. Unlike earned wages in which the employees have a vested right, there is, prior to any

11  adjudication "no comparable vested interest in section 203 penalties. We thus hold section 203 penalties

12  cannot be recovered as restitution under the UCL." *Id*. at 1402. The same is true here: Plaintiffs have no

13  vested interest in missed rest premium pay until the Court awards it.

14        Accordingly, the Court should dismiss Plaintiffs' attempt to recover via a UCL claim for failure

15  to provide rest breaks and the associated penalties under Labor Code section 226.7(c).

16        **3.    UCL Claims Cannot Be Predicated on Labor Code Section 226 Violations.**

17        For the reasons discussed above, Plaintiffs also are precluded from recovering penalties under

18  the UCL for alleged Labor Code Sections 226 wage-statement violations. *See, e.g., In re Wal-Mart*

19  *Stores, Inc. Wage and Hour Litigation*, 505 F. Supp. 2d 609, 619 (N.D. Cal. May 29, 2007) ("claims

20  pursuant to Labor Code §§ 203 and 226 cannot support a § 17200 claim"). Accordingly, the Court

21  should dismiss Plaintiffs' UCL claim predicated on alleged Section 226 wage statement violations.

22        **4.    Plaintiffs May Not Seek Disgorgement of Profits Under the UCL.**

23        Plaintiffs' UCL claim seeks "an order disgorgement of all profits gained by operation of the

24  unfair business practices." (Compl. ¶ 65; 66; Prayer for Relief ¶ 10.)  Such a request is improper, and

25  not provided by the UCL. *Woo v. Home Loan Group, L.P*., 2007 WL 6624925 at *7 (S.D. Cal. Jul. 27,

26  2007) ("Plaintiff's prayer for damages includes a request for disgorgement of revenues, earnings, profits,

27  compensation and benefits obtained by Defendants pursuant to its UCL claim. . . . A plaintiff bringing a

28  UCL claim may not recover disgorgement beyond what it recoverable in restitution . . . . the Court

21

NOTICE AND MOTION TO DISMISS

grants [Defendant's] motion to strike Plaintiff's prayer for disgorgement."); *Cortez*, 23 Cal. 4th at 172 (2000) (no disgorgement under the UCL).

### 5.  Plaintiffs' PAGA Claim Fails to State a Claim for Relief.

#### a.  Plaintiffs Have Not Pleaded Facts Satisfying Administrative Prerequisites for Recovery of PAGA Penalties.

Individuals who bring claims under PAGA must comply with the administrative procedures set forth in California Labor Code § 2699.3, and must plead compliance with exhaustion requirements.  *See Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 385 (2005).  Plaintiffs have pleaded themselves out of their claim for PAGA penalties, by alleging a procedurally and substantively improper rush to the court, prior to providing the LWDA the required period to review the PAGA notice:

> "Named Plaintiffs are *in the process* of exhausting their administrative remedies as required by Labor Code section 2699.3(a) . . . . When Plaintiffs' administrative remedies are exhausted, Plaintiffs will amend the Complaint."

Compl. ¶ 55 (emphasis added). This undermines the core legislative purpose of PAGA exhaustion requirements (including amended statutory provisions that provide the LWDA a more extended period of time in which to review the notice).  The purpose of the PAGA notice requirement is to give notice to the state agency-the LWDA-so that it has "*the initial opportunity* to investigate and cite employers for Labor Code violations." *Caliber*, 134 Cal.App.4th at 375.

