1

**HADSELL STORMER RENICK & DAI LLP**
Randy Renick (CA SBN 179652)
    (rrr@hadsellstormer.com)
Cornelia Dai (CA SBN 207435)
    (cdai@hadsellstormer.com)
128 North Fair Oaks Avenue, Suite 204
Pasadena, California 91103-3645
Telephone: (626) 585-9600 / Fax: (626) 577-7079

2

3

4

5

*Lead Plaintiffs' Counsel*

6

*Attorneys for Plaintiffs Jon Valliere, Eileen Foster,*
*Antonio Garcia, Samantha West, and the Putative Class*

7

8

[Additional Counsel Listed on Next Page]

9

10

### IN THE UNITED STATES DISTRICT COURT

11

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13

14

JON VALLIERE, EILEEN FOSTER, ANTONIO GARCIA, and SAMANTHA WEST, individually and on behalf of all similarly situated current and former employees,

Plaintiffs,

15

16

v.

17

18

TESORO REFINING AND MARKETING COMPANY LLC, TESORO LOGISTICS GP, LLC, and DOES 1 through 10, inclusive,

Defendants.

19

20

JINETRA BONNER, individually, on behalf herself and all others similarly situated,

Plaintiffs,

21

22

v.

23

24

TESORO REFINING & MARKETING COMPANY, LLC, a Delaware Limited Liability Company; and DOES 1 through 100 inclusive,

Defendants.

25

26

27

28

Case No. 3:17-CV-00123-JST
Case No. 3:17-CV-03850-JST

**CLASS ACTION**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION, APPROVAL OF CLASS NOTICE, AND SETTING OF FINAL APPROVAL HEARING**

Date:        January 22, 2020
Time:       2:00 p.m.
Crtroom:  6  (2nd Floor, Oakland)
Judge:      Hon. Jon S. Tigar

**GILBERT & SACKMAN, A Law Corporation**
Jay Smith (CA SBN 166105)
    (js@gslaw.org)
Joshua F. Young (CA SBN 232995)
    (jyoung@gslaw.org)
Nancy Sotomayor (CA SBN 312022)
    (nsotomayor@gslaw.org)
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000 / Fax: (323) 937-9139

*Attorneys for Plaintiffs Jon Valliere, Eileen Foster,
Antonio Garcia, Samantha West, and the Putative Class*


**COHELAN KHOURY & SINGER**
Timothy D. Cohelan (CA SBN 60827)
    (tcohelan@ckslaw.com)
Michael Singer (CA SBN 115301)
    (msinger@ckslaw.com)
Diana M. Khoury (CA SBN 128643)
    (dkhoury@ckslaw.com)
J. Jason Hill (CA SBN 179630)
    (jhill@ckslaw.com)
605 "C" Street, Suite 200
San Diego, California  92101
Telephone:  (619) 595-3001 / Fax: (619) 595-3000

*Attorneys for Plaintiff Jinetra Bonner and the Putative Class*

1
2

# TABLE OF CONTENTS

3

TABLE OF AUTHORITIES ...................................................................................... iii

4

I.      INTRODUCTION ............................................................................................1

5

II.     PLAINTIFFS' FACTUAL ALLEGATIONS ..................................................2

6

III.    THE PARTIES...................................................................................................3

7

IV.     PROCEDURAL HISTORY...............................................................................3

8

V.      INVESTIGATION AND DISCOVERY ..........................................................5

9

10

VI.     MEDIATIONS AND THE PROPOSED SETTLEMENT ................................7

11

        A.      Mediations...............................................................................................7

12

        B.      The Proposed Settlement. .......................................................................7

13

VII.    THE COURT SHOULD PRELIMINARILY APPROVE
        THE CLASS ACTION SETTLEMENT .........................................................11

14

15

        A.      The Settlement is the Product of Serious, Informed
                and Non-Collusive Arm's Length Negotiations.....................................13

16

17

        B.      Strength of Plaintiffs' Case and the Risk, Expense, Complexity,
                and Likely Duration of Further Litigation. ...........................................13

18

        C.      The Proposed Settlement is a Reasonable Compromise of Claims. ......14

19

20

        D.      The Extent of Discovery and Stage of the Proceedings Support
                the Settlement.........................................................................................16

21

        E.      Class Counsel Are Experienced in Similar Litigation. .........................17

22

23

        F.      The Settlement Proves a Fair Method of Allocation
                and Does Not Offer Preferential Treatment to
                the Class Representatives or Other Members of the Class. ...................17

24

25

        G.      The Settlement Does Not Have Any Obvious Deficiencies ..................19

26

                1.      Class Notice, Settlement Administration, and Method of Notice..............19

27

                2.      Cy Pres Recipient..........................................................................20

28

                3.      Class Action Fairness Act Notice ................................................20

i

Memorandum of Points and Authorities ISO Renewed Motion for Order Granting Preliminary Approval
Case Nos. 3:17-cv-00123-JST/3:17-CV-03850-JST

| | 4. | Differences Between the Settlement Class and the Class Proposed in the Operative Complaint. | 21 |

| | 5. | Differences Between Released Claims and Claims in the Operative Complaint | 22 |

| VIII. | THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED | | 22 |

| | A. | The Proposed Class is Sufficiently Numerous and Ascertainable. | 23 |

| | | 1. | There Are Questions of Law and Fact that Are Common to the Class. | 23 |

| | B. | Plaintiffs' Claims Are Typical of the Proposed Class. | 23 |

| | C. | Plaintiffs and Their Counsel Will Adequately Represent the Interests of the Proposed Settlement Class. | 24 |

| | D. | Common Issues Predominate Over Individual Issues. | 24 |

| | E. | Class Settlement Is Superior to Other Available Means of Resolution. | 25 |

| IX. | CONCLUSION | | 25 |

ii

Memorandum of Points and Authorities ISO Renewed Motion for Order Granting Preliminary Approval
Case Nos. 3:17-cv-00123-JST/3:17-CV-03850-JST

1

## TABLE OF AUTHORITIES

2

**Cases**

**Page(s)**

3

*Amchem Prods. v. Windsor,*
4
   521 U.S. 591 (1997)..................................................................................................22

5

*Angell v. City of Oakland, No. 13-cv-00190 NC,*
   2015 U.S. Dist. LEXIS 1037 (N.D. Cal. Jan. 5, 2015) ........................................12
6

7

*Armstrong v. Davis,*
   275 F.3d 849 (9th Cir. 2001) ...............................................................................23

8

*Augustus v. ABM Securities Services, Inc.,*
9
   2 Cal. 5th 257, 260 (2016) ........................................................................... *passim*

10

*Bell v. Home Depot U.S.A., Inc.,*
   No. 2:12-cv-02499 ...............................................................................................14
11

12

*Bellinghausen v. Tractor Supply Co.,*
   306 F.R.D. 245 (N.D. Cal. Mar. 19, 2015) ........................................................19

13

*Boyd v. Bechtel Corp.,*
14
   485 F. Supp. 610 (N.D. Cal. 1979) .....................................................................17

15

*Brinker Restaurant Corp. v. Superior Court,*
   53 Cal. 4th 1004 (2012) .......................................................................................25
16

17

*Buzas v. Phillips 66 Company,*
   Case No. 4:17-cv-00163-YGR (March 6, 2018), ECF No. 47 .............................19

18

*Chu v. Wells Fargo Invs., LLC,*
   Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 U.S. Dist. LEXIS 15821 (N.D. Cal.
19
   Feb. 16, 2011) ......................................................................................................19

20

*Churchill Vill., L.L.C. v. GE,*
   361 F.3d 566 (9th Cir. 2004) ...............................................................................19
21

22

*Covillo v. Specialty's Café,*
   No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837 (N.D. Cal. Mar. 6, 2014) ..............19
23

24

*Craft v. City of San Bernardino,*
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ...............................................................16

25

*Dennis v. Kellogg Co.,*
26
   697 F.3d 858 (9th Cir. 2012) ...............................................................................20

27

*Dunleavy v. Nadler,*
   213 F.3d 454 (9th Cir. 2000) ..............................................................12, 13, 15
28

iii

Memorandum of Points and Authorities ISO Renewed Motion for Order Granting Preliminary Approval
Case Nos. 3:17-cv-00123-JST/3:17-CV-03850-JST

**TABLE OF AUTHORITIES**
(CONTINUED)

Page(s)

**Cases**

*Dyer v. Wells Fargo Bank, N.A.*,
    303 F.R.D. 326 (N.D. Cal. 2014)......................................................................................16

