UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON VALLIERE, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>TESORO REFINING & MARKETING COMPANY LLC, et al.,<br><br>          Defendants. | Case No. 17-cv-00123-JST<br><br>**ORDER GRANTING PRELIMINARY SETTLEMENT APPROVAL**<br><br>Re: ECF No. 107 |

Before the Court is Plaintiffs' unopposed renewed motion for preliminary approval of class action settlement. ECF No. 107. The Court will grant the motion.

I.    **BACKGROUND**

   **A.    Parties and Claims**

In this putative class action, Plaintiffs accuse Defendants Tesoro Refining and Marketing Company LLC and Tesoro Logistics GP, LLC (collectively, "Tesoro") of violations of the California Labor Code and Business and Professions Code. ECF No. 89 ¶ 1. Plaintiffs are or were employed as operators at Tesoro's oil refineries and facilities in Martinez, Carson, Long Beach, Signal Hill, or Wilmington, California. *Id.* ¶ 10. Plaintiffs allege that they were scheduled for 8-hour, 10-hour, or 12-hour shifts during which Tesoro uniformly required them to stay on duty the entire shift. *Id.* ¶ 21. Because they were required to monitor their radios and respond to emergencies at all times during their shifts, they did not receive off-duty rest breaks for every four-hour work period, as required by California law. *Id.* ¶¶ 22-23. Plaintiffs further allege that Tesoro failed to maintain complete and accurate payroll records. *Id.* ¶ 26. Plaintiffs seek damages, an injunction, and declaratory relief. *Id.* at 16-17.

**B.     Procedural History**

Plaintiffs Chris Azpeitea, Eileen Foster, Antonio Garcia, and Samantha Scott filed suit in this Court on January 10, 2017. ECF No. 1. On March 21, 2017, Tesoro filed a motion to dismiss, ECF No. 16, which was mooted by the filing of the First Amended Complaint, ECF No. 21. On March 22, 2017, Jinetra Bonner filed suit in Sacramento Superior Court, alleging the same claims and an additional claim for meal break violations. *Bonner v. Tesoro Refining & Marketing Co., LLC*, Case No. 17-cv-3850-JST; ECF No. 1. On May 3, 2017, Defendants removed *Bonner* to the United States District Court for the Eastern District of California. *Id.* On June 12, 2017, Bonner filed a motion to change venue to the Northern District of California. *Bonner*; ECF No. 6. Pursuant to stipulation, the *Bonner* Court dismissed Bonner's meal break claims to limit her complaint to the same claims alleged in this action. *Bonner*; ECF No. 12. The *Bonner* Court then granted the motion to change venue. *Bonner*; ECF No. 14.

This Court related the two actions on July 25, 2017. *Bonner*; ECF No. 22. On Plaintiffs' motion, ECF No. 49, this Court consolidated the two cases and appointed Hadsell Stormer & Renick, LLP as interim lead counsel. ECF No. 52. Plaintiffs then filed a consolidated complaint, ECF No. 56, and Defendants answered, ECF No. 57. On November 23, 2018, Plaintiffs filed a notice of settlement. ECF No. 75. On May 8, 2019, Plaintiffs filed an amended complaint, ECF No. 89, accompanied by a motion for preliminary approval of class action settlement, ECF No. 90. The Court denied the motion. ECF No. 106.

On January 22, 2020, Plaintiffs filed an unopposed renewed motion for preliminary settlement approval. ECF No. 107. In addition to preliminary approval, Plaintiffs seek conditional class certification, approval of the proposed Notice of Settlement, and a date for a hearing on final approval. *Id.* at 19, 27-28, 30-33.

**C.     Terms of the Settlement Agreement**

The proposed settlement agreement ("Settlement") resolves claims between both Defendants and the settlement class, defined as follows:

> [A]ll current and former employees of Defendants (or any of their affiliates or successors) who worked a rotating 8-hour, 10-hour, or 12-hour shift in operations at any time during the Class Period at the

2

> i) Martinez Refinery or Chem Plant in Martinez, California; ii) the Los Angeles Refinery, Carson Operations, in Carson and Long Beach, California; iii) the Los Angeles Refinery, Wilmington Operations, in Wilmington, California; iv) the Tesoro Logistics terminal facilities at the Martinez Refinery; and v) the Long Beach Terminal, T2, Berth 121, and East Hynes in Long Beach, Carson, Signal Hill, and/or Wilmington, California.

