RANDY RENICK (CA Bar No. 179652)
(Email: rrr@hadsellstormer.com)
CORNELIA DAI (CA Bar No. 207435)
(Email: cdai@hadsellstormer.com)
**HADSELL STORMER RENICK & DAI, LLP**
128 North Fair Oaks Avenue, Suite 204
Pasadena, California 91103-3645
Telephone: (626) 585-9600
Fax: (626) 577-7079

*Lead Plaintiffs' Counsel*

[Additional Counsel Listed on Next Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND

| | |
|---|---|
| JON VALLIERE, EILEEN FOSTER, ANTONIO GARCIA, and SAMANTHA WEST, individually and on behalf of all similarly situated current and former employees,<br><br>        Plaintiffs,<br><br>    v.<br><br>TESORO REFINING AND MARKETING COMPANY LLC, TESORO LOGISTICS GP, LLC, and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 4:17-cv-00123-JST<br><br>Assigned to the Hon. Jon S. Tigar<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS**<br><br>DATE:     December 16, 2020<br>TIME:     2:00 p.m.<br>PLACE:   Oakland Courthouse,<br>              Courtroom 6, 2nd Floor<br><br>[Declarations and Exhibits filed concurrently herewith] |
| JINETRA BONNER, individually, on behalf herself and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>TESORO REFINING & MARKETING COMPANY, LLC, a Delaware Limited Liability Company; and DOES 1 through 100 inclusive,<br><br>        Defendants. | |

JAY SMITH (CA Bar No. 166105)
(Email: js@gslaw.org)
JOSHUA F. YOUNG (CA Bar No. 232995)
(Email: jyoung@gslaw.org)
GILBERT & SACKMAN
A LAW CORPORATION
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Fax: (323) 937-9139

TIMOTHY D. COHELAN (CA Bar No. 60827)
(Email: tcohelan@ckslaw.com)
MICHAEL SINGER (CA Bar No. 115301)
(Email: msinger@ckslaw.com)
J. JASON HILL (CA Bar No. 179630)
 (Email: jhill@ckslaw.com)
COHELAN KHOURY & SINGER
605 "C" Street, Suite 200
San Diego, CA 92101
Telephone: (619) 595-3001
Fax: (619) 595-3000

*Attorneys for Plaintiffs John Valliere, Eileen Foster, Antonio Garcia,*
*Samantha West, and Jinetra Bonner on behalf of themselves and others similarly situated*

PLTFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES
AND REIMBURSEMENT OF COSTS/Case Nos. 4:17-cv-00123-JST

# TABLE OF  CONTENTS

**Page (s)**

I.   INTRODUCTION ............................................................................................1

II.  BACKGROUND SUMMARY.........................................................................2

III. THE SETTLEMENT AGREEMENT ............................................................4

IV.  ARGUMENT ..................................................................................................5

      A.    Plaintiffs' Fee Request for 25% of the Fund, $3,812,500, is Reasonable
           Under Both the Percentage of the Fund and Lodestar Method.............................5

           1.    Using the Percentage of Fund Method, Class Counsel's
               Fee Request Is Reasonable..........................................................6

               a)    Class Counsel Achieved an Excellent Result. ................................7

               b)    Class Counsel Litigated the Case on a Contingency
                   Basis and Faced Considerable Risk. ................................8

               c)    The Skill and Quality of the Work Performed
                   by Class Counsel Merits Approval of the
                   Requested Fee Award. ..................................10

               d)    The Amount Requested to Compensate Class Counsel is
                   Reasonable in Comparison to Awards in Similar Cases...............11

           2.    Based on Fees Calculated under the Lodestar Method,
                Class Counsel's Fee Request is Also Reasonable.....................................12

               a)    Class Counsel's Hourly Rates are Reasonable. ............................12

                b)    Plaintiffs' Lodestar Amount for Hours Expended
                   Is Reasonable. ..................................12

                c)    An Upward Multiplier of 1.84 Is Modest and Justified
                   in this Case...................................15

      B.    The Costs that Class Counsel Seek for Reimbursement Are Reasonable. ...........16

V.  CONCLUSION..............................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................. 5

*Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*,
226 Cal. App. 4th 26 (2014) ........................................................................... 12

*Augustus v. ABM Securities Services, Inc.*,
2 Cal. 5th 257 (2016) ................................................................................... 1, 9

*Barbosa v. Cargill Meat Solutions Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) ................................................................ 6, 10

*Bell v. Home Depot U.S.A., Inc.*,
No. 2:12-cv-02499 ........................................................................................... 9

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ...................................................................... 4, 6

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ........................................................................................ 4

*Bravo v. Gale Triangle, Inc.*,
2017 U.S. Dist. LEXIS 77714 (C.D. Cal. Feb. 16, 2017) .............................. 11

*In re Businessland Sec. Litig.*,
1991 U.S. Dist. LEXIS 8962 (N.D. Cal. June 14, 1991) .............................. 17

*Bussey v. Affleck*,
225 Cal. App. 3d 1162 (1990) ....................................................................... 17

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008) ........................................................................ 12

*Chavez v. Netflix, Inc.*,
162 Cal. App. 4th 43 (2008) ...................................................................... 5, 11

*In re Consumer Privacy Cases*,
175 Cal. App. 4th 545 (2009) ................................................................*passim*

*Craft v. City of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ........................................................ 16

*Dyer v. Wells Fargo Bank, N.A.*,
303 F.R.D. 326 (N.D. Cal. 2014) ................................................................. 16

i

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Cases**

*In re Equity Funding Corp. Sec. Litigation*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ............................................................. 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................... 12, 15

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ..................................................................... 17

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .............................................................................. 14

*In re Heritage Bond Litig.*,
    2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ................... 9, 11

*Heritage Pac. Fin., LLC v. Monroy*,
    215 Cal. App. 4th 972 (2013) .................................................................. 12

*In re Immune Response Sec. Litig.*,
    497 F.Supp.2d 1166 (S.D. Cal. 2007) ..................................................... 17

*Laffitte v. Robert Half Internat., Inc.*,
    1 Cal. 5th 480 (2016) ................................................................. 4, 5, 12

*Laffitte v. Robert Half Internat. Inc.*,
    231 Cal. App. 4th 860 (2014) ............................................................ 5, 11