Plaintiffs' claim for PAGA penalties pursuant to California Labor Code § 2699 fails to state a claim for relief, because it affirmatively states the exhaustion requirement was not satisfied.  *See Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1011 (N.D. Cal. 2016) (PAGA's plain language bars an employee from bringing a PAGA action when the employee has failed to satisfy exhaustion requirement).[8]

#### b.  Plaintiffs' PAGA Claim Is Based on Inapplicable Labor Code Violations

The Court should dismiss Plaintiffs' PAGA claim for the further reason it seeks unavailable

---

[8] Defendants anticipate that Plaintiffs will argue the issue is mooted once the notice period is exhausted. That is not correct.  *See, e.g., Stagner v. Luxottica Retail N. Am., Inc.*, 2011 WL 3667502 (N.D. Cal. Aug. 22, 2011) ("Here, Plaintiff allegedly gave notice of her claims to the LWDA on May 12, 2011. She filed her lawsuit the same day. Plaintiff does not dispute that she did not satisfy the prerequisites for her PAGA claim, but instead argues that 'the passage of time has already mooted' this issue. This is incorrect. Because she brought her PAGA claim without satisfying the statute's requirements, she is not entitled to litigate this claim as of May 12, 2011, the date her complaint was filed.")

PAGA penalties for alleged wage statement violations and missed rest breaks. See Compl. ¶ 53.

PAGA authorizes employees to pursue claims through a private action that could previously only be recovered by the Labor Commissioner (under Section 2699(a)), and it creates new penalties (under Section 2699(f)) for certain Labor Code violations—those for which penalties already are not "specifically provided."  In other words, Section 2699(f) "establish[es] new civil penalties for Labor Code violations that did not previously carry a penalty."  *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1195 (2008). PAGA creates penalties only in limited circumstances: "For all provisions of this code except those for which a civil penalty is specifically provided  … ." Cal. Lab. Code § 2699(f).

The California Court of Appeal has confirmed that only where "no civil penalty for such conduct is 'specifically provided' in [the allegedly violated Labor Code] section [itself] or elsewhere [would] violations of this type [be] subject to the default remedy stated in section 2699, subdivision (f)." *Home Depot U.S.A., Inc. v. Superior Ct*., 191 Cal. App. 4th 210, 218 (2010); *see also Hernandez v. Towne Park, Ltd*., 2012 WL 2373372, at *17 (C.D. Cal. June 22, 2012); *Bright v. 99 Cents Only Stores*, 189 Cal. App. 4th 1472, 1481 (2010) (accord).

PAGA establishes two distinct enforcement mechanisms: (1) a private right of action for certain Labor Code provisions where none previously existed, under Section 2699(a); and (2) penalties imposed by PAGA itself under Section 2699(f) for violations of Labor Code provisions that do not carry their own penalties, which the wage statement and rest break statutes already do.

### i. Plaintiffs Are Not Entitled To PAGA Penalties For Alleged Wage Statement Violations Because Labor Code Sections 226(e)(1), 226.3, and 226.6 Already Provide For Such Penalties.

Plaintiffs are not entitled to any penalties under Section 2699(f) based on alleged wage statement violations. *Rosenstein v. Pratt*, 2016 WL 308593, at *3 (S.D. Cal. Jan. 25, 2016) (striking PAGA penalties predicated on Labor Code § 226 violations). The Labor Code section dealing with wage statements, Section 226(e)(1), already provides penalties for deficient statements:

> . . .the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000) ...."

Similarly, Labor Code section 226.3 also provides additional penalties for 226(a) violations:

> . . . a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation

in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of Section 226….

Finally, Labor Code section 226.6 fines employers who "knowingly and intentionally" violate Section 226 in an amount "not more than one thousand dollars ($1,000)."

As PAGA does not create additional penalties for violations of any provision "for which a civil penalty is specifically provided" (Cal. Lab. Code § 2699(f)), PAGA penalties are not available for violations of Section 226. *Rosenstein*, at *3 (PAGA penalties unavailable for § 226 violations).

In addition to the statute's plain language, PAGA's rationale for creating new penalties under Section 2699(f) simply does not apply to Section 226(a) violations, which already have multiple meaningful deterrents provided by Sections 226(e), 226.3, and 226.6. The Legislature acknowledged that it created new penalties through Section 2699(f) only when necessary, meaning only when the Labor Code had previously failed to provide for penalties as deterrents to unlawful conduct:

> [P]rivate actions to enforce the Labor Code are needed because LWDA simply does not have the resources to pursue all of the labor violations…. The bill would authorize civil penalties for any Labor Code violation currently lacking a specific penalty provision and authorizes aggrieved employees to bring private civil actions against employers.