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*. 661 F.2d 939 (9th Cir. 1981) ..................................17

*Jon Valliere, et al. v. Tesoro Refining and Marketing Company, LLC, Tesoro Logistics*
    *GP, LLC*,
    Case No. 3:17-cv-00123-JST .........................................................................................3, 4

*Linney v. Cellular Alaska Partnership*,
    151 F.3d 1234 (9th Cir. 1998) ........................................................................................15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004).....................................................................................16

*In re Netflix Privacy Litig.*,
    2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013)................................................13

*Noll v. eBay, Inc.*,
    309 F.R.D. 593 (N.D. Cal. 2015).....................................................................................12

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ..........................................................................................15

*In re Omnivision Technologies, Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...........................................................................17

*Ontiveros v. Zamora*,
    303 F.R.D. 356 (E.D. Cal. 2014).....................................................................................17

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ............................................................................................16

*Resnick v. Frank*,
    779 F.3d 934 (9th Cir. 2015) ..........................................................................................18

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ........................................................................................23

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..........................................................................................18

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ............................................................................................12

iv

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

**Cases**

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d 1114 (E.D. Cal. 2009).................................................................23

*Viceral v. Mistras Group, Inc.*
    No. 15-cv-02198-EMC, 2017 WL 661352 (N.D. Cal. Feb. 17, 2017)...............................15

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ......................................................................16

*Wolin v. Jaguar Land Rover North America, LLC.*,
    617 F.3d 1168 (9th Cir. 2010) .......................................................................25

**Statutes**

28 U.S.C. § 1715 ..................................................................................... 21

Cal. Bus. & Prof. Code § 17000, *et seq.* ...........................................................4, 22

Cal. Code of Civ. Pro. § 1542 ..........................................................................9

Cal. Lab. Code § 226 ................................................................................22

Cal. Lab. Code § 226.3 ..............................................................................22

Cal. Lab. Code § 226.7 ..............................................................................22

Cal. Lab. Code § 512 ................................................................................22

Cal. Lab. Code § 558 ................................................................................22

Cal. Lab. Code § 2698, et seq. .......................................................................22

Cal. Lab. Code § 2699, et seq. .......................................................................22

Class Action Fairness Act ...........................................................................20

**Other Authorities**

IWC Wage Order No. 1-2001 ........................................................................22

IWC Wage Order No. 4-2001 ..........................................................................3

Memorandum of Points and Authorities ISO Renewed Motion for Order Granting Preliminary Approval
Case Nos. 3:17-cv-00123-JST/3:17-CV-03850-JST

## <u>TABLE OF AUTHORITIES</u>
(CONTINUED)

Page(s)

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................... *passim*

Fed. R. Civ. P. 30(b)(6) ................................................................................................................. 6

Memorandum of Points and Authorities ISO Renewed Motion for Order Granting Preliminary Approval
Case Nos. 3:17-cv-00123-JST/3:17-CV-03850-JST

I.       INTRODUCTION

Jon Valliere, Eileen Foster, Antonio Garcia, Samantha West, and Jinetra Bonner ("Plaintiffs")
seek preliminary approval of a proposed $15,250,000 wage and hour class action settlement on behalf
of an estimated 1,400 class members, which will pay each an average of $8,012.50 without the need to
return a claim form.  The proposed Class consists of the following individuals who worked for
Defendants Tesoro Refining and Marketing Company LLC and Tesoro Logistics GP, LLC
("Defendants" or "Tesoro"), at any time during the period from July 19, 2013 through the date of
Preliminary Approval:

> all current and former employees of Defendants (or any of their affiliates or successors)
> who worked a rotating 8-hour, 10-hour, or 12-hour shift in operations at any time during
> the Class Period at the i) Martinez Refinery or Chem Plant in Martinez, California; ii) the
> Los Angeles Refinery, Carson Operations, in Carson and Long Beach, California; iii) the
> Los Angeles Refinery, Wilmington Operations, in Wilmington, California; iv) the Tesoro
> Logistics terminal facilities at the Martinez Refinery; and v) the Long Beach Terminal,
> T2, Berth 121, and East Hynes in Long Beach, Carson, Signal Hill, and/or Wilmington,
> California.

Attached as Exhibit 1 to the Declaration of Randy Renick ("Renick Decl.") filed concurrently
herewith is a true and correct copy of the Joint Stipulation of Class Action Settlement and Release, as
amended by Exhibit 2, the Amendment to Joint Stipulation of Class Action Settlement and Release
("Settlement Agreement" or "SA").  Plaintiffs contend that members of the class did not receive off-
duty rest breaks as required by California law. Defendants deny any violations were committed and
contend they complied with all relevant laws.

Subject to approval of this Court, the Parties have agreed to settle this action on an all-cash,
non-reversionary basis for $15,250,000.  Before settlement, Plaintiffs conducted extensive investigation
of Defendants' wage and hour practices at their three California refineries, particularly in regard to the
provision of rest breaks.  The investigation included interviews of operators at each of Defendants'
California refineries and review of relevant documents, including workplace manuals, emergency
procedures, rules, and employee handbooks.  In addition, Defendants provided, and Plaintiffs reviewed,
Defendants' payroll data, which included the number of shifts worked by each putative Class Member
from the beginning of the Class Period and the applicable hourly wages.  This discovery allowed
Plaintiffs to thoroughly evaluate liability and to determine the amount incurred in damages, providing a

sufficient basis upon which to negotiate a settlement.  The resolution was the result of arm's-length negotiations following two full-day mediation sessions, including one day with highly skilled and experienced San Francisco mediator David Rotman.  Overall, the Settlement is an excellent result for the Class in light of all the relevant circumstances.

In support of their renewed motion for preliminary approval, the parties have entered into a modification of the Settlement Agreement to address the two issues the Court raised in its October 18, 2019 Order, narrowing the scope of the class members' release and making the time period to object the same as the time period to opt-out, which is 60 days from the postmark date of class notice.

Accordingly, Plaintiffs respectfully request that the Court conditionally certify the Class for settlement purposes, grant preliminary approval of the Settlement, and enter the proposed order filed concurrently herewith.

## II.      PLAINTIFFS' FACTUAL ALLEGATIONS

The proposed Class consists of operators employed by Defendants at their oil refining, chemical plants, and distribution facilities in Los Angeles and Contra Costa Counties at any time during the period from July 19, 2013 through the date of Preliminary Approval.  Specifically, Plaintiffs and all members of the Class work at facilities operated by Tesoro at the 1) Martinez Refinery; 2) Carson Refinery; and 3) Wilmington Refinery.  Each refinery operates 24 hours a day, 365 days a year. Operators are generally on a 12-hour continuous shift schedule, with a daytime 12-hour shift and a nighttime 12-hour shift.

The general duties of operators are the same at each of refineries operated by Defendants. All operators are responsible for continuously and proactively monitoring tank, tower and oil levels, temperatures for equipment and processes, flows for processes and lubrication, and pressure readings for different processes and equipment.

The oil refining process is a dangerous operation that involves hazardous substances and has the potential for catastrophic consequences. Throughout their shifts, Defendants require Plaintiffs and the other operators to monitor the refining process, respond to upsets and critical events, and maintain the safe and stable operation of their units.  In order to do so, Plaintiffs and the other operators are required to remain attentive, carry radios, and be reachable at all times during their shifts.  They are also

1  required to remain in contact with supervisors and other employees working in their unit throughout

2  their shifts.  As a result, Plaintiffs and the other operators have worked shifts without receiving off-duty

3  rest periods because they are constantly and continuously responsible for their units.

4  **III.    THE PARTIES.**

5       <u>Defendants</u>. Defendants, Tesoro Refining & Marketing Company, LLC, Tesoro Logistics GP,

6  LLC, and Marathon Petroleum Corporation, operate refineries, chemical facilities, and terminals in

7  Martinez, Wilmington, and Carson, California.  Specifically, Defendants have each owned and/or

8  operated one or more of the following worksites during the relevant time period: 1) Martinez Refinery

9  and Chem Plant in Martinez, California; 2) the Los Angeles Refinery, Carson Operations, in Carson

10  and Long Beach, California; 3) the Los Angeles Refinery, Wilmington Operations, in Wilmington,

11  California; 4) the Tesoro Logistics terminal facilities at the Martinez Refinery; and 5) the Long Beach

12  Terminal, T2, Berth 121, and East Hynes in Long Beach, Carson, Signal Hill, and/or Wilmington,

13  California.  Each facility operates continuously, 24 hours a day, seven days a week.  Renick Decl. ¶ 38.

14       <u>Plaintiffs/Class Representatives</u>. Plaintiffs Eileen Foster, Antonio Garcia, and Samantha West

15  work as Operators at Tesoro's Martinez refinery in Martinez, California.  Plaintiff Jon Valliere works

16  as an Operator at Tesoro's Carson Refinery, and Plaintiff Jinetra Bonner works as a Console Operator

17  at Tesoro's Wilmington refinery.  Renick Decl. ¶ 41.