ECF No. 108-1 ¶ 23. The Class Period is defined as the period from July 19, 2013 to the date the Court grants preliminary approval of the Settlement. *Id.* ¶ 24.

Under the Settlement, Defendants agree to pay $15,250,000 (the "Settlement Amount") as well as the employer's share of any payroll taxes on individual settlement payments. *Id.* ¶ 32. The Settlement Amount includes the individual payments to participating class members, the statutory Private Attorneys General Act ("PAGA") payment, service awards to the class representatives, attorney's fees and costs, and administrative costs. *Id.* ¶ 32. The parties agree to seek approval for a payment of $50,000 to resolve Plaintiffs' PAGA claims, 75% of which ($37,500) shall be paid to the State of California Labor Workforce Development Agency, with the remainder ($12,500) distributed to class members. *Id.* ¶¶ 39, 59. Defendants agree not to oppose a service award to each Named Plaintiff in an amount not to exceed $7,500 apiece. *Id.* ¶ 58. Defendants further agree not to oppose a reasonable request for attorney's fees and costs, with the amount to be left to the Court's discretion. *Id.* ¶ 51. Administrative costs are estimated at $45,000. *Id.* ¶ 18. "Under no circumstances shall any portion of the [Gross Settlement Amount] revert to Defendants." *Id.* ¶ 32.

After the above deductions, Plaintiffs estimate that the Net Settlement Amount that will remain for distribution to individual class members who do not request exclusion will be approximately $11,217,500. ECF No. 108 ¶ 8. Each class member's payment will be calculated on a *pro rata* basis, based on the number of qualifying shifts worked by each class member during the Class Period. ECF No. 108-1 ¶ 88. There are approximately 1,400 class members, which – assuming no exclusions – will make the average net payment to each class member approximately $8,012.50. ECF No. 108 ¶ 8. If there are unclaimed funds due to the inability to locate a class member or a class member's failure to cash a settlement check, the funds will be awarded *cy pres* to the Loyola Law School Clinical and Experiential Learning Programs. ECF No. 108-1 ¶ 106.

In exchange, class members will release the following claims against Defendants:[1]

> those claims that were alleged in the Action and that arose during the Class Period, including in the original complaint filed in the Valliere action on January 10, 2017; the complaint filed in the Bonner action on March 22, 2017; the First Amended Class Action Complaint; the Second Amended Class Action Complaint; the original Consolidated Class Action Complaint filed on October 12, 2017; the First Amended Consolidated Class Action Complaint; claims for the failure to provide an off-duty rest period (Cal. Lab. Code §§ 226.7, 512, 558), failure to furnish timely and accurate wage statements arising from the failure to provide rest periods (Cal. Lab. Code §§ 226 and 226.3), all claims in connection with rest periods arising under the California Labor Code, California Industrial Welfare Commission Wage Order No. 1-2001, and California's Unfair Competition Law (California Bus. & Prof. Code § 17000 - 17208, et seq.), all claims in connection with rest periods and inaccurate wage statements arising under PAGA, California Labor Code §§ 2698, 2699, et seq., for violations of the California Labor Code, including §§ 226, 226.3, 558, 226.7 and Wage Order 1-2001, all claims for attorneys' fees and costs arising from the prosecution of all of the above claims, and all claims for restitution, disgorgement, and injunctive relief.

ECF No. 109-1 ¶ 2.[2]

In addition, Named Plaintiffs will release a broader scope of individual claims:

> any and all claims, demands, rights, liabilities and causes of action each has had or ever had against any of the Released Parties, whether for economic damages, noneconomic damages, punitive damages, penalties, restitution, injunctive or declaratory relief, interest, attorneys' fees, costs or any other forms of monetary or non-monetary relief in any way arising out of or relating to any facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act at any time on or before the Effective Date, including, but not limited to, any claims arising from or related to their employment or separation of employment, contractual, and/or quasi-contractual relationship with the Defendants and the Released Parties, or any of them; any allegations as to disputed wages, remuneration,

---

[1] The releases apply against "Defendants and each and all of their current or former subsidiaries, parents, affiliates, joint ventures, predecessors, insurers, agents, employees, successors, assigns, officers, officials, directors, attorneys, personal representatives, executors, and shareholders, including their respective pension, profit sharing, savings, health, and other employee benefits plans of any nature, the successors of such plans, and those plans' respective current or former trustees and administrators, agents, employees, and fiduciaries, including Marathon Petroleum Corporation and Andeavor." ECF No. 108-1 ¶ 46.