*Lealao v. Beneficial Cal., Inc.*,
    82 Cal. App. 4th 19 (2000) ............................................................. 12, 15

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) .................................................................. 7

*Lusby v. Gamestop Inc.*,
    2015 U.S. Dist. LEXIS 42637 (N.D. Cal. Mar. 31, 2015) ...................... 6

*Mangold v. Cal. Pub. Utils. Comm'n*,
    67 F.3d 1470 (9th Cir. 1995) .................................................................... 4

*Martin v. AmeriPride Servs.*,
    2011 U.S. Dist. LEXIS 61796 (S.D. Cal. June 9, 2011) ........................ 11

*Moore v. Jas H. Matthews & Co.*,
    682 F.2d 830 (9th Cir. 1982) .................................................................. 14

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Cases**

*Navarro v. Servisair*,
    2010 U.S. Dist. LEXIS 41081 (N.D. Cal. Apr. 26, 2010) .............................................. 11

*Norris v. Mazzola*,
2010 U.S. Dist. LEXIS 41081 (N.D. Cal. Apr. 26, 2010) ...................................................... 16

*In re Omnivision Techs.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) .......................................................................... 5

*Ontiveros v. Zamora*,
    303 F.R.D. 356 (E.D. Cal. 2014) ................................................................................... 16

*Ozga v. U.S. Remodelers, Inc.*,
    2010 U.S. Dist. LEXIS 91196 (N.D. Cal. Aug. 9, 2010) ................................................ 11

*In re Pac. Enter. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ............................................................................................ 8

*Reed v. 1-800 Contacts, Inc.*,
    2014 U.S. Dist. LEXIS 255 (S.D. Cal. Jan. 2, 2014) .................................................... 16

*Schiller v. David's Bridal, Inc.*,
    2012 U.S. Dist. LEXIS 80776 (E.D. Cal. June 11, 2012) ........................................... 4, 6

*Serrano v. Unruh*,
    32 Cal.3d 621 (1982) .................................................................................................... 14

*Sproul v. Astrue*,
    2013 U.S. Dist. LEXIS 12667 (S.D. Cal. Jan. 30, 2013) ................................................ 9

*Stewart v. San Luis Ambulance, Inc.*,
    878 F.3d 883 (9th Cir. 2017) .......................................................................................... 9

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ......................................................................................... 5

*In re Vitamin Cases*,
    110 Cal. App. 4th 1041 (2003) ..................................................................................... 14

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................................................*passim*

*Vo v. Las Virgenes Mun. Water Dist.*,
    79 Cal. App. 4th 440 (2000) ........................................................................................ 14

iii

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Cases**

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ............................................................................... 4

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (2001) ........................................................................... 6, 7

**Statutes**

Cal. Lab. Code § 226 ........................................................................................................ 1

Cal. Lab. Code § 226.75 (eff. Sept. 20, 2018) ............................................................... 9

Cal. Labor Code § 887 (eff. Dec. 19, 2018) .................................................................. 9

Cal. Bus. & Prof. Code §§17200 *et seq.* ....................................................................... 2

Labor-Management Relations Act Section 301 ............................................................... 1

PAGA ..................................................................................................................... *passim*

**Rules**

Fed. Rule of Civ. Pro. 23(h) ........................................................................................... 3

Fed. Rule of Civ. Pro. 30(b)(6) ................................................................................. 1, 2

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 16, 2020, at 2:00 p.m., in Courtroom 6 of the above-entitled court, at 1301 Clay Street, Oakland, CA 94612, Plaintiffs John Valliere, Eileen Foster, Antonio Garcia, Samantha West, and Jinetra Bonner on behalf of themselves and others similarly situated current and former employees (collectively "Plaintiffs"), will move and hereby do move for an award of attorneys' fees in the amount of $3,812,500 (25% of the common fund) and costs in the amount of $49,093.73.

The motion will be based on the Federal Rules of Civil Procedure, the foregoing notice, points and authorities, and declarations and exhibits filed concurrently herewith, and the pleadings, records, and files in this action.

DATED:  September 4, 2020 HADSELL STORMER RENICK & DAI LLP

By: s/ Randy Renick

Attorneys for Plaintiffs

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Jon Valliere, Eileen Foster, Antonio Garcia, Samantha West, and Jinetra Bonner ("Plaintiffs"), on behalf of themselves and the class which has been certified for purposes of settlement, submit this motion seeking an award of attorneys' fees in the amount of $3,812,500 (25% of the settlement fund) and the reimbursement of costs in the amount of $49,093.73 from a proposed $15,250,000 class action settlement ("Settlement") reached in this action with Defendants Tesoro Refining and Marketing Company LLC and Tesoro Logistics GP, LLC ("Defendants" or "Tesoro"). The fees and costs are sought in connection with the class action settlement of wage and hour claims brought on behalf of

> all current and former employees of Defendants (or any of their affiliates or successors) who worked a rotating 8-hour, 10-hour, or 12-hour shift in operations at any time during the Class Period at the i) Martinez Refinery or Chem Plant in Martinez, California; ii) the Los Angeles Refinery, Carson Operations, in Carson and Long Beach, California; iii) the Los Angeles Refinery, Wilmington Operations, in Wilmington, California; iv) the Tesoro Logistics terminal facilities at the Martinez Refinery; and v) the Long Beach Terminal, T2, Berth 121, and East Hynes in Long Beach, Carson, Signal Hill, and/or Wilmington, California,

at any time during the period from July 19, 2013 through the date of Preliminary Approval (June 26, 2020). Attached as Exhibit 1 to the Declaration of Randy Renick ("Renick Decl.") filed concurrently herewith is a true and correct copy of the Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement"), as amended by Exhibit 2, the Amendment to Joint Stipulation of Class Action Settlement and Release, which was preliminarily approved by this Court on June 26, 2020. Dkt. #117. The Settlement provides that Plaintiffs may seek reasonable fees and costs. Renick Decl., ¶14; Ex. 1 thereto, ¶¶ 51-57.