*Home Depot*, 191 Cal. App. 4th at 223-24 (explaining PAGA's purpose) (quoting Assem. Com. on Approp., Bill Analysis, Sen. Bill No. 796 (2003-04 Regular Session), as amended July 16, 2003, at 2).

In sum, because Sections 226(e), 226.3, and 226.6 already penalize Section 226(a) violations, Section 2699(f) does not create a new penalty for those violations.  Accordingly, the Court should dismiss Plaintiffs' attempt to recover 2699(f) penalties for alleged 226(a) violations.

### ii.     Plaintiffs Are Not Entitled To PAGA Penalties For Alleged Rest Break Violations Under Labor Code Section 226.7(c).

Plaintiffs also seek Section 2699(f) penalties under PAGA for violations of Labor Code 226.7 for the alleged failure to authorize and permit rest breaks. Compl. ¶¶ 53-54. Based on the reasoning discussed above, such penalties are not recoverable for rest break violations because the Labor Code already provides for such penalties elsewhere. *Ruelas v. Costco Wholesale Corp.*, 67 F. Supp. 3d 1137, 1142-44 (2014) ("[B]ecause Section 226.7(c) provides a civil penalty, Ruelas cannot recover under Section 2699(f) and this claim must be dismissed.").

In their first claim, Plaintiffs identify Labor Code sections 226.7(c) as a basis for penalties for

24

rest break violations. See Comp. ¶ 41. Specifically, Labor Code section 226.7(c) provides for "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest . . . period is not provided." The additional hour of penalty pay is a "civil penalty" for purposes of Section 2699(f). *Singletary v. Teavana Corp.*, 2014 WL 1760884, at *4 (N.D. Cal. Apr. 2, 2014) (when "the wrong at issue in Section 226.7 is the non-provision of [meal or] rest breaks," then the case falls under the California Supreme Court's "characterization of Section 226.7's payment as penalties") (citing *Kirby*, 53 Cal. 4th 1244); *see also Brewer*, 168 Cal .App. 4th at 1254 (remedies for missed meal periods are "an award in the nature of liquidated damages under section 226.7"); accord *Nguyen*, 2011 WL 6018284, at *8 (additional hour of penalty pay for "missed meal breaks must be compensated under Section 226.7 and is liquidated damages, not wages earned for the purposes of Section 226(a)").

As discussed above, Section 2699(f) does not create additional PAGA penalties for Labor Code sections "for which a civil penalty is specifically provided." Cal. Lab. Code § 2699(f); *see also Hernandez*, 2012 WL 2373372, at *17; *Home Depot*, 191 Cal. App. 4th at 218; *Bright*, 189 Cal. App. 4th at 1481. Accordingly, because penalties are already provided elsewhere in the Labor Code for rest break violations, the Court should dismiss Plaintiffs' PAGA claim seeking additional 2699(f) penalties based on Section 226.7(c) rest break violations.

## IV.   **CONCLUSION**

Defendants respectfully request the Court grant their motion to dismiss Plaintiffs' Complaint, in its entirety, with prejudice.  Plaintiffs' claims are preempted by Section 301 of the LMRA, and Plaintiffs do not have a cognizable Section 301 claim, because they failed to exhaust the mandatory grievance and arbitration procedures under the CBA.  In addition, Plaintiffs' Complaint attempts to state claims and request remedies for which Plaintiffs cannot state a claim for relief, requiring dismissal of Plaintiff's derivative claims for Section 226 penalties, relief under the UCL, and PAGA penalties.

DATED: March 21, 2017                    SEYFARTH SHAW LLP


                                         By:  /s/ Michael W. Kopp
                                              Michael W. Kopp
                                         Attorneys for Defendants

38207032v.1