18  **IV.    PROCEDURAL HISTORY**

19       *Azpeitia/Valliere Action—* On January 10, 2017, Plaintiffs Chris Azpeitia, Eileen Foster,

20  Antonio Garcia, and Samantha West commenced a class action against Defendants in *Jon Valliere, et*

21  *al. v. Tesoro Refining and Marketing Company, LLC, Tesoro Logistics GP, LLC*, Case No. 3:17-cv-

22  00123-JST in the U.S.D.C. for the Northern District of California.  ECF No. 1.  The complaint asserted,

23  among other things, that Defendants require refinery, plant, and logistics operators to maintain radios

24  during rest breaks in violation of the California Supreme Court's interpretation of Wage Order No. 4-

25  2001 in the *Augustus v. ABM Securities Services, Inc.*, 2 Cal. 5th 257, 260 (2016) ("*Augustus*")

26  decision, which held rest periods cannot be "on call."

27       The Complaint alleged the following causes of action: (1) Failure to authorize and permit duty

28  free rest periods; (2) Failure to furnish accurate wage statements; (3) Penalties under the California

Private Attorneys General Act, California Labor Code §§ 2698 *et seq.*; and (4) Violation of the Unfair Competition Law, Business & Professions Code §§ 17200 *et seq.* Plaintiffs sought unpaid wages, statutory and civil penalties, restitution, attorneys' fees and costs, interest, and injunctive and declaratory relief for the time period from January 10, 2013 to the present. ECF No. 1.

On March 21, 2017, Plaintiff amended the complaint to add claims under PAGA. ECF No. 21.

*Bonner Action*— On March 22, 2017, Plaintiff Jinetra Bonner commenced a class action in the Superior Court of California, County of Sacramento, Case No. 34-2017-00209750, against Defendants entitled *Jinetra Bonner v. Tesoro Refining & Marketing Company LLC*. Bonner contended, among other things, that Defendants failed to provide off-duty paid rest periods in violation of California's Supreme Court's rest break interpretation in *Augustus* and implemented unlawful "on-duty meal period agreements" in violation of the applicable wage orders and California labor laws.

*Coordinated Proceedings*— On July 25, 2017, *Bonner* was related to the *Azpeitia* class action and assigned to the Hon. Jon S. Tigar. ECF Nos. 22, 23. On September 14, 2017, the Court consolidated the actions and appointed Hadsell Stormer & Renick, LLP as interim lead counsel. ECF No. 52.

On October 12, 2017, a Consolidated Class Action Complaint for Damages, Restitution, and Injunctive Relief was filed in *Jon Valliere, et al. v. Tesoro Refining and Marketing Company, LLC, et al.*, Case No. 3:17-cv-00123-JST, in the Northern District of California, consolidating the two actions and replacing Plaintiff Chris Azpeitia with Plaintiff Jon Valliere. ECF No. 56. Defendants answered the Consolidated Class Action Complaint on October 26, 2017. ECF No. 57.

In conjunction with the proposed Settlement, and as a term of the Settlement Agreement, the Parties stipulated to the filing of Plaintiffs' First Amended Consolidated Class Action Complaint ("FACCAC") to modify the class definition. ECF Nos. 87-88. The FACCAC alleges 1) Defendants did not provide Plaintiffs and the putative Class with compliant uninterrupted and off-duty rest breaks, and did not pay premium wages for non-compliant rest breaks; 2) a derivative claim for not providing accurate wage statements; 3) penalties under PAGA, and 4) California Business & Professions Code §§17200 *et seq.* for unfair business practices based on the alleged non-compliant rest breaks. ECF No. 89.

4

Memorandum of Points and Authorities ISO Renewed Motion for Order Granting Preliminary Approval
Case Nos. 3:17-cv-00123-JST/3:17-CV-03850-JST

On May 8, 2019, Plaintiffs filed their Motion for Order Granting Preliminary Approval. ECF Nos. 90- 94.  On June 6, 2019, Class Members Rogers, McDonald, and Dumont filed a Partial Objection to the Preliminary Approval Motion asserting that the Settlement "impairs the rights of these Objectors' unions under their collective bargaining agreements with Defendant[s]" and asking the Court to deny preliminary approval ECF No. 96 at 2. Specifically, the Objectors asserted that the Settlement "conflicts with the [collective bargaining agreements] because it does not account for the Unions' rights to dues deductions from the portion of the class members' settlement payments allocated back wages." *Id*. at 5.  On June 14, 2019, Defendants filed a response to the objection, contending among other things, that the Objectors' arguments were preempted by federal labor laws and distinguishing the authority cited in support of the objection. ECF No. 99.  On June 18, 2019, Plaintiffs filed a response, arguing that the objections implicated only the rights of a non-party union and not the interests of any class member.  ECF No. 100.

On October 18, 2019, the Court issued its Order denying preliminary approval noting two deficiencies to be corrected: the narrowing of the Class Members' release, and the increasing of the Notice Response Deadline from 45 to 60 days for Class Members to submit objections and to request exclusion from the Settlement.  ECF No. 106 at 8, 9.  These deficiencies have been corrected as reflected in the Amendment to Joint Stipulation of Class Action Settlement and Release.  Renick Decl. ¶ 32, Exhibit 2.  Furthermore, with respect to the Partial Objection, the Court stated it

> "declines to withhold preliminary approval on the basis of the objection.  This ruling is without prejudice to Objectors objecting to the final approval.  However, if Objectors do renew their arguments, they should respond to the contentions made by Plaintiffs and Defendants that (1) the attempt to enforce the union dues allocation provision of the collective bargaining agreements is preempted by the federal labor laws; and (2) that no individual class member's interests are adversely affected by the failure of the proposed settlement to satisfy class members' dues obligations because class members can simply pay their dues directly; and (3) that the consent decree cases submitted by objectors are inapplicable."  ECF No. 106 at 10.

## V.   INVESTIGATION AND DISCOVERY

Plaintiffs conducted an extensive investigation of Defendants' wage and hour practices at their California facilities, particularly in regard to the provision of rest breaks. In the *Bonner* action, on January 12, 2017, Plaintiff Bonner requested from Defendants a full and complete copy of her

5

employee personnel file. Defendants complied, producing over 225 pages of documents. On May 20, 2017, Plaintiff served Defendant with a Request for Production of Documents, as well as a request to preserve certain video surveillance footage. Declaration of Michael Singer ("Singer Decl."), Dkt. 91-1, ¶ 10. In the *Azpeitia* action, on July 18, 2017, Plaintiffs served their opening round of discovery on Defendants Tesoro Logistics GP, LLC and Tesoro Refining and Marketing Company LLC, which included Interrogatories and Requests for Production of Documents. Through this discovery, Plaintiffs primarily sought contact information for the putative Class during the relevant Class Period, as well as their job titles and employee numbers. Defendants served their respective responses and objections on September 12, 2017. Renick Decl. ¶ 48.

Once the cases were consolidated, and over the course of nearly a year, and two stipulated protective orders, ECF Nos. 61, 67, the Parties exchanged over 5,500 pages of documents pertinent to the claims alleged and defenses asserted, including Plaintiffs' personnel files, workplace manuals, and employee handbooks, organizational charts, an operations assessment report, job descriptions, payroll and wage data information, emergency procedures and rules, and multiple union agreements and policies, among other various documents. Plaintiffs' investigation included interviews of operators from each of Defendants' California facilities and review of relevant documents produced in response to discovery requests. Renick Decl. ¶ 49.

In addition, in early 2018, the depositions of the following individuals were taken: Plaintiff Bonner on February 12, 2018; Plaintiff Valliere on February 14, 2018; and the FRCP 30(b)(6) witness Karen Kawano (regarding the Los Angeles area facilities) on February 15, 2018. Renick Decl. ¶ 50.