[2] The "Released Claims" provision in the original settlement agreement contained a general release of all claims that "could have been pleaded based upon the factual allegations alleged in the Action and that arose during the Class Period," and "claims derivative thereof." ECF No. 108-1 ¶ 45. The new settlement agreement includes an amendment which deletes the "Released Claims" paragraph in its entirety and replaces it with the aforementioned language. ECF No. 109-1 ¶ 2.

> and/or other compensation due by operation of statute, ordinance, contract, or quasi-contract; any federal, state, or local law prohibiting discrimination or retaliation on the basis of age, race, color, ancestry, religion, disability, sex, national origin, or citizenship or any other protected category, including, without limitation, claims under Title VII, the California Fair Employment and Housing Act, the California Labor Code, FLSA, the California IWC Orders, the Employee Retirement Income Security Act, and the Americans With Disabilities Act or any other similar statutes whatever the city, county, state, or country of enactment; any claims under the Family and Medical Leave Act of 1993 and/or the California Family Rights Act; and any transactions, occurrences, acts, statements, disclosures, or omissions, occurring during the Class Period. Plaintiffs' General Release specifically excludes claims for workers' compensation.

ECF No. 108-1 ¶ 114.

Plaintiffs propose the following notice plan to inform class members of the Settlement. Within 20 calendar days of preliminary approval, Defendants will provide the Class List and Data to the Settlement Administrator, CAC Services Group, LLC. *Id.* ¶¶ 17, 67. Within 15 business days of receipt of the Class List and Data, the Settlement Administrator will send Notice Packets to all class members via first class mail. *Id.* ¶¶ 68, 72. The Notice Packet will include the Notice of Class Action Settlement, Change of Address Form, and a pre-printed return envelope. *Id.* ¶ 37. The Notice informs class members of their right to participate in the Settlement, a summary of the settlement terms, the availability of settlement documents, the individual payment each class member can expect to receive, the formula used to calculate that payment, how to challenge their personal calculation, how to object to or opt out of the settlement, the date set for the final approval hearing, and who to contact with questions. *See* ECF No. 109-1 at 13-22.

The Administrator will also create and maintain a website providing answers to frequently asked questions and including the Notice, Change of Address Form, Motions for Preliminary and Final Approval, and Motion for Attorney's Fees and Costs, as those documents become available. ECF No. 108-1 ¶ 69. For class members whose mailed notices are returned as undeliverable, the Settlement Administrator will perform standard searches using their social security numbers to seek current addresses, will request updated addresses for current employees from Defendants, and will immediately re-mail Notice Packets to class members' new addresses. *Id.* ¶¶ 70, 73.

Class members will have 60 days from the initial mailing date to opt out of the Settlement

or object to its terms (the "Notice Response Deadline"). ECF No. 109-1 ¶ 1.[3] Class members who fail to postmark a request for exclusion by the Notice Response Deadline will be bound by the terms of the Settlement. ECF No. 108-1 ¶¶ 75-78. In the event that more than three percent of class members opt out of the Settlement, Defendants retain the unilateral right to terminate the settlement agreement. *Id.* ¶ 80.

## II.    CLASS CERTIFICATION

### A.    Legal Standard

Class certification under Rule 23 is a two-step process. First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy. "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542-43 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

Second, a plaintiff must establish that the action meets one of the bases for certification under Rule 23(b). Plaintiffs invoke Rule 23(b)(3). Therefore, Plaintiffs must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

When determining whether to certify a class for settlement purposes, a court must pay "heightened" attention to the requirements of Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.* At the same time, trial "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019) (en banc).

---

[3] The original settlement agreement contained a 45-day Notice Response Deadline. ECF No. 93-1 ¶ 38. The new agreement includes an amendment which deletes the "Notice Response Deadline" paragraph in its entirety and replaces it with the following language: "'Notice Response Deadline' means 60 days from the initial date of mailing the Notice Packet to Class Members . . . to postmark a timely objection, request for exclusion, or dispute the information upon which an Individual Settlement Payment is calculated." ECF No. 109-1 ¶ 1.

6

**B.     Discussion**

For the reasons set forth below, the Court grants the request to conditionally certify the settlement class.

### 1.     Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Plaintiffs need not state an exact number to meet the threshold requirements of Rule 23. Rather, the rule 'requires examination of the specific facts of each case and imposes no absolute limitations.'" *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 303 (N.D. Cal. 2017) (quoting *Gen. Tel. Co. of the Nw. Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330, (1980)). "A class or subclass with more than 40 members raises a presumption of impracticability based on numbers alone." *Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015) (internal quotation marks and citation omitted).