Based on all of the relevant circumstances, the fees requested at the Ninth Circuits' 25% of the fund benchmark is reasonable under the percentage of the fund with lodestar cross-check method. The high caliber skill and expertise of Class Counsel, and efficient litigation of the action, resulted in a settlement that confers a substantial benefit to the Class. Indeed, the estimated 1557 Class Members will receive an average payment of $7,204.56. In addition, there was considerable risk that litigation of the action, taken by Class Counsel on a contingency basis, would continue for many more years if the matter had not settled. Courts of this district and circuit have awarded fees in the amount of 25% of the

fund in similar cases with these same factors present. They have also found these factors warrant a positive multiplier for purposes of a lodestar cross-check, including ones much larger than the 1.84 multiplier sought here.

Accordingly, Plaintiffs respectfully request that the Court award attorneys' fees in the amount of $3,812,500 (25% of the common fund) and costs in the amount of $49,093.73.

## II.   BACKGROUND SUMMARY[1]

On January 10, 2017, Plaintiffs Chris Azpeitia, Eileen Foster, Antonio Garcia, and Samantha West commenced this class action against Defendants in *Jon Valliere, et al. v. Tesoro Refining and Marketing Company, LLC, Tesoro Logistics GP, LLC*, Case No. 3:17-cv-00123-JST, asserting, among other things, that Defendants require refinery, plant, and logistics operators to maintain radios during rest breaks in violation of the California Supreme Court's interpretation of Wage Order No. 4-2001 in the *Augustus v. ABM Securities Services, Inc.*, 2 Cal. 5th 257, 260 (2016) ("Augustus") decision, which held rest periods cannot be "on call." Dkt. #1.  On March 21, 2017, Plaintiff amended the complaint to add claims under PAGA. Dkt. #21. Renick Decl., ¶¶ 15-16.

On April 17, 2017, Defendants moved to dismiss and strike portions of the amended complaint on the grounds that Plaintiffs' claims were preempted by Section 301 of the Labor-Management Relations Act, among other reasons. Dkt. #25. On July 21, 2017, the Court granted Defendants' Motion to Dismiss as to Plaintiffs' UCL claim under Labor Code § 226 and their claim for disgorgement under the UCL, and it denied the motion in all other respects.  Dkt. #43. Renick Decl., ¶ 16.

On March 22, 2017, Plaintiff Jinetra Bonner commenced a class action in the Superior Court of California, County of Sacramento, Case No. 34-2017-00209750, against Defendants entitled *Jinetra Bonner v. Tesoro Refining & Marketing Company LLC*. On July 25, 2017, Bonner was related to the *Azpeitia* class action. Dkt. #27. On October 12, 2017, a Consolidated Class Action Complaint for Damages, Restitution, and Injunctive Relief was filed in *Jon Valliere, et al. v. Tesoro Refining and Marketing Company, LLC, et al.*, Case No. 3:17-cv-00123-JST, consolidating the two actions and replacing Plaintiff Chris Azpeitia with Plaintiff Jon Valliere. Dkt. #56.  Defendants answered the

---

[1] This motion includes only a summary of the relevant background as Plaintiffs will be filing a separate motion for final approval to be heard on the same date as the instant motion wherein the case history and facts will be more fully set out.

Consolidated Class Action Complaint on October 26, 2017, Dkt. #57. Renick Decl., ¶¶ 17-20.

Both prior and subsequent to the filing and consolidation of the actions, Plaintiffs conducted a diligent investigation of Defendants' wage and hour policies and practices with regard to rest breaks so as to evaluate liability and damages. Renick Decl., ¶¶ 21-23. In addition, in early 2018, the depositions of the following individuals were taken: Plaintiff Bonner on February 12, 2018; Plaintiff Valliere on February 14, 2018; and the FRCP 30(b)(6) witness Karen Kawano regarding Tesoro's Los Angeles area facilities on February 15, 2018. *Id.*

Following agreement to attend a first mediation in April 2018, Defendants produced, and Plaintiffs reviewed, Defendants' payroll data, the applicable base hourly rates, the number of operators and the number of shifts during the Class Period. Renick Decl., ¶ 24. Plaintiffs reviewed the extensive payroll data which allowed them to calculate the estimated total amount of damages for which Defendants would be liable were Plaintiffs successful in their efforts to certify the class and prevail at trial. *Id.* After a full day of negotiations, an agreement could not be reached. *Id.*

On July 18, 2018, the Parties attended a second mediation with David Rotman, an experienced and well-regarded wage and hour class action mediator in San Francisco. No settlement was reached. Renick Decl., ¶ 25. Thereafter, the Parties aggressively litigated their respective positions. Plaintiffs interviewed dozens more putative Class Members about their job duties and responsibilities, and they obtained declarations in support of their class certification motion.  Plaintiffs also took a FRCP 30(b)(6) deposition of Justin Lawrence regarding Tesoro's Martinez locations on September 6, 2018. Defendants took the depositions of three putative Class Members, Larry Dorsz on September 10, 2018; Jay Shah on September 11, 2018; and Joe Bugby on September 13, 2018. Renick Decl., ¶¶ 26-27.

While Plaintiffs moved forward with drafting their class certification motion, Mediator Rotman remained involved and ultimately negotiated the proposed Settlement accepted by the Parties in mid-November 2018. The Settlement was then reduced to a written Joint Stipulation of Class Action Settlement and Release (the "Settlement Agreement") and executed by all parties. Renick Decl., ¶ 28; Ex.1 thereto.

In conjunction with the proposed Settlement, the Parties stipulated to and filed with the Court's approval Plaintiffs' First Amended Consolidated Class Action Complaint ("FACCAC"), which states

the following allegations: 1) Defendants did not provide Plaintiffs and the putative Class with compliant uninterrupted and off-duty rest breaks, and did not pay premium wages for non-compliant rest breaks; 2) a derivative claim for not providing accurate wage statements; 3) penalties under PAGA, and 4) California Business & Professions Code §§17200 *et seq.* for unfair business practices based on the alleged non-compliant rest breaks, Dkt. #87-89. Renick Decl., ¶ 29.