Following agreement to attend a first mediation in April 2018, Defendants produced, and Plaintiffs reviewed, Defendants' payroll data, the applicable base hourly rates, the number of operators and the number of shifts during the Class Period. Renick Decl. ¶ 51.

After an unsuccessful second mediation in July 2018, the Parties aggressively litigated their respective positions. Plaintiffs interviewed dozens more putative Class Members about their job duties and responsibilities, and obtained declarations in support of their class certification motion. Plaintiffs also took a FRCP 30(b)(6) deposition of Justin Lawrence regarding Tesoro's Martinez locations on September 6, 2018. Defendants took the depositions of three putative Class Members, Larry Dorsz on

6

1  September 10, 2018; Jay Shah on September 11, 2018; and Joe Bugby on September 13, 2018. Renick

2  Decl. ¶ 53.

3  **VI.    MEDIATIONS AND THE PROPOSED SETTLEMENT**

4      **A.    Mediations.**

5      The Parties attended mediation with Jill Sperber of Judicate West on April 11, 2018, in Los

6  Angeles.  After a full day of negotiations, an agreement could not be reached. Renick Decl. ¶ 51. On

7  July 18, 2018, the Parties attended a second mediation with David Rotman, an experienced and well-

8  regarded wage and hour class action mediator in San Francisco.  Unfortunately, after another lengthy

9  day of negotiations, the actions still could not be settled.  Thereafter, while Plaintiffs moved forward

10 with drafting their certification motion, Mediator Rotman remained involved and ultimately negotiated

11 the proposed Settlement accepted by the Parties in mid-November 2018.  Renick Decl. ¶ 55.

12     **B.    The Proposed Settlement.**

13     <u>Total Settlement Fund</u>. The Parties have agreed that the Consolidated Actions may be settled

14 and compromised for the Gross Settlement Amount ("GSA") of $15,250,000, which includes, subject

15 to and contingent upon the approval of this Court, (a) Plaintiffs' request for reasonable attorneys' fees;

16 (b) litigation expenses (estimated to be less than $100,000); (c) Class Representative service payments

17 to Plaintiffs Jon Valliere, Eileen Foster, Antonio Garcia, Samantha West, and Jinetra Bonner, each in

18 the sum of $7,500; (d) administration fees and expenses to CAC Services Group, LLC, in the amount of

19 up to $45,000; and (e) the payment to the California Labor and Workplace Development Agency of

20 $37,500 (75% of $50,000) allocated for the payment of all applicable civil penalties under PAGA.

21 Renick Decl., Ex. 1 (hereinafter "SA") ¶¶ 18, 32, 39, 48, 50.  Defendants will pay, in addition to the

22 GSA, the employers' share of withholdings and taxes.  SA ¶ 49.  The Settlement is non-reversionary.

23 SA ¶ 32. Uncashed settlement check(s), if any, will be awarded *cy pres* to the Loyola Law School

24 Clinical and Experiential Program subject to court approval. SA ¶¶ 68, 106.

25     <u>Settlement Class</u>. The settlement class members ("Class" or "Class Members"), as stipulated to

26 by the Parties, are the following individuals who worked for Defendants at any time during the period

27 from July 19, 2013 through the date of Preliminary Approval ("Class Period"):

28     all current and former employees of Defendants (or any of their affiliates or successors)

who worked a rotating 8-hour, 10-hour, or 12-hour shift in operations at any time during the Class Period at the i) Martinez Refinery or Chem Plant in Martinez, California; ii) the Los Angeles Refinery, Carson Operations, in Carson and Long Beach, California; iii) the Los Angeles Refinery, Wilmington Operations, in Wilmington, California; iv) the Tesoro Logistics terminal facilities at the Martinez Refinery; and v) the Long Beach Terminal, T2, Berth 121, and East Hynes in Long Beach, Carson, Signal Hill, and/or Wilmington, California.

SA ¶ 24.  Plaintiffs seek conditional certification of the Class for settlement purposes, approval of which is required by the terms of the Agreement. SA ¶¶ 62 a.  For purposes of settlement distributions, "Participating Class Members" will be those Class Members who do not timely exercise their right to opt out of the Class. SA ¶ 40.

Distribution to Class Members. After all Court-approved deductions from the GSA, the remaining sum ("Net Settlement Amount" or "NSA"), estimated at $11,217,500, will be distributed to all Class Members who do not request to be excluded from Settlement. SA ¶ 47.   The primary mechanism for distribution of the Settlement involves cash payment to members of the settlement class according to the number of qualifying 8, 10, and 12-hour shifts worked by each Class Member during the class period ("Qualifying Shift"). Each Qualifying Shift of 8 hours is assigned a value of .8 Credits, each Qualifying Shift of 10 hours is assigned a value of 1.0 Credit, and each Qualifying Shift of 12 hours is assigned a value of 1.2 Credits. Any Class Member who worked at least one Qualifying Shift, but not more than 25 Qualifying Shifts, will receive 25 Credits. The Administrator will then divide the Net Settlement Fund by the total number of Credits, resulting in a value for each Credit.  The Administrator will then take the credit value and multiply it by the number of Credits awarded to each Class Member to determine the Individual Payment. SA ¶¶ 88a-e.  On average, each Class Member will receive $8,012.50.[1]  Renick Decl. ¶ 8.

Payment of PAGA Claims. The total amount of the Settlement Fund allocated to PAGA penalties is fifty thousand dollars ($50,000), with seventy-five percent (75%) of the PAGA penalties, or $37,500, being paid to the California Labor and Workforce Development Agency ("LWDA") and twenty-five percent (25%) of the PAGA penalties, or $12,500, being paid to the Class Members.  SA ¶ 59.

---

[1] Class Members' Individual Settlement Payments will be allocated 50% to wages subject to withholdings for which an IRS Form W-2 will be issued, 25% to interest, and 25% to penalties under the California Labor Code for which an IRS Form 1099 will be issued.  SA ¶ 91.

Additional Payment to Named Plaintiffs. The Settlement Agreement provides for a Service Payment for each of the five Named Plaintiffs in an amount not to exceed $7,500 for their service in bringing and prosecuting the class actions on behalf of the Class, risks undertaken for the payment of costs in the event of an unsuccessful outcome, and a waiver of the protections under Code of Civil Procedure section 1542.  SA ¶¶ 48, 58.  Each Named Plaintiff will agree to a general release of all claims, including waiver of California Civil Code section 1542.  SA ¶¶ 114-116.  This payment shall be in addition to whatever portion of the settlement proceeds each Named Plaintiff is otherwise entitled to receive.  Renick Decl. ¶ 27.

Attorneys' Fees and Costs. The Settlement Agreement provides for an award of reasonable attorneys' fees and costs from the Settlement Fund. SA ¶¶ 51–57.  Defendants have agreed not to oppose Plaintiffs' request for reasonable attorneys' fees and costs.  *Id.* Plaintiffs intend to seek by motion, filed and posted online at least 35 days before the deadline to object or opt out of the Settlement, an award of 25% of the total GSA, or $3,812,500, and litigation costs of up to $100,000. Renick Decl. ¶¶ 24, 26.

Settlement Administration. The Parties have agreed to retain CAC Services Group, LLC ("CAC" or "Settlement Administrator"), located in Eden Prairie, Minnesota, to act as the impartial Settlement Administrator.  CAC's fees, for which it has provided a bid of $18,000, are to be paid out of the Settlement Fund.  Renick Decl. ¶ 15; SA ¶¶ 18, 60. CAC's duties shall include, among others: timely mailing the "Notice Packet" to the class members; establishing and maintaining a website containing the key documents in the case, including the Notice of Class Action Settlement, Change of Address Form, Settlement Agreement, Motion for Preliminary Approval, Motion for Final Approval, and Motion for Attorneys' Fees and Costs, as they become available; providing toll-free telephone support and a post office box to facilitate Class Member communications; calculating each Class Member's number of Qualifying Shifts, including resolving any disputes about the number of Qualifying Shifts worked by any class Member; determining the amount of payroll taxes owed by Defendants; calculating and distributing the individual settlement checks, the PAGA payment, the service awards, and the attorneys' fees and costs payment, as approved by the Court; and forwarding sums of uncashed checks as *cy pres* to the Loyola Law School Clinical and Experiential Learning

9

1  Programs.  SA ¶ 106.

2      <u>Class Notice and Notice Plan.</u> The Settlement Agreement contemplates, among other things,

3  that this Court will conditionally certify a settlement class and grant preliminary approval of the