Here, the proposed settlement class consists of approximately 1,400 employees. ECF No. 108 ¶ 15. The Court concludes that Plaintiffs have satisfied their burden to show that the number of putative class members is sufficiently numerous that their joinder would be impracticable.

### 2.     Rule 23(a)(2): Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A common question is one "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. For the purposes of Rule 23(a)(2), "even a single common question" is sufficient. *Id.* at 359 (quotation marks and internal alterations omitted).

Here, all proposed class members suffered the same alleged violations of California Labor Code, Business and Professions Code, and Wage Order No. 1-2001 as a result of Defendants' common policies and practices. ECF No. 89 ¶¶ 33, 43-69. Proving these violations requires resolving common questions of law and fact, such as whether Defendants authorized employees to take rest periods. *Id.* ¶ 32. Accordingly, the proposed class satisfies the commonality

requirement.

### 3.     Rule 23(a)(3): Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

The claims of both the named plaintiffs' and other class members arise from the same challenged employment practices carried out by Defendants. ECF No. 89 ¶ 33. Like other class members, the named plaintiffs allege that they are entitled to damages, declaratory relief, and injunctive relief because Tesoro failed to provide off-duty rest breaks for every four-hour work period and failed to maintain complete and accurate payroll records. *Id.* ¶¶ 22-23, 26; *id.* at 16-17. These allegations involve the "same course of conduct," which is "not unique to the named plaintiffs." *See Hanon*, 976 F.2d at 508. Therefore, the typicality requirement is satisfied.

### 4.     Rule 23(a)(4): Adequacy

"[T]he adequacy of representation requirement . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

No party has suggested, and the Court has not found, any evidence in the record suggesting that any of the named plaintiffs has a conflict of interest with the other class members. The named plaintiffs share common claims and seek the same relief as the other class members. ECF No. 107 at 31-32; *see* ECF No. 89 ¶ 33; *id.* at 16-17. Moreover, class counsel are experienced in class action litigation and have vigorously prosecuted this action on behalf of the class members. ECF No. 107 at 32; ECF No. 108 ¶¶ 50-63; ECF No. 91 ¶¶ 3-8; ECF No. 91-1 ¶¶ 2-7. Counsel have

"thoroughly investigat[ed] the claims," engaged in significant discovery, and "marshall[ed] considerable resources in preparing this case for [multiple] mediations." ECF No. 107 at 32; ECF No. 108 ¶¶ 53-58. The Court concludes that the named plaintiffs and class counsel provide adequate representation for the proposed class.

### 5. Rule 23(b)(3): Predominance and Superiority

To certify a Rule 23 damages class, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citation omitted) *overruled on other grounds by Wal-Mart Stores, Inc.*, 564 U.S. 338.

The dominant legal issues in this action are whether Tesoro provided adequate off-duty rest periods and maintained complete and accurate payroll records for the proposed class. ECF No. 89 ¶¶ 22-23, 26; *see* ECF No. 107 at 31. Plaintiffs allege that their claims are based on Tesoro's practice of requiring operators to maintain constant and continuous responsibility for their units throughout their shifts and Tesoro's failure to "have a policy or system" to allow off-duty rest breaks. ECF No. 89 ¶¶ 21-26. The Court finds that the questions surrounding these practices and policies predominate over any question that could affect only individual class members. "A class action is also a superior method for fairly and efficiently adjudicating those questions. Resolving the proposed class members' disputes in a single class action will be far more efficient than requiring them each to proceed individually." *Terry v. Hoovestol, Inc.*, No. 16-cv-05183-JST, 2018 WL 6439167, at *3 (N.D Cal. Dec. 7, 2018). Therefore, the Court concludes that the proposed class satisfies the requirements of Rule 23(b)(3).

9

## III. PRELIMINARY SETTLEMENT APPROVAL

### A. Legal Standard

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Rule 23 requires courts to employ a two-step process in evaluating a class action settlement. First, the parties must show "that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate." *Id.*

The court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citation omitted); *see also* Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004) (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing"). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *City of Seattle*, 955 F.2d at 1276 (citation omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

Within this framework, preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1079 (citation omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether

10

the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026 (citations omitted).[4] The proposed settlement must be "taken as a whole, rather than the individual component parts," in the examination for overall fairness. *Id.* Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety." *Id.* (citation omitted).