On May 8, 2019, Plaintiffs filed their Motion for Order Granting Preliminary Approval. Dkt. #90. On June 6, 2019, Class Members Rogers, McDonald, and Dumont filed a Partial Objection to the Preliminary Approval Motion asserting that the Settlement "conflicts with the [collective bargaining agreements] because it does not account for the Unions' rights to dues deductions from the portion of the class members' settlement payments allocated back wages." Dkt. #96 at 5.  Defendants and Plaintiffs filed responses to the objection on June 14 and 18, 2019, respectively, Dkt. #99-100. Renick Decl., ¶ 30.

On October 18, 2019, the Court issued an order denying preliminary approval noting two deficiencies to be corrected: the narrowing of the Class Members' release, and the increasing of the Notice Response Deadline from 45 to 60 days for Class Members to submit objections and to request exclusion from the Settlement.  Dkt. #106 at 8, 9. The Court declined to withhold preliminary approval on the basis of the objection, Dkt. #106 at 10.  Renick Decl., ¶ 31.

The deficiencies identified by the Court were corrected as reflected in the Amendment to Joint Stipulation of Class Action Settlement and Release, Ex 2 to Renick Declaration, and Plaintiffs filed an unopposed renewed Motion for Preliminary Approval of Settlement Agreement on November 18, 2019, *see* Dkt. #107. The Court granted the renewed Motion for Preliminary Approval on June 26, 2020, Dkt. #117. Renick Decl., ¶ 32.

## III.   THE SETTLEMENT AGREEMENT

The total non-reversionary settlement amount is $15,250,000 paid by Defendants for the benefit of the Class. Dkt. #117 at 3; Renick Decl., Ex. 1, ¶ 32. The Settlement provides for cash payment to members of the settlement class according to the number of qualifying 8, 10, and 12-hour shifts worked by each Class Member during the class period; additional service awards not to exceed $7,500 for each of the five named Plaintiffs; $50,000 to penalties under the Private Attorneys General Act ("PAGA"),

1   with 75% of the PAGA penalties ($37,500) being paid to the California Labor and Workforce

2   Development Agency ("LWDA") and 25% of the PAGA penalties ($12,500) being paid to Settlement

3   Class Members who do not opt out; an estimated $45,000 to CAC Services for claims administration;

4   and reasonable attorneys' fees and costs. Renick Decl., ¶ 11, Ex. 1, ¶¶ 18, 32, 39, 44, 48, 50, 88.

## IV.   ARGUMENT

### A.   Plaintiffs' Fee Request for 25% of the Fund, $3,812,500, Is Reasonable Under Both the Percentage of the Fund and Lodestar Method.

8         Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may

9   award attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

10  Fed. R. Civ. P. 23(h). Federal courts apply state law in diversity actions to determine "not only the right

11  to fees, but also in the method of calculating the fees." *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d

12  1470, 1478 (9th Cir. 1995); *accord Schiller v. David's Bridal, Inc*., No. 1:10-cv-00616-AWI-SKO, 2012

13  U.S. Dist. LEXIS 80776, at *42-43 (E.D. Cal. June 11, 2012).

14        The common fund doctrine provides that "'when a number of persons are entitled in common to

15  a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the

16  creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorney's fees out of

17  the fund.'" *Laffitte v. Robert Half Internat., Inc.*, 1 Cal. 5th 480, 497 (2016); *see also Boeing Co. v. Van

18  Gemert*, 444 U.S. 472, 478 (1980)("[A] litigant or a lawyer who recovers a common fund for the benefit

19  of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a

20  whole."). Under California law, the choice of a fee calculation method for a fee award from a class

21  action common fund "is generally one within the discretion of the trial court, the goal under either the

22  percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their

23  efforts." *Laffitte, supra*, 1 Cal. 5th at 504.  Similarly, under Ninth Circuit law, "[w]here a settlement

24  produces a common fund for the benefit of the entire class, courts have discretion to employ either the

25  lodestar method or the percentage-of-recovery method" to award attorney's fees. *In re Bluetooth

26  Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *In re Mercury Interactive Corp.*,

27  618 F.3d 988, 992 (9th Cir. 2010)); *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002).

28  "As always, when determining attorneys' fees, the district court should be guided by the fundamental

principle that fee awards out of common funds be 'reasonable under the circumstances.'" *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994).

In the last few decades, both federal and state courts have regularly approved a percentage fee calculation in determining a fee award where the class action settlement establishes a common fund for the benefit of the class out of which the attorney's fee is awarded. *Laffitte*, 1 Cal. 5th at 493-94 (citing federal and state cases). In *Laffitte*, the California Supreme Court approved the percentage of the fund calculation under California law, holding that "trial courts have discretion to conduct a lodestar cross-check on a percentage fee . . . [or] to forgo a lodestar cross-check and use other means to evaluate the reasonableness of the requested percentage fee." *Id*. at 506.

Courts have recognized a number of reasons and advantages in adopting the percentage of fund method for the fee calculation. *In re Omnivision Techs*., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). A primary reason is that "a percentage-of-the-fund approach more accurately reflects the economics of litigation practice," which is "result-oriented." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993). In a common fund case, as here, "the monetary amount of the victory is often the true measure of success, and therefore it is most efficient that it influence the fee award." *Id*. In addition, courts have found use of the percentage of the fund method to be the "better practice" because it "will encourage plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions." *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).

The Court, therefore, should apply a percentage of fund and lodestar cross-check approach. Its application will confirm that the requested fee award of 25% of the settlement fund, $3,812,500, is reasonable.

### 1. Using the Percentage of Fund Method, Class Counsel's Fee Request Is Reasonable.

In approving the percentage of the fund method, the California Supreme Court in *Laffitte* instructed only that courts "may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created." 1 Cal. 5th at 503 (emphasis added). Looking to the range of fee awards, one-third of the total potential recovery is regularly awarded in California as a "reasonable" fee

in common fund cases. *Laffitte v. Robert Half Internat. Inc.*, 231 Cal. App. 4th 860, 878 (2014) (concluding that award of one-third the common fund was "consistent with, and in the range of, awards in other class action lawsuits"); *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 n.13 (2009) ("'Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.'"); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (2008)(same). Plaintiffs here request a fee award of 25% of the settlement fund, which is well below the average one-third of the recovery regularly awarded in such cases.