4  Settlement.  SA ¶ 62.  After preliminary approval and class certification, the Settlement Agreement

5  requires that the court-approved Class Notice, Change of Address Form, and a pre-printed return

6  envelope (collectively, "Notice Packet") be disseminated to the Class no later than 15 business days

7  after the Administrator receives the Class List and Data from Defendants (which must be provided by

8  Defendants to the Administrator within 20 calendar days after Preliminary Approval).  SA ¶¶ 62–67.

9  The Notice Distribution Plan relies on U.S. Mail.  Renick Decl. ¶ 21.

10      The Class Notice also advises the Class Members of: (1) their right to participate in the

11  Settlement; (2) that each will receive a payment without a claim form; (3) the amount of estimated

12  payment he or she will receive, and the formula used to calculate that payment; (4) that a current

13  address must be kept on file with the Administrator to receive a payment; (5) how to object to the

14  Settlement; (6) how to opt out of the Settlement; (7) how to challenge the information upon which their

15  payment will be calculated; (8) the procedures and timing for doing each of these acts; and (9) and the

16  date set for the final approval hearing.[2]  SA ¶ 66.   Class Members will have a period of 60 days within

17  which to object to the Settlement, request exclusion from the Settlement, or to dispute the information

18  upon which their settlement payments will be calculated.  Renick Decl. ¶ 32, Exhibit 2.

19      The Class Notice also provides the following: (1) contact information for class counsel to

20  answer questions; (2) the address for a website, maintained by the claims administrator or class counsel,

21  that has links to the notice, motions for approval and for attorneys' fees and any other important

22  documents in the case; (3) instructions on how to access the case docket via PACER or in person at any

23  of the court's locations. The Notice states the date of the final approval hearing and clearly states that

24  the date may change without further notice to the class. The Notice also states that class members

25  should check the settlement website to confirm that the date has not been changed. *See* Amended Class

26   

27  [2] The language suggested for inclusion by the Northern District Guidance (i.e., a summary of the proposed settlement; the availability of settlement documents; who Class Members should contact; how to file an objection), has been included in the proposed Notice. Renick Decl. ¶ 21; SA, Ex A, at § 21, attached as Exhibit A to Exhibit 2 to the Renick Declaration.

28   

Notice, attached as Exhibit A to Exhibit 2 to Renick Decl. ("Notice"), § 21.

Released Claims. Class Members who do not request to be excluded by returning a valid and timely request as described in the Class Notice will release only those claims that were alleged in the Class Actions that arose during the Class Period, including in each of the complaints filed in the *Azpeitia/Valliere* action, *Bonner* action, and consolidated action against Defendants and their subsidiaries, parents, agents and affiliates, including Marathon Petroleum Corporation and Andeavor ("Released Parties").  Renick Decl. ¶ 32, Exhibit 2.

Proposed Schedule and Final Fairness Hearing. The following schedule sets forth a proposed sequence for the relevant dates and deadlines.  This schedule is also stated in the proposed order filed concurrently herewith.

| | |
|---|---|
| 20 calendar days after Preliminary Approval: | Defendants provide the Claims Administrator the Class List and Data, which shall include the following information for each Class Member: (1) full name, (2) most recently known mailing address, (3) email address (to the extent available), (4) social security number, (5) dates of employment, and (6) number of Qualifying Shifts worked during the Class Period.  SA ¶ 67. |
| 15 business days after Administrator's receipt of Class List and Data: | Class Notice is mailed to all Class Members.  SA ¶ 72. |
| 35 calendar days prior to Notice Response Deadline: | Plaintiffs' Motion for Attorneys' Fees and Costs is filed and posted on case website.  SA ¶ 69. |
| 60 calendar days after Class Notice is mailed: | Last day for Class Members to file written objections to the settlement with the Court. Any objector who intends to appear at the Final Approval Hearing must include a Notice of Intent to Appear in their written objection.  Amendment to SA ¶ 1. . |
| 60 calendar days after Class Notice is mailed: | Last day for Class Members to opt out of the Settlement by mailing requests for exclusion to the Claims Administrator. Amendment to SA ¶ 1. |
| 35 calendar days before  Final Fairness Hearing: | Plaintiffs file Motion for Final Approval. |
| **Set by Court* | Final Fairness Hearing and Hearing on Plaintiffs' Motion for Attorneys' Fees and Costs |

## VII.   THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT

A class action may not be dismissed, compromised, or settled without the approval of the Court.

11

Memorandum of Points and Authorities ISO Renewed Motion for Order Granting Preliminary Approval
Case Nos. 3:17-cv-00123-JST/3:17-CV-03850-JST

FRCP Rule 23(e). The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000).  Approval is a two-step process under Rule 23(e), where "the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Noll v. eBay, Inc.*, 309 F.R.D. 593, 602 (N.D. Cal. 2015) (internal citations omitted).

At this stage, the Court is not making a final determination on whether the settlement is fair, reasonable, and adequate, as is ultimately required by FRCP Rule 23(e).  The Court's role is to determine whether the settlement terms fall within a reasonable range of possible settlements, with "proper deference to the private consensual decision of the parties." *Id.*

Courts in the Northern District of California have found preliminary approval of a settlement appropriate when the settlement falls within the range of possible approval; appears to be the product of serious, informed, non-collusive negotiations; does not improperly grant preferential treatment to class representatives or segments of the class; and has no obvious deficiencies.  *Angell v. City of Oakland, No. 13-cv-00190 NC*, 2015 U.S. Dist. LEXIS 1037, at *21–22 (N.D. Cal. Jan. 5, 2015) (quotations omitted) "Closer scrutiny is reserved for the final approval hearing."  *Harris*, 2011 U.S. Dist. LEXIS 48878, at *24.

In order to determine whether a proposed settlement is fair, adequate, and reasonable, courts must balance a number of factors. These factors may include, among others: "the strength of plaintiff's case; the risk, expense, complexity, and the likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1378 (9th Cir. 1993) (citation and quotations omitted.)

These factors support the conclusion that the proposed Settlement is "fair, adequate and reasonable."

/ / /

/ / /

## A.    The Settlement is the Product of Serious, Informed and Non-Collusive Arm's Length Negotiations.

The fairness and reasonableness of a settlement agreement is presumed "where that agreement was the product of non-collusive, arm's length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, 2013 U.S. Dist. LEXIS 37286, *11 (N.D. Cal. Mar. 18, 2013). The settlement negotiations between the Parties, have been, at all times, adversarial and non-collusive in nature.  The proposed Settlement here was reached in November 2018 after a substantial exchange of information, exhaustive analysis, extensive investigation, two full days of arm's-length negotiations before respected mediators with expertise in the management and resolution of similar cases (April 11, 2018 and July 18, 2018), and nearly four months thereafter of continued negotiations facilitated by a mediator while Plaintiffs continued to prepare their certification motion. Renick Decl. ¶¶ 49, 56.  During this process, Class Counsel, who are experienced wage and hour practitioners, also worked closely with the Named Plaintiffs and other Class Members to gain knowledge about the rest period policies and practices and the general working conditions of operators.  Renick Decl. ¶ 58.

The proposed settlement is, therefore, presumptively fair and reasonable.

## B.    Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation.

In evaluating the fairness, reasonableness, and adequacy of the Settlement, the Court should weigh the strength of Plaintiffs' case against the risk and expense of continued litigation.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  While Plaintiffs believe in the merits of their case, they also recognize the inherent risks and uncertainty of litigation, including that the Class could receive nothing, and understand the benefit of providing significant settlement payments to the Class now.  Plaintiffs' claims involve disputed legal issues and fact-specific arguments that the Parties have been litigating fiercely since inception of the actions.  While Plaintiffs firmly believe in the strength of their claims, Tesoro's defenses create a possibility the claims might not be certified or may fail on the merits.  Renick Decl. ¶ 57.

If the proposed Settlement had not been achieved, continued litigation of the claims would take substantial time and possibly confer no benefit upon the Class. With class claims for violation of wage and hour laws, litigation can extend for many years due to the many hurdles facing plaintiffs in class

13

1    actions.  It was also likely that the action would continue to be fiercely litigated by the Parties;

2    accordingly, many more years of litigation, which inevitably involve significant additional expenses,

3    were a real possibility. By contrast, the Settlement will yield a prompt, certain, and substantial recovery

4    for the Class, without need for additional time or judicial resources.  Renick Decl. ¶ 57.