## B. Discussion

Having negotiated a new settlement agreement that they believe addresses the Court's concerns, the parties again seek preliminary approval of the agreement. ECF No. 107. In its order on Plaintiffs' first motion for preliminary approval, the Court noted that "many of the factors . . . support a finding that the Settlement falls within the range of possible approval." ECF No. 106 at 7. However, the Court denied the motion for two reasons: (1) the general release provision was too broad and (2) the proposed notice response deadline was too short. *Id.* at 9. The parties have now corrected both deficiencies.[5]

### 1. Release of Class Members' Claims

The original settlement agreement required participating class members to release Defendants from liability as to "those claims that were alleged or could have been pleaded based

---

[4] These factors are substantially similar to those articulated in the 2018 amendments to Rule 23(e), which were not intended "to displace any factor [developed under existing Circuit precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

[5] While the Court previously noted that the $7,500 service award sought for Named Plaintiffs was higher than the "standard figure for enhancement awards in this Court," it did not withhold preliminary approval based on this request. ECF No. 106 at 9. The Court reiterates its prior advice that the parties support this request with specific factual justification when seeking final approval. *Id.*

11

upon the factual allegations alleged in the Action and that arose during the Class Period." ECF No. 93-2 ¶ 113.  The Court found that this general release was "overbroad" and went "'beyond the scope of the present litigation' because it release[d] all claims based on the facts of the complaint without regard to whether those claims were actually alleged in the complaint." ECF No. 106 at 8 (citing *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524- JST, 2014 WL 1477630, at *7 (N.D. Cal. Apr. 15, 2014)).  Plaintiffs have narrowed the class member release provision to include only those claims that "were alleged in the Action and that arose during the Class Period." ECF No. 109-1 ¶ 2.  These modifications allay the Court's concern about the general release provisions.

### 2. Notice Procedure

Plaintiffs' original settlement agreement provided class members with 45 days from the date Notice Packets are mailed to opt out of the Settlement or object to its terms.  ECF No. 93-2 ¶¶ 75-78.  The Court found that "any period shorter than 60 days is too short a time to allow class members to properly respond." ECF No. 106 at 9 (citing *Thomas v. Magnachip Semiconductor Inc.*, No. 14-CV-01160-JST, 2016 WL 1394278, at *8 (N.D. Cal. Apr. 7, 2016)).  The new settlement agreement extends the Notice Response Deadline to 60 days.  ECF No. 109-1 ¶ 2; *id.* at 19.  Thus, the length of the Notice Response Deadline no longer poses a barrier to preliminary approval.

### CONCLUSION[6]

Because Plaintiffs' renewed motion for preliminary approval and preliminary certification corrects the deficiencies addressed in the Court's earlier order, the Court GRANTS the motion.  The proposed settlement class is hereby preliminarily certified for the purposes of settlement.  The Court grants preliminary approval of the settlement and approves of the proposed notice procedure

---

[6] Class members Norman Anthony Rogers, Samuel McDonald, and Brian Dumont ("Objectors") filed an objection to the first motion for preliminary approval, asserting that the settlement "impair[ed] the rights of these Objectors' unions under their collective bargaining agreements with Defendant[s]." ECF No. 96 at 2.  The Court declined to withhold preliminary approval on the basis of this objection.  ECF No. 106 at 10.  These class members now propose that "if this Court is inclined to grant preliminary approval of the proposed settlement, it should 'confirm[] that judicial approval of the class action settlement (if granted) would not waive the parties' or the union's rights to pursue claims for dues deductions in a separate forum." ECF No. 111 at 3; *see also* ECF No. 100 at 4.  The Court declines to add this language to its order.  The issue of dues deductions will not be resolved in this forum.

and form.  The Court will hold a final approval hearing on December 16, 2020 at 2:00 p.m.

| Deadline | Event |
| --- | --- |
| July 17, 2020 | Deadline for Defendants to forward to the appointed Settlement Administrator, the Class List and Data, as provided for by the terms of the Settlement Agreement |
| July 31, 2020 | Deadline for the Settlement Administrator to mail to each Class Member, by first class United States mail, postage pre-paid, the Notice of Class Action Settlement, Change of Address Form and pre-printed return envelope, (collectively the "Notice Packet") |
| October 2, 2020 | Deadline for Class Members to mail to the Administrator requests for exclusion from the Settlement |
| November 6, 2020 | Deadline for parties to file all papers in support of the request for Final Approval of the Class Action Settlement |
| December 16, 2020 | Final approval hearing |

**IT IS SO ORDERED.**

Dated:  June 26, 2020



JON S. TIGAR
United States District Judge

13