"As there is no definitive set of factors that California courts mandate or endorse for determining the reasonableness of attorneys' fees in the context of a common-fund percentage-of-the-benefit approach, [federal courts] consider the reasonableness of the percentage requested in light of the factors endorsed by the Ninth Circuit, with the 25 percent award as a starting point." *Schiller*, 2012 U.S. Dist. LEXIS 80776, at *47 (applying percentage of the fund method in wage and hour class case); *see, e.g., In re Consumer Privacy Cases*, 175 Cal. App. 4th at 557 n.13 (citing *Six Mexican Workers v. Arizona Citrus Growers*, 904 F. 2d 1301, 1311 (9th Cir. 1990)). Courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The Ninth Circuit has identified a number of factors that courts may consider when determining whether an award is reasonable and whether a departure from the benchmark is appropriate, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases. *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013)(citing *Vizcaino*, 290 F.3d at 1047).

As addressed herein, the fee award requested by Class Counsel at the Ninth Circuit's 25% benchmark falls well within what has been deemed reasonable ranges under both California and Ninth Circuit law and is supported by the *Vizcaino* factors.

### a)   Class Counsel Achieved an Excellent Result.

Class Counsel achieved an excellent result in this case (the first *Vizcaino* factor). "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."

*Lusby v. Gamestop Inc.*, 2015 U.S. Dist. LEXIS 42637, at *9 (N.D. Cal. Mar. 31, 2015).  "Compromise is inherent and necessary in the settlement process . . . . [E]ven if the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated, this is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 250 (2001)(internal quotations omitted).  A settlement, therefore, need not obtain 100% of the damages and may, in fact, provide only a fraction of the recovery sought to be found fair and reasonable.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Wershba*, 91 Cal. App. 4th at 250.

Here, the net settlement to be distributed to the Class after the reduction of the LWDA payment for PAGA penalties, attorney's fees, costs, incentive awards, and administration is $11,217,500.00.[2] Renick Decl., ¶ 12.  The average payment to each of the 1557 Class Members is $7,204.56 with a median of $8,452.65. Class members who worked the highest number of Qualifying Shifts during the almost seven year class period will receive as much as $15,261.89. *Id.*  Class Counsel estimates the gross settlement is approximately 50% of the total damages that Plaintiffs could have recovered on the rest break and derivative claims. *Id.*, ¶ 13. Thus, the financial benefit conferred upon the class is significant, and the settlement is an excellent result for the Class. *See* Renick Decl., ¶ 12; Declaration of Joshua F. Young ("Young Decl."), ¶ 21; Declaration of Michael D. Singer ("Singer Decl."), ¶¶ 9-10.

> **b)**     **Class Counsel Litigated the Case on a Contingency Basis and Faced Considerable Risk.**

The risk of further litigation and contingent nature of the fee and the financial burden, the second and fifth *Vizcaino* factors, favor approval of the requested fee award. *See In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding fees justified because of the complexity of the issues and the risks).

Plaintiffs faced a considerable risk of further litigation here. Plaintiffs filed the case shortly after

---

[2] This calculation assumes that Plaintiffs seek the full amount of estimated costs of $100,000.  As Plaintiff's request for costs is only $49,093.73, the amount available to the Class increases by $50,906.27, resulting in a slight increase to the amount to be distributed to each Class Member. Plaintiffs will provide an exact calculation in connection with the Motion for Final Approval.  Renick Decl. ¶ 12.

the California Supreme Court's decision in *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257

(2016). While Plaintiffs believed that the decision provided clear guidance regarding employers' rest

break obligations under California law and confirmed Defendants' failure to provide its operators with

lawful rest breaks, courts have diverged in their interpretation and application of the decision. *See, e.g.,*

*Bell v. Home Depot U.S.A., Inc.*, No. 2:12-cv-02499 JAM-CKD, 2017 U.S. Dist. LEXIS 55442, at *5

(E.D. Cal. Apr. 11, 2017)(concluding *Augustus* not applicable because the court did not consider an on-

premises rest break policy which does not require employees to remain on call); *Stewart v. San Luis*

*Ambulance, Inc.*, 878 F.3d 883, 886–87 (9th Cir. 2017)(concluding *Augustus* did not control question of

whether ambulance employers are required to relieve ambulance attendants working 24-hour shifts of

all duties during rest periods and certifying question to California Supreme Court). In addition, the

California legislature has since been active in enacting exceptions. *See* Cal. Lab. Code § 226.75 (eff.

Sept. 20, 2018)(employees holding safety-sensitive positions at petroleum refineries exempt from rest

break laws to the extent they are required to carry radios, respond to emergencies, and remain on the

employer's premises during their shifts); Cal. Labor Code § 887 (eff. Dec. 19, 2018)("[E]mergency

ambulance employees shall remain reachable by a portable communications device throughout the

entirety of each work shift."). Renick Decl., ¶ 43.

Indeed, with class claims for violation of rest break and other wage and hour laws, litigation can

extend for many years due to the many hurdles facing plaintiffs in class actions. *See., e.g*., Renick Decl.,

¶¶ 40-41 (class actions involving overtime, living wage, and/or meal and rest break violations litigated

five years, six years, and more than 10 years before resolving). Accordingly, many more years of

litigation and an appeal was a very real possibility here.

Second, the fact that Class Counsel litigated this case on a contingency fee basis and has

foregone payment since the outset of the litigation supports the percentage sought in the instant motion.

Renick Decl., ¶¶  39, 44; Young Decl., ¶ 14; Singer Decl., ¶¶  12, 15. "Courts are loathe to penalize

experienced counsel for efficient representation under contingency agreements."  *Sproul v. Astrue*, 2013

U.S. Dist. LEXIS 12667, at *6 (S.D. Cal. Jan. 30, 2013).  "Courts consistently recognize that the risk of

non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's

fee award."  *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *68 (C.D. Cal. June 10,

2005).  Thus, Class Counsel's vigorous but efficient litigation of this case on a contingency fee basis with no certainty of recovery of its fees and costs supports an award of 25% of the common fund in attorneys' fees.