5          Thus, on balance, these factors weigh in favor of the Settlement.

6          **C.       The Proposed Settlement is a Reasonable Compromise of Claims.**

7          Plaintiffs' Counsel believe the proposed Settlement is in the best interest of the Class based on

8    detailed knowledge of the factual and legal issues present in this action. Plaintiffs' Counsel considered,

9    among other issues, the risks of an adverse class certification and/or summary judgment ruling and trial

10   and other normal perils of litigation that affect the value of the claims in reaching the proposed

11   Settlement. Renick Decl. ¶ 57.  After serious consideration of all facts and arguments, Plaintiffs and

12   Plaintiffs' Counsel concluded the terms and amount of the proposed Settlement are fair and reasonable.

13   The Settlement provides for the payment of $15,250,000. There are approximately 1,400 class

14   members.  The net settlement, after the deduction of fees, costs, and administration is $11,217,500.

15   The average net payment to each class member will be approximately $8,012.50.  Based on Plaintiffs'

16   review of timecard and payroll data of all shifts during the class period, the total damages at the time of

17   the July 18, 2018 mediation were approximately $30,000,000.  The settlement amount of $15,250,000

18   is, therefore, approximately 50% of the total damages that Plaintiffs could have recovered on the rest

19   break and derivative claims.  Renick Decl. ¶ 9.

20         The Class' primary claim is for the non-compliant rest breaks and compensation of one hour's

21   premium pay for each such failed rest break.  Tesoro's written policies regarding breaks provided for

22   duty-free rest breaks, although in practice, the Class was required to and did carry their radios at all

23   times, including their rest breaks.  Plaintiffs believe that the California Supreme Court's clarification of

24   the off-duty nature of rest breaks in *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016),

25   provided clear guidance regarding an employer's rest break obligations under California law and

26   confirmed Defendants' failure to provide operators with lawful rest breaks. Nonetheless, district courts

27   have not consistently interpreted or applied the decision in all circumstances.  *See, e.g., Bell v. Home*

28   *Depot U.S.A., Inc.*, No. 2:12-cv-02499 JAM-CKD, 2017 U.S. Dist. LEXIS 55442, at *5 (E.D. Cal. Apr.

14

10, 2017) (concluding *Augustus* was not applicable because the court did not consider an on-premises rest break policy which does not require employees to remain on call).

Plaintiffs alleged claims for a violation of Labor Code section 226.7 (Accurate Wage Statement) and section 2699 (PAGA). The Settlement provides that $50,000 will be allocated to penalties under the PAGA, with 75% of the PAGA penalties ($37,500) being paid to the California Labor and Workforce Development Agency ("LWDA") and 25% of the PAGA penalties ($12,500) being paid to Settlement Class Members who do not opt out.  Renick Decl. ¶ 11. This amount is reasonable and adequate given that the possible recovery on the PAGA claim is within the Court's discretion and varies tremendously from thousands to a few million dollars, and that there is "a substantial risk of recovering nothing" or very little. *See, e.g., Viceral v. Mistras Group, Inc*. No. 15-cv-02198-EMC, 2017 WL 661352, at *3 (N.D. Cal. Feb. 17, 2017).

Moreover, a settlement is not judged *solely* against what might have been recovered had Plaintiffs prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable. *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1242 (9th Cir. 1998); *In re Mego Fin. Corp. Sec. Litig.,* 213 F. 3d 454, 459 (9th Cir. 2000).  "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not . . . render the settlement inadequate or unfair." *Id.* at 628. Accordingly, the proposed Settlement is not to be judged against a speculative measure of what might have been achieved.  *Linney,* 151 F.3d at 1234.

*Past Distributions*—As set forth in the declaration of lead class counsel, the past distributions for two comparable class settlements, in which counsel represented similar classes of refinery operators for rest break violations, further support the reasonableness of this Settlement.  Renick Decl. ¶ 31.

*Attorneys' Fees and Costs*—Plaintiffs will seek an award of attorneys' fees of 25% of the Settlement, or $3,812,500.  The current total lodestar for Plaintiffs' Counsel is $1,860,518.00. Renick Decl. ¶ 24; Young Decl. ¶ 9, Dkt. 91; Singer Decl. ¶ 18, Dkt. 91-1.  At the time of Final Approval, Counsel estimates their total lodestar will be approximately $2,000,000.  Accordingly, Plaintiffs will

seek a multiplier of less than 2.0, which falls well within the Ninth Circuit's presumptively acceptable range of 1.0 to 4.0.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002); *see also Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (applying 2.83 multiplier); *Craft v. City of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (court ordered attorneys' fee of 25% of the settlement fund, where lodestar cross-check showed a multiplier of 5.2).  Renick Decl. ¶ 25.

Plaintiffs' Counsel intend to seek reimbursement for up to $100,000 in costs reasonably incurred in this action.  Plaintiffs' Counsel will provide a full detailing of the time spent on this case in Plaintiffs' Motion for an Award of Attorneys' Fees and Costs, which will also be posted by the Administrator on its website to allow class members at least 35 days to review the fee motion before the deadline by which to opt out or object to the Settlement.  Renick Decl. ¶ 26.

### D.   The Extent of Discovery and Stage of the Proceedings Support the Settlement.

The extent of discovery and the stage of proceedings favor approval of the Settlement.  During the actions' pendency, Class Counsel thoroughly investigated and researched the claims, potential defenses, and the developing body of law relating to the interpretation of Wage Orders and an employer's duty to authorize and permit rest breaks. Class Counsel thoroughly engaged in the discovery process and made use of documents and data provided by Defendants to assess Defendants' potential liability and the likelihood the Court would grant class certification of Plaintiffs' claims.  *See* Renick Decl. ¶ 58.  Thus, the proposed Settlement has come at a time when the Parties have enough information to make an informed appraisal of the case, but prior to incurring the additional significant expense, which strongly benefits the Class and favors approval.

The experience and views of counsel also favor settlement. Counsel's support is accorded "great weight" because Counsel have the greatest familiarity with the facts of the litigation, and thus "are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *see Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

The Parties have thoroughly investigated and evaluated the factual strengths and weaknesses of this case and engaged in sufficient investigation and discovery to support the Settlement. Renick Decl.

16

¶ 54.  The litigation has reached the stage where the Parties have a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement.  *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

### E.   Class Counsel Are Experienced in Similar Litigation.

Experienced counsel, operating at arm's length, have weighed the strengths of the case and examined all of the issues and risks of litigation and endorse the proposed Settlement. *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd.* 661 F.2d 939 (9th Cir. 1981).  This factor, too, weighs in favor of approval. *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("The court gives considerable weight to class counsel's opinions regarding the settlement due to counsel's experience and familiarity with the litigation. Counsel's assertion that the settlement is fair, adequate and reasonable is a factor supporting the court's final approval of the agreement.")  Indeed, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 10432 (N.D. Cal. 2007).

Class Counsel, having prosecuted numerous wage and hour class actions are experienced and qualified to evaluate the Class claims and to evaluate the risks and potential outcome of further litigation and the propriety of settlement on a fully informed basis.  Renick Decl. ¶ 59; Young Decl. ¶¶ 3–8, Dkt. 91; and Singer Decl., ¶¶ 5, 7, 16, Dkt. 91-1. Here, counsel on both sides share the view this is a fair and reasonable settlement in light of the complexities of the case and the state of the law, and the uncertainties of the outcome of litigation. The opinion of counsel in support of the proposed Settlement is based on a realistic assessment of the strengths and weaknesses of their respective cases, extensive legal and factual research, the substantial discovery detailed above, as well as law and motion resulting in potential dispositive rulings by the Court. The opinion of counsel is also based on an assessment of the risks of proceeding with the litigation through trial and, if a verdict were recovered, through appeal, as compared to the value of a settlement at this time.

### F.   The Settlement Proves a Fair Method of Allocation and Does Not Offer Preferential Treatment to the Class Representatives or Other Members of the Class.

The Settlement does not offer preferential treatment to the Class Representatives or other members of the Class, as the Net Settlement Amount will be fairly distributed amongst Participating

17

Memorandum of Points and Authorities ISO Renewed Motion for Order Granting Preliminary Approval
Case Nos. 3:17-cv-00123-JST/3:17-CV-03850-JST

1   Class Members on a pro rata basis. Each Class Member will receive credits based on the number of 8,

2   10, and 12-hour shifts s/he worked during the Class Period ("Qualifying Shifts"), where each

3   Qualifying Shift of 8 hours is assigned a value of .8 Credits, each Qualifying Shifts of 10 hours is

4   assigned a value of 1.0 Credit, and each Qualifying Shifts of 12 hours is assigned a value of 1.2 Credits.