### c) The Skill and Quality of the Work Performed by Class Counsel Merits Approval of the Requested Fee Award.

The experience, ability, and quality of Class Counsel's work, the third and fourth *Vizcaino* factors, support the requested fee award.  Class Counsel in this case has extensive experience successfully litigating wage-and-hour class actions, as well as other types of employment actions. Renick Decl., ¶¶ 4-10; Ex. 5 thereto; Young Decl., ¶¶ 2-5, 7; Exhibit 1 thereto; Singer Decl., ¶¶ 2-8. These attorneys, at the firms Hadsell Stormer Renick & Dai, Gilbert & Sackman, and Cohelan Khoury, & Singer have been recognized for their skill and expertise in the field of employment and class action litigation. *Id*. The skill of these attorneys, the reputation of the firms, and the attorneys' contributions to public interest communities throughout California, have been consistently recognized across by the legal community. *Id*. Moreover, Hadsell Stormer Renick & Dai and Gilbert & Sackman have extensive experience litigating on behalf of oil refinery operators, and Gilbert & Sackman has previous experience litigating wage and hour claims against these very defendants. Renick Decl., ¶ 42; Young Decl., ¶¶ 5-6.

This Court can note that defense counsel in this case is also highly skilled.  *Cf. In re Equity Funding Corp. Sec. Litigation*, 438 F. Supp. 1303, 1336-37 (C.D. Cal. 1977) ("[P]laintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly.").  The defendants in this case are represented by attorneys from a well-regarded law firm representing a sophisticated client with formidable resources.

Class Counsel's high-quality and effective representation of the class is further evidenced by Plaintiffs' success against Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint and Defendants' subsequent desire to mediate twice prior to protracted motion work, including class certification. See Renick Decl., ¶ 10.  Indeed, Defendants' counsel is familiar with Gilbert & Sackman's high caliber skill, expertise, and work as Defendants faced the same counsel in a prior wage and hour class action that was litigated for four years.  Young Decl., ¶ 6.  *See, e.g., Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal 2013) (In awarding fees, the court recognized the

"specialized skill" of Class Counsel in wage-and-hour law was an "asset to Class Members" and found the "quality of the work performed was good.").

        **d)**     **The Amount Requested to Compensate Class Counsel is Reasonable in Comparison to Awards in Similar Cases.**

The final *Vizcaino* factor – comparable awards in similar cases – supports Class Counsel's request for 25% of the common fund.  Federal courts "have consistently approved of attorney fee awards over the 25% benchmark[,]" specifically at a rate of "30% or higher[.]"  *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *18 n.12 (C.D. Cal. June 10, 2005).  This range is consistent with California law.  *See Laffitte*, 231 Cal. App. 4th at 878 (one-third of the fund); *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 557 n.13 (one third of the recovery); *Chavez*, 162 Cal. App. 4th at 66 (same). In fact, fifty percent has generally been accepted as the "upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small."  *Martin v. AmeriPride Servs.*, 2011 U.S. Dist. LEXIS 61796, at*22-23 (S.D. Cal. June 9, 2011).

Under the very circumstances here, where Class Counsel achieves a positive result quickly and prior to extensive motion practice or class certification, courts in this district and others of this Circuit have consistently found the 25% of the fund benchmark to be an appropriate fee award.  *See, e.g., Navarro v. Servisair*, No. C 08-02716 MHP, 2010 U.S. Dist. LEXIS 41081, at *10 (N.D. Cal. Apr. 26, 2010)(finding "a 25% fee consistent with the Ninth Circuit benchmark" appropriate where class action settlement reached "relatively quickly without litigating any motions for summary judgment or class certification"); *Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx), 2017 U.S. Dist. LEXIS 77714, at *47-48 (C.D. Cal. Feb. 16, 2017)(finding award of the standard 25% fee benchmark appropriate where settlement "was a favorable result" "but not exceptional" and "reached after two mediations and before the case had reached class certification or otherwise participated in motion practice"); *Ozga v. U.S. Remodelers, Inc.*, No. C 09-05112 JSW, 2010 U.S. Dist. LEXIS 91196, at *7-8 (N.D. Cal. Aug. 9, 2010)(concluding a deviation upward from 25% benchmark to 29% appropriate where Plaintiff's counsel obtained an excellent result, received an overwhelmingly positive reaction to the settlement, and faced a significant risk in prosecuting the case given the uncertain state of California law in similar wage and hour cases but "reached this settlement quickly and did not engage in any

motion practice"); *see also* Young Decl., ¶ 15-16; Singer Decl., ¶¶ 13-14 (collection of state and federal

cases approving fee requests equal to or more than the amount sought here).

> ### 2.  Based on Fees Calculated under the Lodestar Method, Class Counsel's Fee Request is Also Reasonable.

Under both California and Ninth Circuit law, a lodestar cross-check on a percentage fee is

acceptable.  *Laffitte*, 1 Cal. 5th at. at 506; *Vizcaino*, 290 F.3d at 1043. In addition, the court "may

increase or decrease [the lodestar] amount by applying a positive or negative 'multiplier' to take into

account a variety of other factors, including the quality of the representation, the novelty and

complexity of the issues, the results obtained, and the contingent risk presented." *Lealao v. Beneficial

Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir.

1998) (identifying same factors).

> #### a)  Class Counsel's Hourly Rates are Reasonable.

In order to calculate the lodestar, a court must determine the reasonable hourly rate for the

services rendered by class counsel.  *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 (2009).  A

reasonable rate is typically based upon the prevailing market rate in the community for similar work

performed by attorneys of comparable skill, experience, and reputation. *Heritage Pac. Fin., LLC v.

Monroy*, 215 Cal. App. 4th 972, 1009 (2013).  Generally, the "market rate" is based on the rates in the

community where the court is located. *Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App.

4th 26, 71 (2014); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

As set forth in the supporting declarations of counsel, the hourly rates applied here are consistent

with the attorneys' and paralegals' skill and experience and reflect the prevailing market rates. Renick

Decl., ¶¶ 45-56; Young Decl., ¶¶ 16-18; Singer Decl., ¶¶ 18-20; Exhibit 2 thereto.  The requested rates

are also consistent with and comparable to rates approved by courts in this district. Renick Decl., ¶¶ 47-

56.

> #### b)  Plaintiffs' Lodestar Amount for Hours Expended Is Reasonable.