5   The Administrator will then divide the Net Settlement Fund by the total number of Credits worked by

6   the entire Class during the Class Period resulting in a value for each Credit.  The Administrator will

7   then take the Credit value and multiply it by the number of Credits awarded to each Class Member, to

8   determine the Class Member's "Individual Settlement Payment."  SA ¶¶ 88a-e.

9         The formula for calculating a Class Member's payment, based on the number of Qualifying

10   Shifts each worked during the Class Period, provides a fair and adequate method of distribution of the

11   Settlement proceeds to Class Members.  This information is readily available from Defendants' records,

12   and the Administrator is able to apply the formula in a fair and transparent manner. This method

13   represents the fairest method of distribution to Class Members and does not grant preferential treatment

14   to any Class Members. Renick Decl. ¶ 12.

15         The Settlement Agreement authorizes an additional service payment to each of the five Named

16   Plaintiffs of $7,500 each. "[T]he Ninth Circuit has recognized that service awards to named plaintiffs in

17   a class action are permissible and do not render a settlement unfair or unreasonable." *Harris,* 2011 U.S.

18   Dist. LEXIS 48878, at *28 (citing *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003)); *see also*

19   *Resnick v. Frank*, 779 F.3d 934, 943 (9th Cir. 2015) ("Incentive payments to class representatives do

20   not, by themselves, create an impermissible conflict between class members and their

21   representatives.").  Courts routinely approve incentive awards to compensate named plaintiffs for the

22   work done on behalf of the class, the risks they incurred during the course of the class action litigation,

23   and sometimes, to recognize their willingness to act as a private attorney general.  *Resnick,* 779 F.3d at

24   943; *see also Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir. 2009).

25         Class Counsel will request $7,500 on behalf of each of the five Named Plaintiffs, for approval

26   by the Court at the time of the final fairness hearing, to compensate each for their time, effort, risks

27   undertaken for the payment of costs in the event the actions had been unsuccessful, possible retaliation

28   as each continues to be employed through the present, and for a general release of all claims. The

18

Memorandum of Points and Authorities ISO Renewed Motion for Order Granting Preliminary Approval
Case Nos. 3:17-cv-00123-JST/3:17-CV-03850-JST

1  requested service payments are fair and reasonable because Plaintiffs were instrumental in achieving

2  the Settlement in this case.  Plaintiffs invested a great deal of personal time and effort into the

3  investigation, prosecution, and the settlement of the case, which included taking on the risks of serving

4  as the named representatives, providing factual information and documentation necessary to the

5  prosecution of this class action, participating in the mediation sessions, and maintaining contact with

6  Class Counsel, which will be set forth more fully in their declarations to be filed in conjunction with the

7  final approval motion.  Renick Decl. ¶ 27.

8        Moreover, the size of the incentive awards requested – $7,500 to each of the five Named

9  Plaintiffs – is consistent with the range of incentive awards approved in class action cases in the

10  Northern District.  *See Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 266 (N.D. Cal. Mar. 19,

11  2015) (courts typically approve incentive awards up to $10,000); *Covillo v. Specialty's Café,* No. C-11-

12  00594 DMR, 2014 U.S. Dist. LEXIS 29837, at *28–29 (N.D. Cal. Mar. 6, 2014) (ordering $8,000

13  incentive award for each of the three named plaintiffs); *Chu v. Wells Fargo Invs., LLC,* Nos. C 05-4526

14  MHP, C 06-7924 MHP, 2011 U.S. Dist. LEXIS 15821, at *15–16 (N.D. Cal. Feb. 16, 2011) (awarding

15  $10,000 incentive award to two named plaintiffs). In 2018, Judge Gonzalez Rogers approved incentive

16  awards in the amount of $7,500 to each of the named plaintiffs in a similar rest break case filed by

17  Plaintiffs' Counsel, Hadsell Stormer Renick & Dai and Gilbert & Sackman, against Phillips 66 in *Buzas*

18  *v. Phillips 66 Company*, Case No. 4:17-cv-00163-YGR (March 6, 2018), ECF No. 47.

19      **G.**    **The Settlement Does Not Have Any Obvious Deficiencies**

20        Preliminary approval of the Settlement is appropriate as the Settlement does not have any

21  obvious deficiencies following correction of two deficiencies noted by the Court in its Order, ECF No.

22  106, and it comports with the Northern District's Procedural Guidance for Class Action Settlements.

23      **1.**    **Class Notice, Settlement Administration, and Method of Notice**

24        The Court's order preliminarily approving a class settlement must include, *inter alia*, that notice

25  be given to all class members who would be bound by the settlement.  Fed. R. Civ. P. 23(e)(1).

26        *Class Notice—* A class settlement notice "is satisfactory if it 'generally describes the terms of

27  the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

28  forward and be heard.'"  *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004) (citation

19

omitted); *see* Fed R. Civ. P. 23(c)(2)(B).  The proposed Amended Notice, attached as Exhibit A to Exhibit 2 to the Renick Declaration, meets all of the requirements set forth in Rule 23, and, as described herein, *see supra* Section VI.B, complies with and includes the language suggested in the Northern District Procedural Guidance. Renick Decl. ¶ 19.

*See* Amended Class Notice, attached as Exhibit A to Exhibit 2 to Renick Decl. ("Notice"), § 21.

*Settlement Administration*—As addressed more fully above, *see supra* Section VI.B, the Parties have agreed to use CAC Services Group, LLC to administer the Settlement.  CAC is an experienced and well-regarded class action settlement administrator.[3]  In order to decide on a Settlement Administrator, Class Counsel obtained bids from multiple administrators and determined, based on their experience and the proposals, that CAC would provide the best services at the lowest cost to Class Members.  Renick Decl. ¶¶ 15–18.

*Method of Notice*—Each Class Member who does not opt out will receive his or her share of the Settlement.  Class Members do not need to file a claim form to receive their share. Given the success of this method in two other similar actions, Class Counsel determined that no claim form should be required here and that all Class Members who do not opt out should participate in the Settlement. Renick Decl. ¶ 17. To increase notice to Class Members, Class Counsel intend to hold meetings. Renick Decl. ¶ 20.

## 2.    Cy Pres Recipient

The Settlement contemplates that any uncashed checks be awarded *cy pres* to Loyola Law School Clinical and Experiential Learning Programs.  Renick Decl. ¶ 28; SA ¶ 68.  Loyola's Workers' Rights Clinic and Employment Rights Clinic provide services to protect workers' rights under state labor law.  Renick Decl. ¶ 28. The proposed *cy pres* recipient, therefore, has the requisite nexus with the California Labor laws at issue in this case.  *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012).

## 3.    Class Action Fairness Act Notice

Class Action Fairness Act ("CAFA") Notice is required, and the Agreement provides: "Within

---

[3]  Over the last two years, lead class counsel has engaged CAC five times.  Renick Decl. ¶ 18.

ten (10) calendar days after the filing of the Motion for Preliminary Approval, Defendant shall comply with the "Notification of Settlement" requirements of the Class Action Fairness Act (28 U.S.C. § 1715) and give Notice of such to Class Counsel."  Renick Decl. ¶ 30; SA ¶ 65.

### 4.    Differences Between the Settlement Class and the Class Proposed in the Operative Complaint.

In the First Amended Complaint filed on March 31, 2018, Plaintiffs alleged the following class: "all current and former employees of Defendants Tesoro Refining and Marketing Company LLC and Tesoro Logistics GP, LLC who worked as an operator at the Golden Eagle Refinery in Martinez, California, since January 10, 2013, and all current and former employees of Defendants Tesoro Refining and Marketing Company LLC, and Tesoro Logistics GP, LLC who worked as an operator at the Los Angeles Refinery since July 19, 2013." ECF No. 21, ¶10; Renick Decl. ¶ 3.

The Settlement Class definition is: "all current and former employees of Defendants (or any of their affiliates or successors) who worked a rotating 8-hour, 10-hour, or 12-hour shift in operations at any time during the Class Period at the i) Martinez Refinery or Chem Plant in Martinez, California; ii) the Los Angeles Refinery, Carson Operations, in Carson and Long Beach, California; iii) the Los Angeles Refinery, Wilmington Operations, in Wilmington, California; iv) the Tesoro Logistics terminal facilities at the Martinez Refinery; and v) the Long Beach Terminal, T2, Berth 121, and East Hynes in Long Beach, Carson, Signal Hill, and/or Wilmington, California."  Renick Decl. ¶ 4; SA ¶¶ 15, 23.