Below are charts reflecting the hours worked on this case by the three firms representing the

class, Hadsell Stormer Renick & Dai, Gilbert & Sackman, and Cohelan Khoury & Singer:

HADSELL STORMER RENICK & DAI:

| Attorney or Paralegal | Current Hours | Hourly Rate | Current Lodestar |
|---|---|---|---|
| Randy Renick (Partner) | 452.3 | $875.00 | **$395,762.50** |
| Cornelia Dai (Partner) | 211.2 | $775.00 | **$163,680.00** |
| Elizabeth Song (Associate) | 27.9 | $450.00 | **$12,555.00** |
| Springsong Cooper (Associate) | 204.6 | $425.00 | **$86,955.00** |
| **Attorney Totals** | **896.0** | | **$658,952.50** |
| Maria Stroud (Paralegal) | 59.8 | $300.00 | **$17,940.00** |
| **Non-Attorney Totals** | **59.8** | | **$17,940.00** |
| **TOTALS:** | **955.8** | | **$676,892.50** |

- GILBERT & SACKMAN:

| Attorney or Paralegal | Current Hours | Hourly Rate | Current Lodestar |
|---|---|---|---|
| Jay Smith (Shareholder) | 50.6 | $850.00 | **$43,010.00** |
| Joshua F. Young (Shareholder) | 717.4 | $750.00 | **$538,050.00** |
| Ben O'Donnell (Shareholder) | 55.6 | $500.00 | **$27,800.00** |
| **Attorney Totals** | **823.6** | | **$608,860.00** |
| Darcy Laparra (Paralegal) | 0.2 | $300.00 | **$60.00** |
| **Non-Attorney Totals** | **0.2** | | **$60.00** |
| **TOTALS:** | **823.8** | | **$608,920.00** |

- COHELAN KHOURY & SINGER:

| Attorney or Paralegal | Current Hours | Hourly Rate | Current Lodestar |
|---|---|---|---|
| Timothy D. Cohelan (Founding Partner) | 24.4 | $900.00 | **$21,960.00** |
| Isam C. Khoury (Founding Partner) | 29.8 | $875.00 | **$26,075.00** |
| Michael D. Singer (Managing Partner) | 411.1 | $875.00 | **$359,712.50** |
| Diana M. Khoury (Partner) | 189.5 | $725.00 | **$137,387.50** |
| J. Jason Hill (Partner) | 350.7 | $600.00 | **$210,420.00** |
| Kristina De La Rosa (Associate) | 64.5 | $500.00 | **$32,250.00** |
| **Attorney Totals** | **1,070.0** | | **$787,805.00** |
| Amber Worden (Paralegal) | 7.8 | $200.00 | **$1,560.00** |
| Matthew Atlas (Paralegal) | 17.8 | $170.00 | **$3,026.00** |
| **Non-Attorney Totals** | **25.6** | | **$4,586.00** |
| **TOTALS:** | **1,095.6** | | **$792,391.00** |

Renick Decl., ¶ 33, Exhibit 3 thereto; Young Decl., ¶ 10, Exhibit 2 thereto; Singer Decl., ¶¶ 10, 16, Exhibit 1 thereto.

The combined lodestar for the three firms at the time of the filing of this motion is $2,078,203.50. This lodestar requires a multiplier of 1.84 to be equivalent to the fee amount sought here. Plaintiffs' counsel expects to spend an additional 50 hours meeting with class members, preparing

13

the motion for final approval, finalizing the motion for attorney's fees and costs, resolving claims, and working with the claims administrator to ensure that the settlement amount is properly allocated to class members; and distributed to each class member.[3] Renick Decl., ¶ 34. Thus, an even smaller multiplier is required after inclusion of these additional hours.

Generally, hours are reasonable if "at the time rendered, [they] would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Moore v. Jas H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). Class Counsel are "entitled to compensation for all hours 'reasonably spent unless special circumstances would render an award unjust.'" *Vo v. Las Virgenes Mun. Water Dist.*, 79 Cal. App. 4th 440, 446 (2000)) citing *Serrano v. Unruh*, 32 Cal.3d 621, 639 (1982)). Such special circumstances do not exist in this case.

Hours reasonably worked should include time spent drafting and revising pleadings, meeting with clients and opposing counsel, and preparing the case for class certification and multiple mediation sessions. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Serrano*, *supra*, 20 Cal. 3d at 49. Taking into account the common fund factors analysis above, the time submitted by Class Counsel was reasonably necessary to achieve success in the litigation: a Joint Settlement Agreement conferring substantial benefits to the Settlement Class Members. *Consumer Privacy Cases*, *supra*, 175 Cal. App. 4th at 556-57 ("a lodestar calculation may be enhanced on the basis of a percentage-of-the-benefit analysis"); *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1052 (2003).

As detailed in the declarations accompanying this motion, Class Counsel have spent a total of 2875.2 hours litigating this case. Renick Decl., Ex. 3 (955.8 hours); Young Decl., Ex. 2 (823.8 hours); Singer Decl., ¶ 16, Ex. 1 (1095.6 hours). Class Counsel has described the work performed in their declarations and submitted summary charts showing the total hours spent by each timekeeper at each of the three firms, broken down by the following categories: (1) Investigation and Factual Research; (2) Discovery; (3) Pleadings, Briefs, and Pretrial Motions; (4) Court Appearances and Preparation; (5) Mediation & Settlement; (6) Litigation Strategy, Analysis, and Case Management; and (7) Class Certification. Renick Decl., ¶¶ 33-34, Ex. 3 thereto; Young Decl., ¶ 10-12, Ex. 2 thereto; Singer Decl.,

---

[3] Prior to the hearing on the motion, Class Counsel will file supplemental declarations to update the number of hours worked and lodestar achieved. Renick Decl., ¶ 34; Young Decl., ¶ 13; Singer Decl., ¶ 11.