The start of the Class Period remains unchanged, starting July 19, 2013, and continuing through the date of Preliminary Approval.  The Settlement Class definition was changed to include Defendants' affiliates or successors.  During the pendency of the litigation, Defendants were acquired by Marathon Petroleum.  The class definition was, therefore, amended to capture the current and former owners.  Also, the shifts covered in the class definition was changed to "rotating 8, 10, and 12-hour shifts."  The additional definition was to capture Plaintiffs' allegation that it was only with respect to those shifts where operators were expected to continuously monitor their units or worksites, were not provided relief, and were, therefore, unable to take rest breaks.  Renick Decl. ¶ 6b; SA ¶ 24.

Rather than generally describing the three refineries, the Settlement describes the specific workplace for each Class Member at the Martinez and Los Angeles (Carson and Wilmington) facilities,

21

Memorandum of Points and Authorities ISO Renewed Motion for Order Granting Preliminary Approval
Case Nos. 3:17-cv-00123-JST/3:17-CV-03850-JST

including the Chem Plant in Martinez; the Carson Operations; the Wilmington Operations; the Tesoro Logistics terminal facilities at the Martinez Refinery; and the Long Beach Terminal, T2, Berth 121, and East Hynes in Long Beach, Carson, Signal Hill, and/or Wilmington, California.  Defendants had produced payroll and timecard data for Operators at each of these facilities.  Accordingly, those shifts were included in the settlement negotiations.  Renick Decl. ¶ 6c.

### 5.   Differences Between Released Claims and Claims in the Operative Complaint

For Class Members, the Settlement Agreement releases only those claims alleged in the alleged in the Action and that arose during the Class Period, including in the original complaint filed in the Valliere action on January 10, 2017; the complaint filed in the Bonner action on March 22, 2017; the First Amended Class Action Complaint; the Second Amended Class Action Complaint; the original Consolidated Class Action Complaint filed on October 12, 2017; the First Amended Consolidated Class Action Complaint; claims for the failure to provide an off-duty rest period (Cal. Lab. Code §§ 226.7, 512, 558), failure to furnish timely and accurate wage statements arising from the failure to provide rest periods (Cal. Lab. Code §§ 226 and 226.3), all claims in connection with rest periods arising under the California Labor Code, California Industrial Welfare Commission Wage Order No. 1-2001, and California's Unfair Competition Law (California Bus. & Prof. Code § 17000 - 17208, et seq.), all claims in connection with rest periods and inaccurate wage statements arising under PAGA, California Labor Code §§ 2698, 2699, et seq., for violations of the California Labor Code, including §§ 226, 226.3, 558, 226.7 and Wage Order 1-2001, all claims for attorneys' fees and costs arising from the prosecution of all of the above claims, and all claims for restitution, disgorgement, and injunctive relief." Renick Decl. ¶ 27.

## VIII.   THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED

Before granting preliminary approval of the Settlement, the Court should determine that the proposed Settlement Class meets the requirements of Rule 23.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632.  An analysis of the requirements of Rule 23(a) and 23(b)(3) – referred to as numerosity, commonality, typicality, adequacy, predominance, and superiority – shows that certification of this proposed Settlement Class is appropriate.

22

**A.      The Proposed Class is Sufficiently Numerous and Ascertainable.**

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Generally, courts will find a class sufficiently numerous if it consists of 40 or more members. *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009). Here, the proposed Class of 1,400 employees easily meets numerosity requirements. Renick Decl. ¶ 15.

**1.      There Are Questions of Law and Fact that Are Common to the Class.**

The second Rule 23(a) requirement is commonality, which is satisfied "if there are questions of law or fact common to the class." FRCP 23(a)(2). The "commonality requirement has been 'construed permissively,' and its requirements deemed minimal." *Hanlon* at 1019–1020.  Here, Plaintiffs assert that there are common questions of fact and law arising from the putative Class Members' employment at Defendants' California petroleum refineries and chemical product facilities, including whether Defendants failed to authorize and permit the Class to take rest periods in accordance with applicable California law because the Class was not relieved of all work duties during those breaks; whether Defendants maintain or have maintained policies and engaged in practices that adequately provide for off-duty rest periods in accordance with the requirements of applicable California law; and whether Defendants failed to keep complete and accurate records of wages for missed rest periods in accordance with applicable California law.

**B.      Plaintiffs' Claims Are Typical of the Proposed Class.**

"Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citation omitted). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quotations omitted.)

Plaintiffs' wage and hour claims are typical of the proposed Class because they arise from the same factual basis and are based on the same legal theories applicable to the other members of the Class.  Likewise, Plaintiffs' interests are entirely coextensive with the interests of the Class. Like the

23

Memorandum of Points and Authorities ISO Renewed Motion for Order Granting Preliminary Approval
Case Nos. 3:17-cv-00123-JST/3:17-CV-03850-JST

other Class Members, Plaintiffs were non-exempt, hourly employees in Defendants' California refineries and chemical plants at all times during the relevant time period.  Like other Class Members, Plaintiffs were subjected to Defendants' policies and practices requiring operators to be available at all times during a shift, including while on breaks.  Accordingly, Plaintiffs are typical of the Class Members they seek to represent.

### C.   Plaintiffs and Their Counsel Will Adequately Represent the Interests of the Proposed Settlement Class.

The final Rule 23(a) requirement asks whether "the representative parties will fairly and adequately protect the interests of the class." FRCP 23(a)(4). This requirement is satisfied if: (1) the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and (2) the plaintiffs are represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.  The Rule 23(a) adequacy requirement is met here as Plaintiffs have represented their former and current co-workers with a focus and zeal true to the fiduciary obligation that they have undertaken, with preparing and sitting for a full day of deposition by Plaintiffs Valliere and Bonner, producing documents, participating in mediation, and working closely with their attorneys. Renick Decl. ¶¶ 40–50, 54.

The three firms representing Plaintiffs also satisfy the Rule 23(a)(4) adequacy-of-counsel requirement.  *See Hanlon*, 150 F.3d at 1020.  Class Counsel – Hadsell Stormer Renick & Dai LLP, Gilbert & Sackman, and Cohelan, Khoury and Singer – are experienced class action attorneys who have collectively certified numerous class actions by way of contested motion in state and federal court and have negotiated settlements which were finally approved on behalf of hundreds of thousands of class members.  Renick Decl. ¶¶ 50–63; Singer Decl. ¶¶ 2–7, Dkt. 91-1; Young Decl. ¶¶ 3–8, Dkt. 91. Class Counsel vigilantly safeguarded the interests of the Class by thoroughly investigating the claims, marshalling considerable resources in preparing this case for both mediations, and then settling the claims for valuable consideration despite the serious challenges described above. Renick Dec.¶¶ 53–58.

### D.   Common Issues Predominate Over Individual Issues.

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022.  The California statutes relating to each of Plaintiffs' claims apply with

equal force and effect to all Class Members.  Factually, Defendants' policies and practices apply class-wide and Defendants' liability can be determined by facts common to all members of the Class. The wage and hour issues are both numerous and substantial, and a class action is the most advantageous method of dealing with the claims of the Class Members.  *See Brinker Restaurant Corp. v. Superior Court,* 53 Cal. 4th 1004, 1033 (2012) ("Claims alleging that uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment.").

### E.    Class Settlement Is Superior to Other Available Means of Resolution.

Similarly, there can be little doubt that resolving all 1,400 Class Members' claims through a single class action is superior to a series of individual lawsuits.  Additionally, although the value of the claims is not insignificant, the individual amounts in controversy are not nearly enough to incentivize individual action. *See Wolin v. Jaguar Land Rover North America, LLC.,* 617 F.3d 1168, 1175 (9th Cir. 2010).  As the class action device provides the superior means to effectively and efficiently resolve this controversy, and as the other requirements of Rule 23 are each satisfied, certification of the Settlement Class proposed by the Parties is appropriate.

## IX.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminary approve the class settlement, conditionally certify the proposed settlement class, and enter the order submitted concurrently herewith.

Respectfully submitted,

**HADSELL STORMER RENICK & DAI LLP**
**GILBERT & SACKMAN, A Law Corporation**
**COHELAN KHOURY & SINGER**

Date:  November 18, 2019                    By:___*Randy Renick*_____
                                                            Randy Renick
                                                            Attorneys for Plaintiffs