1  ¶¶ 10, 16, 17, Ex. 1 thereto. The hours reflect contemporaneous time records of attorneys and paralegals

2  from each firm. Renick Decl., ¶¶ 36-38; Young Decl., ¶ 10; Singer Decl., ¶ 10. The declarations of

3  Class Counsel demonstrate that the hours spent in litigating this case are reasonable in light of the

4  important benefits conferred upon the settlement class, and of the contentious law and motion practice,

5  the amount and nature of discovery conducted, the number of Defendants' employees and former

6  employees included in both the investigation and the settlement class, mediation preparation, and

7  continuing investigation and negotiation of the settlement well after the parties agreed upon the general

8  terms of the settlement. *See generally* Renick Decl.; Young Decl.; Singer Decl. Given the wealth of

9  experience of the partners at the three firm leading this case, all the attorneys and paralegals who have

10  assisted with any aspect of the litigation have been efficient, avoiding duplication and unnecessary

11  work; however, to the extent work could have been inefficient or duplicative, Class Counsel exercised

12  billing judgment and excluded unnecessary hours from their calculation of the lodestar. Renick Decl., ¶¶

13  37-38; Young Decl., ¶ 19; Singer Decl., ¶ 21.

14           **c)**        **An Upward Multiplier of 1.84 Is Modest and Justified in this Case.**

15          Based on the total lodestar of $2,078,203.50, the lodestar cross-check requires a 1.84 multiplier

16  to be equivalent to the fee amount sought here.  An upward multiplier is supported by the factors

17  California and federal courts consider for this determination. *See Lealao*, 82 Cal. App. 4th at 26; *see*

18  *Hanlon*, 150 F.3d at 1029.  Here, Class Counsel achieved a very successful result with a relatively large

19  recovery for individual class members, an average payment to each of the 1557 Class Members is

20  $7,204.56.  Renick Decl., ¶ 12; Young Decl., ¶ 9.  Further, given the aggressive litigation position taken

21  by Tesoro, it was likely that the action would be highly contested and lengthy given the inherently

22  complex nature of class actions and the manner in which the prior wage and hour class actions

23  involving the same defendants and the same counsel on both sides were litigated. Renick Decl., ¶¶ 40-

24  41; Young Decl., ¶ 6.  In addition, this case was taken on a contingency basis by experienced and well-

25  regarded counsel. Renick Decl., ¶¶ 4-10, 39, 44; Ex. 5 thereto; Young Decl., ¶¶ 2-5, 14; Ex. 1 thereto;

26  Singer Decl., ¶¶ 2-8, 12, 15.

27          Indeed, with the presence of these same factors, the court in *Reed v. 1-800 Contacts, Inc.*, No.

28  12-cv-02359 JM (BGS), 2014 U.S. Dist. LEXIS 255, at *26-28 (S.D. Cal. Jan. 2, 2014), approved a 25

1   percent of $11.7 million settlement fee award which was supported by a lodestar cross-check with a

2   much higher 2.9 multiplier. The court found that approval of the 2.9 multiplier was supported by the

3   frequent approval by the Ninth Circuit of even higher multipliers. *Id.* at *28 (*citing Vizcaino*, 290 F.3d

4   at 1051 n.6). In *Vizcaino*, *supra*, 290 F.3d at 1052-54, the Ninth Circuit listed 34 common fund cases

5   that were decided between 1996 and 2001 in which the fees were awarded as a percentage of the

6   common fund. In 24 of these cases, a lodestar-times-multiplier analysis was also used. *Id.* The

7   multipliers in these 24 cases were as high as 19.6, and the average multiplier was 3.32. *Id. See also*

8   *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (applying 2.83 multiplier); *Craft*

9   *v. City of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (court ordered attorneys' fee of

10   25% of the settlement fund, where lodestar cross-check showed a multiplier of 5.2).

11       For these reasons, the Court should approve Plaintiffs' request for a fee award of $3,812,500—

12   25 percent of the $15,250,000 settlement fund—supported here by a lodestar cross-check with a 1.84

13   multiplier.

14       **B.   The Costs that Class Counsel Seek for Reimbursement Are Reasonable.**

15       Class Counsel also seeks reimbursement of $49,093.73 in total costs incurred in prosecuting this

16   case to date. At preliminary approval, estimated costs were up to $100,000. Renick Decl., ¶ 12.

17   Plaintiffs' costs are set forth in detail in the declarations of Class Counsel. *See* Renick Decl., ¶ 57

18   ($21,420.82), Exhibit 4 thereto; Young Decl., ¶ 20 ($15,890.37), Exhibit 3 thereto; Singer Decl., ¶ 22

19   ($11,782.54), Exhibit 3 thereto.

20       "There is no doubt that an attorney who has created a common fund for the benefit of the class is

21   entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303

22   F.R.D. 356, 375 (E.D. Cal. 2014).  As one commentator noted, "the prevailing view is that expenses are

23   awarded in addition to the fee percentage." Conte, Attorney Fee Awards, § 2.08 at pp. 50-51 (2d Ed.

24   1977).  Indeed, courts routinely reimburse class counsel for the costs incurred in prosecuting cases on a

25   contingent fee basis. *See In re Businessland Sec. Litig.*, No. C-90-20476-RFP, 1991 U.S. Dist. LEXIS

26   8962, at *6 (N.D. Cal. June 14, 1991), and cases cited therein. The recovery of costs is to include all out

27   of pocket costs not part of overhead which are typically billed to a client. *Bussey v. Affleck*, 225 Cal.

28   App. 3d 1162 (1990); *Norris v. Mazzola*, No. 15-cv-04962-JSC, 2017 U.S. Dist. LEXIS 208610, at *40

(N.D. Cal. Dec. 19, 2017) (citing Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994)).*Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (reasonable out of pocket costs of the type ordinarily billed to paying clients are recoverable).

All of the categories of costs sought here are typically billed to a client. Renick Decl., ¶ 58.  The costs sought by Class Counsel are reasonable and were necessarily incurred in order to advance the litigation for the benefit the class. Renick Decl., ¶ 57; Young Decl., ¶ 20; Singer Decl., ¶  22. They, therefore, should be reimbursed. *See In re Immune Response Sec. Litig*., 497 F.Supp.2d 1166, 1178 (S.D. Cal. 2007).

## V.      CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for attorneys' fees in the amount of $3,812,500 (25% of the settlement fund), and reimbursement of costs in the amount of $49,093.73.


DATED:  September 4, 2020                    **HADSELL STORMER RENICK & DAI LLP**


By: s/ Randy Renick

Attorneys for Plaintiffs