Randy Renick (CA SBN 179652)
   (rrr@hadsellstormer.com)
Cornelia Dai (CA SBN 207435)
   (cdai@hadsellstormer.com)
**HADSELL STORMER RENICK & DAI LLP**
128 North Fair Oaks Avenue, Suite 204
Pasadena, California 91103-3645
Telephone: (626) 585-9600 / Fax: (626) 577-7079

*Lead Plaintiffs' Counsel*

*Attorneys for Plaintiffs Jon Valliere, Eileen Foster,*
*Antonio Garcia, Samantha West, and the Class*

[Additional Counsel Listed on Next Page]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA - OAKLAND

| | |
|---|---|
| JON VALLIERE, EILEEN FOSTER, ANTONIO GARCIA, and SAMANTHA WEST, individually and on behalf of all similarly situated current and former employees,<br><br>Plaintiffs,<br><br>v.<br><br>TESORO REFINING AND MARKETING COMPANY LLC, TESORO LOGISTICS GP, LLC, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 4:17-CV-00123-JST<br><br>**Assigned to the Hon. Jon S. Tigar**<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        December 16, 2020<br>Time:        2:00 p.m.<br>Crtroom:     6  (2nd Floor, Oakland)<br>Judge:       Hon. Jon S. Tigar |
| JINETRA BONNER, individually, on behalf herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TESORO REFINING & MARKETING COMPANY, LLC, a Delaware Limited Liability Company; and DOES 1 through 100 inclusive,<br><br>Defendants. | |

Jay Smith (CA SBN 166105)
    (js@gslaw.org)
Joshua F. Young (CA SBN 232995)
    (jyoung@gslaw.org)
**GILBERT & SACKMAN, A Law Corporation**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000 / Fax: (323) 937-9139

*Attorneys for Plaintiffs Jon Valliere, Eileen Foster,*
*Antonio Garcia, Samantha West, and the Class*


Timothy D. Cohelan (CA SBN 60827)
    (tcohelan@ckslaw.com)
Michael Singer (CA SBN 115301)
    (msinger@ckslaw.com)
Diana M. Khoury (CA SBN 128643)
    (dkhoury@ckslaw.com)
J. Jason Hill (CA SBN 179630)
    (jhill@ckslaw.com)
**COHELAN KHOURY & SINGER**
605 "C" Street, Suite 200
San Diego, California  92101
Telephone:  (619) 595-3001 / Fax: (619) 595-3000

*Attorneys for Plaintiff Jinetra Bonner and the Class*

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT;
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 4:17-cv-00123-JST

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION .................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND.......................................3

     A.     Factual Background ....................................................................3

     B.     Procedural Background.................................................................3

     C.     Investigation and Discovery ........................................................5

     D.     Mediations.................................................................................6

     E.     Settlement Agreement and Preliminary Approval ................................6

III.    ARGUMENT .................................................................................................8

     A.     The Court-Approved Notice Plan Was Fully Implemented
              and Satisfies Rule 23...................................................................8

     B.     The Settlement is Fair, Adequate, and Reasonable
              and Should be Granted Final Approval. .............................................10

          1.     The Strength of Plaintiffs' Case and the Risk, Expense,
                   Complexity, and Likely Duration of Further Litigation ............................11

          2.     The Amount Offered in Settlement.............................................13

          3.     The Extent of Discovery and Stage of the Proceedings...........................14

          4.     Experience and Views of Counsel .............................................14

          5.     The Presence of Governmental Entities.....................................15

          6.     The Reaction of the Class Members ..........................................15

     C.     The Plan of Allocation Is Fair, Adequate, and Reasonable
              and Should be Approved...............................................................16

     D.     The Requested Service Payment for the Five Named Plaintiffs
              Should Be Approved...................................................................19

     E.     Final Certification of the Class for Settlement Purposes
              Is Proper ................................................................................23

# **TABLE OF CONTENTS**

**Page(s)**

1.    The Settlement Class Satisfies the Rule 23(a) Requirements ......................23

2.    The Settlement Class Meets the Requirements of Rule 23(b) ....................23

IV.    CONCLUSION…………………………………………………………………..25

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT;
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 4:17-cv-00123-JST

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Augustus v. ABM Securities Services, Inc.*,
    2 Cal. 5th 257 (2016) ...................................................................................................4, 11, 12, 24

*Bell v. Home Depot U.S.A., Inc.*,
    No. 2:12-cv-02499 ........................................................................................................................12

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. Mar. 19, 2015) ..............................................................................17, 21

*Berlanga v. Equilon Enterprises LLC*,
    U.S.D.C., Northern District, Case No. 4:17-cv-00282 (final approval of $7,750,000
    settlement granted January 22, 2019) ..........................................................................................14

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .........................................................................................................16

*Boyd v. Bank of Am. Corp.*,
    2014 WL 6473804 (C.D. Cal. Nov. 18, 2014)...............................................................................22

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ...............................................................................................15

*Bradley v. Networkers Int'l, LLC*,
    211 Cal. App. 4th 1129 (2012) ......................................................................................................25

*Brinker Restaurant Corp. v. Superior Court*,
    53 Cal.4th 1004 (2012) ..................................................................................................................24

*Buzas v. Phillips 66 Company*,
    Case No. 4:17-cv-00163-YGR (March 6, 2018), ECF No. 47 ......................................................22

*Buzas v. Phillips 66 Company*,
    U.S.D.C., Northern District, Case No. 4:17-cv-00163 (final approval of $5,500,000
    settlement granted March 8, 2018) ...............................................................................................14

*Chu v. Wells Fargo Invs., LLC*,
    2011 U.S. Dist. LEXIS 15821 (N.D. Cal. Feb. 16, 2011) .............................................................21

*In re Citric Acid Antitrust Litig.*,
    145 F. Supp. 2d 1152 (N.D. Cal. 2001) ........................................................................................16

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)..........................................................................................................11

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT;
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 4:17-cv-00123-JST

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Clack v. Chevron Corporation*,
 Los Angeles Superior Court, Case No. BC649514 (final approval of $17,375,000
 granted on August 6, 2020)............................................................................................14

*In re Conn. Gen. Life Ins. Co.*,
 1997 WL 910387 (C.D. Cal. Feb.13, 1997)..................................................................22

*Cook v. Niedert*,
 142 F.3d 1004 (7th Cir. 1998) .......................................................................................22

*Covillo v. Specialty's Café*,
 2014 U.S. Dist. LEXIS 29837 (N.D. Cal. Mar. 6, 2014)...............................................21

*Dennis v. Kellogg Co.*,
 697 F.3d 858 (9th Cir. 2012) .........................................................................................19

*Edwards v. The First Am. Corp.*,
 798 F.3d 1172 (9th Cir. 2015) .......................................................................................24

*Ellis v. Costco Wholesale Corp.*,
 657 F.3d 970 (9th Cir. 2011) .........................................................................................23

*Ellis v. Naval Air Rework Facility*,
 87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ............................11

*Garner v. State Farm Mut. Auto. Ins. Co.*,
 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...............................................................22

*Glass v. UBS Financial Services, Inc.*,
 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (Chesney, J.) ............................................22

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) .......................................................................................25

*Hanon v. Dataproducts Corp.*,
 976 F.2d 497 (9th Cir. 1992) .........................................................................................23

*Harris v. Vector Mktg. Corp.*,
 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) .........................................17, 21

*In re High-Tech Emple. Antitrust Litig.*,
 2015 U.S. Dist. LEXIS 118051 (N.D. Cal. Sep. 2, 2015) .........................................11, 18

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT;
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 4:17-cv-00123-JST

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re Hyundai & Kia Fuel Econ. Litig.*,
   2018 U.S. App. LEXIS 1626 (9th Cir. Jan. 23, 2018) ..................................................23

5

6

*Jon Valliere, et al. v. Tesoro Refining and Marketing Company, LLC, Tesoro Logistics
   GP, LLC*, Case No. 3:17-cv-00123-JST ...................................................................3, 4

7

*La Fleur v. Med. Mgmt. Int'l, Inc.*,
   2014 WL 2967475 (C.D. Cal. June 25, 2014) ..................................................22

8

9

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ...................................................................9

10

11

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) ...................................................................8

12

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .............................................................11, 24

13

14

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*,
   618 F.3d 988 (9th Cir. 2010) ..................................................................10

15

16

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .........................................................13, 15

17

*Officers for Justice v. Civil Svc. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ..................................................................10

18

19

*In re Oracle Sec. Litig.*,
   1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 18, 1994) .................................18

20

21

*Resnick v. Frank*,
   779 F.3d 934 (9th Cir. 2015) ..................................................................21

22

23

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................9, 21

24

*Sandoval v. Roadlink United States Pac., Inc.*,
   No. EDCV 10-00973 ...........................................................................24

25

26

*Satchell v. Fed. Express Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ..........................................11

27

*Slaven v. BP America, Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000) ............................................................23

28

3

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...................................................................................22

*Stewart v. San Luis Ambulance, Inc.*,
  878 F.3d 883 (9th Cir. 2017) ...................................................................................12

*Thomas v. Magnachip Semiconductor Inc.*,
  2016 WL 1394278 (N.D. Cal. Apr. 7, 2016) ..........................................................10

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ...............................................................................10, 11

*Viceral v. Mistras Group, Inc.*
  2017 WL 661352 (N.D. Cal. Feb. 17, 2017) ...........................................................18

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003), aff'd 396 F.3d 96 (2d Cir. 2005)..............13

*Willner v. Manpower Inc.*
  2015 U.S. Dist. LEXIS 80697 (N.D. Cal. June 20, 2015) .......................................21

**Statutes**

Cal. Bus. & Prof. Code §§ 17200 et seq. ...........................................................................4, 5

Cal. Labor Code § 226 ............................................................................................................4

Cal. Labor Code § 226.75 .................................................................................................12, 20

Cal. Labor Code § 887 ..........................................................................................................12

Cal. Labor Code § 2698 ..........................................................................................................4

Cal. Labor Code § 2699(l)(2)................................................................................................15

Class Action Fairness Act, 28 U.S.C. § 1715 ......................................................................15

Private Attorneys General Act .....................................................................................*passim*

**Rules**

Fed. R. Civ. P. 23 .........................................................................................................*passim*

Fed. R. Civ. P. 30(b)(6)...........................................................................................................6

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT;
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 4:17-cv-00123-JST

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Other Authorities**

4

Wage Order 4-2001.................................................................................................................................24

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT;
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 4:17-cv-00123-JST

1    PLEASE TAKE NOTICE that on December 16, 2020, at 2:00 p.m. or as soon thereafter as the

2  matter may be heard, in Courtroom 6, 2nd Floor of the above-entitled court located at Oakland

3  Courthouse, 1301 Clay Street, Oakland, CA 94612, Plaintiffs Jon Valliere, Eileen Foster, Antonio

4  Garcia, Samantha West, and Jinetra Bonner, individually and on behalf of themselves and all members

5  of the conditionally certified class, will move and hereby do move, pursuant to Rule 23 of the Federal

6  Rules of Civil Procedure, for entry of the order concurrently filed herewith granting final approval of

7  the class action settlement and the plan of allocation and entry of judgment.

8    The motion will be based on the Federal Rules of Civil Procedure, the foregoing notice,

9  memorandum of points and authorities, and declarations and exhibits filed concurrently herewith, and

10  the pleadings, records, and files in this action.

11

12  DATED:  November 10, 2020                Respectfully submitted,

13                    HADSELL STORMER RENICK & DAI LLP

14                    GILBERT & SACKMAN, A LAW CORPORATION

15                    COHELAN KHOURY & SINGER

16

17                    */s/ Randy Renick*
                    Randy Renick
18                    Attorneys for Plaintiffs and the Proposed Class

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT;
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 4:17-cv-00123-JST

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Jon Valliere, Eileen Foster, Antonio Garcia, Samantha West, and Jinetra Bonner ("Named Plaintiffs") seek final approval of the proposed class action settlement ("Settlement") with Defendants Tesoro Refining and Marketing Company LLC and Tesoro Logistics GP, LLC ("Defendants" or "Tesoro") of wage and hour claims brought on behalf oil refinery operators employed by Defendants.

On June 26, 2020, the Court granted Preliminary Approval of the Settlement. Dkt. #117. The Settlement provides that Defendants will pay $15,250,000 for the benefit of the Class, which is defined as:

> all current and former employees of Defendants (or any of their affiliates or successors) who worked a rotating 8-hour, 10-hour, or 12-hour shift in operations at any time during the Class Period at the i) Martinez Refinery or Chem Plant in Martinez, California; ii) the Los Angeles Refinery, Carson Operations, in Carson and Long Beach, California; iii) the Los Angeles Refinery, Wilmington Operations, in Wilmington, California; iv) the Tesoro Logistics terminal facilities at the Martinez Refinery; and v) the Long Beach Terminal, T2, Berth 121, and East Hynes in Long Beach, Carson, Signal Hill, and/or Wilmington, California,

during the period from July 19, 2013 through June 26, 2020 (date of Preliminary Approval). *Id.* at 2.

The Settlement provides for cash payment to 1560 Class Members according to the number of rotating shifts of 8, 10, and 12-hour shifts worked in operations during the class period ("Qualifying Shift") (Declaration of Randy Renick, Ex. 1 ("Settlement Agreement"), at ¶44); service awards not to exceed $7,500 for each of the five Named Plaintiffs (*id.* at ¶58); $50,000 in penalties under the Private Attorneys General Act ("PAGA"), with 75% of the PAGA penalties ($37,500) being paid to the California Labor and Workforce Development Agency ("LWDA") and 25% of the PAGA penalties ($12,500) being paid to the Class Members who do not opt out (*id.* at ¶59); up to $45,000 for claims administration, (*id.* at ¶18) which is estimated to be $19,996.83 to CAC Services Group, LLC  ("CAC" or "Claims Administrator"); and reasonable attorneys' fees and costs, *id.* at ¶¶51-52, which Plaintiffs seek in the amount of $3,812,500.00 (25% of the fund) for fees and $49,093.73 in costs. *See* Renick Decl., ¶¶ 3, 34; Declaration of Nancy A. Johnson ("Johnson Decl.") ¶ 17.

The Court should grant final approval of the Settlement as it is fair, reasonable, and adequate. The Settlement provides for payment of $15,250,000 on an all-cash, non-reversionary basis, and is the

result of arms-length negotiations following an extensive investigation of liability and damages conducted by Plaintiffs. The net settlement to be distributed to the Class after the reduction of the LWDA payment for PAGA penalties, attorneys' fees, costs, incentive awards, and administration costs is $ 11,293,409.44. Declaration of Nancy Johnson ("Johnson Decl.") ¶ 16. The average payment to each of the 1560 Class Members who worked Qualifying Shifts is $7,239.37. *Id.* Thus, the financial benefit conferred upon the class is significant, and the recovery here is fair, reasonable, and adequate in light of the substantial benefit conferred on the class members and the risk, expenses, and uncertainty of continued litigation.

In addition, the reaction of the Class Members has been very positive and favors approval of the Settlement.  No Class Member has objected,[1] and only two have opted out. Johnson Decl. ¶¶ 11-12. The Claims Administrator properly implemented the Notice Plan, and only 13 remain undeliverable. *Id.* ¶¶ 5-9. Efforts to locate those 13 will continue for at least another 180 days. Renick Decl., ¶ 43.  There were 78 timely disputes, which revealed an issue with some of the initial data provided by Defendants; these disputes have all been resolved based on additional data provided by Defendants to the Claims Administrator and Class Counsel. Renick Decl. ¶ 44; Johnson Decl. ¶¶ 13-14.

The Court should also approve the plan of allocation, whereby the court-approved attorneys' fees and costs, court-approved service awards, administrative costs, and payment to the California Labor & Workforce Development Agency ("LWDA") under the Private Attorneys General Act ("PAGA") are deducted from the Settlement, and a formula based on Qualifying Shifts is used for distribution to the Class Members of the resulting net settlement amount.

In addition, the requested incentive awards in the amount of $7,500 for each of the five Named Plaintiffs is consistent with a fair, just, and adequate settlement.

Final approval of certification for purposes of settlement under Fed. R. Civ. P. 23 is also proper.

---

[1] Three class members objected to Plaintiffs' first motion for preliminary approval on the basis that the Settlement conflicted with collective bargaining agreements because it failed to account for union due deductions. Dkt. #106 at 10. The Court declined to withhold preliminary approval based on the objection and stated that its ruling was without prejudice to the three class members objecting to final approval. *Id.* Then, in granting Plaintiffs' renewed motion for preliminary approval, the Court rejected the Objectors' proposal that the Court add language to the preliminary approval order regarding the parties' and union's rights with respect to union dues. Dkt. #117 at 12 n.6. The objection deadline has passed, and the three class members have not filed an objection to final approval. Renick Decl., ¶ 24.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

The proposed Class consists of employees of Defendants who worked in operations at Defendants' oil refining, chemical plants, and distribution facilities in Los Angeles and Contra Costa Counties at any time during the period from July 19, 2013 through June 26, 2020 (the date of Preliminary Approval).  Specifically, Plaintiffs and all members of the Class work at facilities operated by Tesoro at the 1) Martinez Refinery; 2) Carson Refinery; and 3) Wilmington Refinery.  Each refinery operates 24 hours a day, 365 days a year.  These operators are generally on a 12-hour continuous shift schedule, with a daytime 12-hour shift and a nighttime 12-hour shift. At times, they also work 8-hour and 10-hour shifts.  Renick Decl. ¶ 6.

Plaintiffs contend that the general duties of operators are the same at each of refineries operated by Defendants. All operators are responsible for continuously and proactively monitoring tank, tower and oil levels, temperatures for equipment and processes, flows for processes and lubrication, and pressure readings for different processes and equipment.  Renick Decl., ¶¶ 7-8.

The oil refining process is a dangerous operation that involves hazardous substances and has the potential for catastrophic consequences. Throughout their shifts, Defendants require Plaintiffs and the other operators to monitor the refining process, respond to upsets and critical events, and maintain the safe and stable operation of their units.  In order to do so, Plaintiffs and the other operators are required to remain attentive, carry radios, and be reachable at all times during their shifts.  They are also required to remain in contact with supervisors and other employees working in their unit throughout their shifts.  As a result, Plaintiffs and the other operators have worked shifts without receiving off-duty rest periods because they are constantly and continuously responsible for their units.  Renick Decl., ¶¶ 6-8.

### B.    Procedural Background

*Azpeitia/Valliere Action*— On January 10, 2017, Plaintiffs Chris Azpeitia, Eileen Foster, Antonio Garcia, and Samantha West commenced a class action against Defendants in *Jon Valliere, et al. v. Tesoro Refining and Marketing Company, LLC, Tesoro Logistics GP, LLC*, Case No. 3:17-cv-00123-JST in the U.S.D.C. for the Northern District of California.  Dkt. #1.  The complaint asserted,

among other things, that Defendants require refinery, plant, and logistics operators to maintain radios during rest breaks in violation of the California Supreme Court's interpretation of Wage Order No. 4-2001 in the *Augustus v. ABM Securities Services, Inc*., 2 Cal. 5th 257, 260 (2016) ("*Augustus*") decision, which held rest periods cannot be "on call." Renick Decl. ¶ 4.

The Complaint alleged the following causes of action: (1) Failure to authorize and permit duty free rest periods; (2) Failure to furnish accurate wage statements; (3) Penalties under the California Private Attorneys General Act, California Labor Code §§ 2698 *et seq.*; and (4) Violation of the Unfair Competition Law, Business & Professions Code §§ 17200 *et seq.* Plaintiffs sought unpaid wages, statutory and civil penalties, restitution, attorneys' fees and costs, interest, and injunctive and declaratory relief for the time period from January 10, 2013 to the present. Dkt. #1; Renick Decl., ¶5.

On March 21, 2017, Plaintiff amended the complaint to add claims under PAGA. Dkt. 21. On April 17, 2017, Defendants moved to dismiss and strike portions of the amended complaint on the grounds that Plaintiffs' claims were preempted by Section 301 of the Labor-Management Relations Act, among other reasons. Dkt. 25. On July 21, 2017, the Court granted Defendants' Motion to Dismiss as to Plaintiffs' UCL claim under Labor Code § 226 and their claim for disgorgement under the UCL, and denied the motion in all other respects. Dkt. #43. Renick Decl. ¶ 9.

***Bonner Action***— On March 22, 2017, Plaintiff Jinetra Bonner commenced a class action in the Superior Court of California, County of Sacramento, Case No. 34-2017-00209750, against Defendants entitled *Jinetra Bonner v. Tesoro Refining & Marketing Company LLC*. Bonner contended, among other things, that Defendants failed to provide off-duty paid rest periods in violation of California's Supreme Court's rest break interpretation in *Augustus* and implemented unlawful "on-duty meal period agreements" in violation of the applicable wage orders and California labor laws. Renick Decl. ¶ 10.

***Coordinated Proceedings***— On July 25, 2017, *Bonner* was related to the *Azpeitia* class action and assigned to the Hon. Jon S. Tigar. Dkt. #22, 23. On September 14, 2017, the Court consolidated the actions and appointed Hadsell Stormer & Renick, LLP as interim lead counsel. Dkt. #52. Renick Decl. ¶ 11.

On October 12, 2017, a Consolidated Class Action Complaint for Damages, Restitution, and Injunctive Relief was filed in *Jon Valliere, et al. v. Tesoro Refining and Marketing Company, LLC, et*

4

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT;
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 4:17-cv-00123-JST

*al.*, Case No. 3:17-cv-00123-JST, in the Northern District of California, consolidating the two actions and replacing Plaintiff Chris Azpeitia with Plaintiff Jon Valliere. Dkt. #56. Defendants answered the Consolidated Class Action Complaint on October 26, 2017. Dkt. #57. Renick Decl. ¶¶ 13-14.

In conjunction with the proposed Settlement, and as a term of the Settlement Agreement, the Parties stipulated to the filing of Plaintiffs' First Amended Consolidated Class Action Complaint ("FACCAC") to modify and to allege that 1) Defendants did not provide Plaintiffs and the putative Class with compliant uninterrupted and off-duty rest breaks, and did not pay premium wages for non-compliant rest breaks; 2) a derivative claim for not providing accurate wage statements; 3) penalties under PAGA, and 4) California Business & Professions Code §§17200 *et seq.* for unfair business practices based on the alleged non-compliant rest breaks. Dkt. #87-89. Renick Decl. ¶ 14.

### C.    Investigation and Discovery

Plaintiffs conducted an extensive investigation of Defendants' wage and hour practices at their California facilities, particularly in regard to the provision of rest breaks. In the *Bonner* action, on January 12, 2017, Plaintiff Bonner requested from Defendants a full and complete copy of her employee personnel file. Defendants complied, producing over 225 pages of documents. In the *Azpeitia* action, on July 18, 2017, Plaintiffs served their opening round of discovery on Defendants Tesoro Logistics GP, LLC and Tesoro Refining and Marketing Company LLC, which included Interrogatories and Requests for Production of Documents. Through this discovery, Plaintiffs sought contact information for the putative Class during the relevant Class Period, job titles and employee numbers. Defendants served their responses and objections on September 12, 2017. Renick Decl. ¶ 15.

Over the course of nearly a year, and two stipulated protective orders, Dkt. #61, 67, the Parties exchanged over 5,500 pages of documents pertinent to the claims alleged and defenses asserted, including Plaintiffs' personnel files, workplace manuals, and employee handbooks, organizational charts, an operations assessment report, job descriptions, payroll and wage data information, emergency procedures and rules, and multiple union agreements and policies, among other various documents. Plaintiffs' investigation included interviews of operators from each of Defendants' California facilities and review of relevant documents produced in response to discovery requests. Renick Decl. ¶ 16.

The depositions of the following individuals were taken: Plaintiff Bonner on February 12, 2018;

5

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT;
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 4:17-cv-00123-JST

Plaintiff Valliere on February 14, 2018; and the FRCP 30(b)(6) witness Karen Kawano regarding the Los Angeles area facilities on February 15, 2018.  Renick Decl. ¶ 17.

Following agreement to attend a first mediation in April 2018, Defendants produced, and Plaintiffs reviewed, Defendants' payroll data, the applicable base hourly rates, the number of operators and the number of shifts during the Class Period. Renick Decl. ¶ 18.

After an unsuccessful second mediation in July 2018, the Parties aggressively litigated their respective positions. Plaintiffs interviewed dozens more putative Class Members about their job duties and responsibilities, and obtained declarations in support of their class certification motion.  Plaintiffs also took a FRCP 30(b)(6) deposition of Justin Lawrence regarding Tesoro's Martinez locations on September 6, 2018.  Defendants took the depositions of three putative Class Members, Larry Dorsz on September 10, 2018; Jay Shah on September 11, 2018; and Joe Bugby on September 13, 2018. Renick Decl. ¶¶ 19-22.

### D.    Mediations

With sufficient investigation, research, written discovery, deposition testimony, Class Member interviews, and document analysis to allow Plaintiffs to evaluate Defendants' liability and damage exposure for the Class Period, the Parties attended mediation with Jill Sperber of Judicate West on April 11, 2018, in Los Angeles.  After a full day of negotiations, an agreement could not be reached. Renick Decl. ¶ 18.

On July 18, 2018, the Parties attended a second mediation with David Rotman, an experienced and well-regarded wage and hour class action mediator in San Francisco.  Unfortunately, after another lengthy day of negotiations, the actions still could not be settled.  Thereafter, while Plaintiffs moved forward with drafting their certification motion, Mediator Rotman remained involved and ultimately negotiated the proposed Settlement accepted by the Parties in mid-November 2018.  Renick Decl. ¶ 19.

### E.    Settlement Agreement and Preliminary Approval

Over the months that followed, the parties finalizing and fully executed the Joint Stipulation of Class Action Settlement and Release and on May 8, 2019, Plaintiffs filed their Motion for Order Granting Preliminary Approval. Dkt. #90- 94.  Renick Decl. ¶¶ 23. On June 6, 2019, Class Members Rogers, McDonald, and Dumont filed a Partial Objection to the Preliminary Approval Motion asserting

6

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 4:17-cv-00123-JST

that the Settlement "impairs the rights of these Objectors' unions under their collective bargaining

agreements with Defendant[s]" and asking the Court to deny preliminary approval. Dkt. #96 at 2.

Specifically, the Objectors asserted that the Settlement "conflicts with the [collective bargaining

agreements] because it does not account for the Unions' rights to dues deductions from the portion of

the class members' settlement payments allocated back wages." *Id*. at 5.  On June 14, 2019,

Defendants filed a response to the objection, contending among other things, that the Objectors'

arguments were preempted by federal labor laws and distinguishing the authority cited in support of the

objection. Dkt. #99.  On June 18, 2019, Plaintiffs filed a response, arguing that the objections

implicated only the rights of a non-party union and not the interests of any class member.  Dkt. #100.

Renick Decl. ¶ 23.

On October 18, 2019, the Court issued an order denying preliminary approval noting two

deficiencies to be corrected: the narrowing of the Class Members' release, and the increasing of the

Notice Response Deadline from 45 to 60 days for Class Members to submit objections and to request

exclusion from the Settlement.  Dkt. #106 at 8, 9. The Court declined to withhold preliminary approval

on the basis of the objection regarding union dues without prejudice to the Objectors objecting to final

approval, Dkt. #106 at 10.  Renick Decl., ¶ 24.

The deficiencies identified by the Court were corrected as reflected in the Amendment to Joint

Stipulation of Class Action Settlement and Release, Ex 2 to Renick Declaration, and Plaintiffs filed an

unopposed renewed Motion for Preliminary Approval of Settlement Agreement on November 18, 2019,

*see* Dkt. #107. The Court granted the renewed Motion for Preliminary Approval on June 26, 2020, Dkt.

#117. Renick Decl., ¶ 32.  The response deadline passed on October 9, 2020. Dkt. #119 at 2. There were

no objections. Renick Decl. ¶ 25; Johnson Decl. ¶ 12.

On August 6, 2020, the Court granted the Parties' stipulation to correct the Class Notice where

there was a discrepancy with the Settlement Agreement language, to extend the deadline to send out the

notice from July 31, 2020, to August 7, 2020, and to extended the deadline to request exclusion and

object from October 2, 2020, to October 9, 2020. Dkt. 119 at 2. Renick Decl. ¶ 26.

On September 4, 2020, Plaintiffs filed and posted on the case settlement website their Motion

for Attorneys' Fees and Reimbursement of Costs. Dkt. #120; Renick Decl. ¶ 27; Johnson Decl. ¶ 6.f.

7

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT;
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 4:17-cv-00123-JST

## III.   ARGUMENT

### A.   The Court-Approved Notice Plan Was Fully Implemented and Satisfies Rule 23 Requirements.

Rule 23 requires for class action settlements that a court direct notice in a "reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(2). Rule 23 further requires that the notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," and that the notice state the nature of the action, the class definition, the class claims, issues, or defenses, the right to individual legal representation, the right to request exclusion, and the binding effect of a judgment under Rule 23(c)(3). Fed R. Civ. P. 23(c)(2). The notice "must present a fair recital of the subject matter and proposed terms and give[] an opportunity to be heard to all class members." *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977).

On June 26, 2020, the Court entered an order preliminarily approving, *inter alia*, "the proposed notice procedure and form." Order, Dkt. #117 at 12-13; *see* Notice, Dkt. #109-1, Ex. A. In granting preliminary approval, the Court found that the proposed Notice meets all of the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and "note[d] with approval that the Notice conforms to the Northern District's Procedural Guidance for Class Action Settlements."[2] Dkt. #106 at 9.

Pursuant to and in compliance with the Preliminary Approval Order, the Claims Administrator mailed the Class Notice to 1557 Class Members on August 7, 2020. Johnson Decl. ¶¶ 6.a.-6.d. The Notice included detailed information regarding the following: the nature of the case; the definition of the class; the terms of the Settlement; a class member's rights with respect to participation in the Settlement and the consequences of exercising those rights; the total settlement amount, including the portions of the total settlement amount allocated to PAGA penalties and for payment of service awards, attorneys' fees and costs, and administrative costs; how to object to the Settlement; how to opt out of the Settlement; how to challenge the information upon which their payment will be calculated; the

---

[2] While the Court approved the form of the Notice when Plaintiffs brought their initial Motion for Preliminary Approval, it did not approve the notice procedure due to deficiencies it identified with respect to the general release provisions and the notice response deadline. Dkt. #106 at 9. Plaintiffs addressed both deficiencies in their Renewed Motion for Preliminary Approval to the Court's satisfaction. Dkt. #117 at 12.

procedures and timing for doing each of these acts; and the date set for the final approval hearing. *See* Ex. 1 to Johnson Decl. The Notice also included the contact information for class counsel; the address for a website, maintained by the claims administrator with links to the notice, motions for approval and for attorneys' fees; and instructions on how to access the case docket via PACER or in person at any of the court's locations. *Id.*

Each Class Member's Notice was customized to include the estimated payment amount he or she will receive, the formula used to calculate the estimated amount, the number of rotating shifts of 8, 10, and 12-hour Qualifying Shifts worked by that Class Member, and the total number of Qualifying Shifts worked during the class period. Johnson Decl. ¶ 6.c.; Ex. 1 thereto. Thus, the information provided in the Notice exceeds that which is required. *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (proper notice "does not require an estimate of the potential value of [the] claims"); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (The notice is sufficient if it "describes the aggregate amount of the settlement fund and the plan for allocation.").

The Claims Administrator fully complied with Notice Plan approved by the Court, *see* Dkt. #106 at 5-6, 9, Dkt. #117 at 12. The Administrator determined from the data provided by Defendants on July 17, 2020, that there were 1557 Settlement Class Members, and sent Notice to each Class Member on August 7, 2020. ¶ 6.a.-6.d. After being advised by the parties that five additional Class Members should be added to the Class, the Notice was sent to four of the five supplemental Class Members (as one opted out) on November 5, 2020. Johnson Decl. ¶ 6.g.6.h. CAC created the case website, tesororestbreakclassactionsettlement.com, on which it posted the Notice and related court and settlement documents. *Id.* at ¶ 6.e. Plaintiffs filed their Motion for Attorneys' Fees and Reimbursement of Costs on September 4, 2020, and the motion was posted on the case website on September 4, 2020. *Id.* at ¶6.f.

Of the 1561 Notices mailed, 35 were returned by the U.S. Postal Service without forwarding addresses. For 22 of the returns, the Claims Administrator was able to locate new addresses, and the returned notice was re-mailed to the new address. Johnson Decl. ¶ 9. Thirteen (13) remain undeliverable. *Id.* Checks will be prepared for their share while the Claims Administrator continues its efforts to locate the 13 for at least 180 days after checks have been prepared. Renick Decl. ¶ 43. Thus, the Notice Plan provided the "best notice that is practicable under the circumstances" as notice was provided to each

Class Member who could be identified based on Defendants' records (except one who requested to be excluded prior to receiving the notice packet from the administrator), and only 22 notices required re-mailing.

Further, the 60-day deadline to object or opt out approved by the Court satisfied the notice requirements of Rule 23 and does not infringe on due process rights. *See Thomas v. Magnachip Semiconductor Inc.*, No. 14-CV-01160-JST, 2016 WL 1394278, at *8 (N.D. Cal. Apr. 7, 2016)(finding "any period shorter than 60 days is too short a time to allow class members to properly respond"); *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)(finding mailing of notice 31 days before the deadline for objections is adequate).

On September 4, 2020, more than 30 days prior to the objection/opt-out deadline of October 9, 2020, the Claims Administrator posted to the case website Plaintiffs' Notice and Motion for Attorneys' Fees and Reimbursement of Costs and supporting papers, Johnson Decl. ¶ 6.f.  The posting of the motion was consistent with the Settlement Agreement and the Court's order, see Renick Decl., ¶ 27, Order, Dkt. #117 at 13, and it satisfies the standard for notice set by the Ninth Circuit in *Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010), which requires that a motion for attorneys' fees be made available to class members prior to the deadline for objections.

## B. The Settlement is Fair, Adequate, and Reasonable and Should be Granted Final Approval.

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Svc. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  In evaluating a proposed class action settlement, "[t]he universally applied standard is whether the settlement is fundamentally fair, adequate reasonable." *Officers for Justice*, 688 F.2d at 625 (citations omitted); *accord Torrisi*, 8 F.3d at 1375.  "A district court may consider some or all of the following factors when making this determination: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *In re High-Tech Emple. Antitrust Litig.*,

10

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT;
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 4:17-cv-00123-JST

No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118051, at *8 (N.D. Cal. Sep. 2, 2015)(*citing Officers for Justice*, 688 F.2d at 625).

The court is entitled to exercise its "sound discretion" when deciding whether to grant final approval. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. "In addition, the settlement may not be the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). Settlement negotiations in this case were conducted over many months after extensive investigation and discovery, at arm's length, and with the assistance of mediators. Renick Decl., ¶¶ 18-19, 45. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. 03-cv-2878-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). Thus, the proposed class settlement is the result of serious, informed, non-collusive, and good-faith negotiations.

The recovery here is fair, reasonable, and adequate in light of the substantial benefit conferred on the class members and the risk, expenses, and uncertainty of continued litigation.

### 1.    The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

In evaluating the fairness, reasonableness, and adequacy of the Settlement, the Court should weigh the strength of Plaintiffs' case against the risk and expense of continued litigation. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In determining whether a proposed settlement is reasonable and adequate, "the [trial] judge does not try out or attempt to decide the merits of the controversy," and an appellate court "need not and should not reach any dispositive conclusions on the admittedly unsettled legal issue." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 454 (2d Cir. 1974). Here, while Plaintiffs believe their case against Defendants is strong, the Settlement eliminates significant risks they would face if the action were to proceed against Defendants.

Plaintiffs believe that the California Supreme Court's clarification of the off-duty nature of rest breaks in *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016), provided clear guidance regarding an employer's rest break obligations under California law and confirmed Defendants' failure to provide Operators with lawful rest breaks. Yet, district courts have since diverged in their

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 4:17-cv-00123-JST

interpretation and application of the decision. *See, e.g., Bell v. Home Depot U.S.A., Inc.*, No. 2:12-cv-02499 JAM-CKD, 2017 U.S. Dist. LEXIS 55442, at *5 (E.D. Cal. Apr. 10, 2017) (concluding *Augustus* not applicable because the court did not consider an on-premises rest break policy which does not require employees to remain on call); *Stewart v. San Luis Ambulance, Inc.*, 878 F.3d 883, 886–87 (9th Cir. 2017)(concluding Augustus did not control question of whether ambulance employers are required to relieve ambulance attendants working 24-hour shifts of all duties during rest periods and certifying question to California Supreme Court). In addition, the California legislature has since been active in enacting exceptions. See Cal. Lab. Code § 226.75 (eff. Sept. 20, 2018)(employees holding safety-sensitive positions at petroleum refineries exempt from rest break laws to the extent they are required to carry radios, respond to emergencies, and remain on the employer's premises during their shifts); Cal. Labor Code § 887 (eff. Dec. 19, 2018)("[E]mergency ambulance employees shall remain reachable by a portable communications device throughout the entirety of each work shift."). Renick Decl. ¶ 46.

      In addition, it was clear that this action would be fiercely litigated. Defendants planned to file a motion for summary judgment, relying on what they claimed to be facially lawful rest break policies which they alleged provided operators compliant off-duty rest breaks, and that they planned to file a motion for summary judgment.  *See* Dkt. #24 (Joint Case Management Statement) at 5-7, 10. They further intended to oppose class certification after conducting extensive discovery based on their claim that the employees worked in dozens of distinct operating units in the different Northern and Southern California refineries, with "vastly different functions and work conditions, unique shift scheduling practices and policies, different management and supervisors, and diverse shift relief practices, all governed by ten different current and expired collective bargaining agreements" and that the absence of commonly applied unlawful policy required individualized inquiries barring class certification. *See* Dkt. #24 at 10. Renick Decl. ¶ 48.

      With class claims for violation of rest break and other wage and hour laws, litigation can extend for many years due to the many hurdles facing plaintiffs in class actions. *See, e.g.*, Renick Decl. ¶¶ 49-50 (class actions involving overtime, living wage, and/or meal and rest break violations litigated five years, six years, and more than 10 years before resolving).  Further, it was likely that the action would be highly contested and lengthy given the inherently complex nature of class actions and the manner in

which a prior wage and hour class action involving similar classes of refinery workers was litigated. *Id.* at ¶¶ 49-50, 58. Accordingly, many more years of litigation and an appeal was a very real possibility here. Continued litigation against Defendants would inevitably involve significant additional expenses and protracted legal battles, which are avoided through settlement. *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003), aff'd 396 F.3d 96 (2d Cir. 2005) ("The potential for this complex litigation to result in enormous expense, and to continue for a long time, was great."). Thus, on balance, these factors weigh in favor of the Settlement.

### 2.    The Amount Offered in Settlement

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Approval of a class settlement is justified where "the settlement terms compare favorably to the uncertainties associated with continued litigation regarding the contested issues in th[e] case." *Id.* at 526. A settlement, therefore, need not obtain 100% of the damages and may, in fact, provide only "a fraction of the potential recovery" sought to be found fair and reasonable. *Linney*, 151 F.3d at 1242.

The settlement here provides for the payment of $15,250,000. Renick Decl. ¶ 28. Plaintiffs' claims in this action were based on Defendants' alleged failure to provide rest periods. The value of those claims on an individual basis is one hour of pay for each shift. At the time of the mediation in this matter in July 2018, records produced by Defendants for all class members reflected 735,524 shifts. Applying the hourly rates of pay from the applicable collective bargaining agreements and Defendants' payroll records, the total damages for those shifts was $30,939,490. Accordingly, the settlement of $15,250,000 is approximately 50% of the total damages that Plaintiffs could have recovered on the rest break and derivative claims. Renick Decl. ¶ 29.

The net settlement to be distributed to the Class after the reduction of the LWDA payment for PAGA penalties, attorneys' fees, costs, incentive awards, and administration costs is $11,293,409.44. Johnson Decl. ¶ 16, and Ex. 2 thereto. The average payment to the 1,560 Class Members with Qualifying Shifts is $7,239.37. *Id.* Thus, the financial benefit conferred upon the class is significant.

The Settlement compares favorably with other cases recently resolved on behalf of operators at other California refineries. In *Buzas v. Phillips 66 Company*, U.S.D.C., Northern District, Case No. 4:17-cv-00163 (final approval of $5,500,000 settlement granted March 8, 2018), 677 class members received an average distribution of $5,881.20. In *Berlanga v. Equilon Enterprises LLC,* U.S.D.C., Northern District, Case No. 4:17-cv-00282 (final approval of $7,750,000 settlement granted January 22, 2019), 497 class members received an average distribution of $11,419. In *Clack v. Chevron Corporation*, Los Angeles Superior Court, Case No. BC649514 (final approval of $17,375,000 granted on August 6, 2020), 2026 class members received an average distribution of $6,334.74. In *Kendig v. ExxonMobil Oil Corp.*, U.S.D.C., Central District, Case No. 2:18-cv-9224 (final approval of $4,391,585 settlement granted on August 24, 2020), 338 Class Members received an average distribution of $9,514.04. Renick Decl., ¶ 58.

### 3. The Extent of Discovery and Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239. During the actions' pendency, Class Counsel thoroughly investigated and researched the claims, potential defenses, and the developing body of law relating to the interpretation of the Wage Orders and an employer's duty to authorize and permit rest breaks. As described above, Class Counsel thoroughly engaged in the discovery process and made use of documents and data provided by Defendants through formal and informal discovery to assess Defendants' potential liability and the likelihood the Court could grant class certification. Thus, the Parties have enough information to make an informed appraisal of the case in reaching a Settlement, which strongly benefits the Class and favors approval. Renick Decl. ¶ 51.

### 4. Experience and Views of Counsel

It is Class Counsel's recommendation and belief that the proposed settlement is in the best interests of the Settlement Class. Renick Decl. ¶ 52.

> Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.

*DirecTV*, 221 F.R.D. at 528 (internal quotations, alterations, and citations omitted).

14

This Settlement is the product of arms-length, non-collusive negotiations attended by experienced class counsel. Renick Decl. ¶ 45. Prior to settlement, a complete investigation of Defendants' wage and hour practices with regard to rest breaks and an extensive review of timecard and payroll data were conducted to evaluate liability and damages. Renick Decl. ¶¶ 15-22. The litigation had reached the stage where the Parties have a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). Based on their evaluation and expertise, Class Counsel strongly believe that the settlement is a fair, reasonable, and adequate resolution of the claims of the Settlement Class and is preferable to continued litigation.[3] Renick Decl. ¶¶ 52-58.

### 5.    The Presence of Governmental Entities

There are no government entities participating in the Settlement. Plaintiffs, however, provided a copy of the Settlement Agreement to the California Labor and Workforce Development Agency ("LWDA") in accordance with Labor Code § 2699(l)(2) on May 9, 2019. Renick Decl. ¶ 59. As of the filing of this motion, the LWDA has not filed an objection or raised a concern regarding the Settlement. *Id.*

In addition, Defendants provided notice of settlement pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, to the U.S. Attorney General and Attorneys General in specified state offices on May 17, 2019, and again on November 22, 2019. Renick Decl. ¶ 60, Ex. 5 thereto. No objection has been filed or concern raised by any of the Attorneys General regarding the settlement. *Id.*

The absence of any objection or concern raised by a government entity provided notice weighs in favor of the Settlement.

### 6.    The Reaction of the Class Members

The reaction of the Class Members has been very positive and favors approval of the Settlement. Here, the Notice informed Settlement Class Members that Requests for Exclusion were to be sent to the Claims Administrator, such that they are postmarked on or before October 9, 2020. Ex. 1 to Johnson

---

[3] Class Counsel "represents [the] interests of the class as a whole" and it is Class Counsel's responsibility to "determine whether seeking the court's approval of a settlement would be in the best interests of the class as a whole." Fed. R. Civ. P. 23, cmts. 2003 amdts., ¶ (B)(1).

Decl. at 6-7. The Notice also sets forth the information that must be included in each Request for

Exclusion. *Id.* at 7-8. In addition, the Notice informed Settlement Class Members that Objections were

to be filed or mailed to the Court, such that they are postmarked on or before October 9, 2020. *Id.* at 8.

No Class Member has objected to the Settlement, and only two have opted out. Johnson Decl. at

¶¶ 11-12.  Seventy-eight (78) disputes were submitted, and all have been resolved by the Claims

Administrator after an investigation and review of the data provided by the Class Members and

Defendants. *Id.* at ¶¶ 13-14.

### C.     The Plan of Allocation Is Fair, Adequate, and Reasonable and Should be Approved.

"Approval of a plan for the allocation of a class settlement fund is governed by the same legal

standards that are applicable to approval of the settlement: the distribution plan must be 'fair, reasonable,

and adequate.'" *In re Citric Acid Antitrust Litig.,* 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).  Here,

the plan of allocation provides that court-approved attorneys' fees and costs, court-approved service

awards, administrative costs, and payment to the LWDA under PAGA are deducted from the Settlement

Fund ($15,250,000) to determine the "Net Settlement Amount."  Renick Decl., Ex. 1, ¶ 35. The Net

Settlement Amount is then allocated for each member of the Settlement Class.  Renick Decl. at ¶¶ 31-32.

*Attorneys' Fees*—With respect to awarding attorneys' fees, "courts have an independent

obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have

already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir.

2011).  Plaintiffs filed their Motion for Attorneys' Fees and Reimbursement of Costs seeking fees in the

amount of $3,812,500 (25% of the settlement) and $49,093.73 in costs, which was posted to the case

website on September 4, 2020. Renick Decl., ¶ 34; Johnson Decl. ¶ 6.f. The motion reflects that the fees

and costs requested by Plaintiffs are reasonable and justified based on the relevant factors weighed in

determining such awards. *See* Dkt. #120. Moreover, the request is void of any evidence of collusion,

such as counsel receiving a disproportionate distribution in comparison to the class, a negotiated "clear

sailing agreement," or the reversion to Defendants of any unawarded fee amount. *See Bluetooth*, 654

F.3d at 947. Here, Plaintiffs seek fees at the Ninth Circuit's 25% of the fund benchmark, Defendants

have only agreed not to oppose a reasonable fee request, and the entire settlement amount is non-

reversionary. Renick Decl. ¶ 34, and Ex. 1, ¶ 51. While Plaintiffs' fee request and the amount sought in

costs remain the same at the time of the filing of this motion, Plaintiffs' Counsel have submitted supplemental declarations concurrently herewith detailing additional lodestar incurred since September 4, 2020 in connection with communications with class members, administration, and the final approval hearing. Renick Decl. ¶¶ 35-36, and Ex. 3; Young Decl. ¶¶ 3-5, and Ex. 1; Singer Decl. ¶¶ 3-6, and Ex. 4. The updated combined lodestar for the three firms is $2,203,088.50, which is an increase from $2,078,203.50 of $124,885.00.  Renick Decl., ¶ 37. The updated lodestar requires a multiplier of 1.73 to be equivalent to the fee amount sought here. *Id.*

*Incentive Awards*—As addressed herein, *see infra* Section III.D., Plaintiffs seek an incentive award in the amount of $7,500 for each of the five Named Plaintiffs. "The Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *28 (N.D. Cal. Apr. 29, 2011) (*citing Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). Here, the amount sought is reasonable and fair based on the services provided and risks incurred by each during the course of the class action litigation.

*Administrative Costs*—Plaintiffs also request final approval of claims administration costs to be paid to Claims Administrator CAC Services in the amount of $19,996.83. Johnson Decl. ¶ 17, and Ex. 3 thereto. "Courts regularly award administrative costs associated with providing notice to the class." *Bellinghausen*, 306 F.R.D. at 266. The amount requested is fair and reasonable given that the Claims Administrator promptly and properly distributed the Class Notice to Class Members and has performed its duties in accordance with the Settlement terms.  Johnson Decl. ¶¶ 4-15; Renick Decl. ¶ 38.

*PAGA penalties*—The Settlement provides that $50,000 will be allocated to penalties under the Private Attorneys General Act ("PAGA"), with 75% of the PAGA penalties ($37,500) being paid to the California Labor and Workforce Development Agency ("LWDA") and 25% of the PAGA penalties ($12,500) being paid to Settlement Class Members who do not opt out.  Renick Decl. ¶ 30. This amount is reasonable and adequate given that the possible recovery on the PAGA claim varies tremendously from thousands to a few million dollars, and that there is "a substantial risk of recovering nothing" or very little. *See, e.g., Viceral v. Mistras Group, Inc*. No. 15-cv-02198-EMC, 2017 WL 661352 (N.D. Cal. Feb. 17, 2017), at *3. For instance, in *Viceral v. Mistras Group, Inc.*, the Court granted final approval of

a $6,000,000 settlement with a $20,000 allocation for the PAGA claim because plaintiffs faced "a substantial risk of recovering nothing on either the PAGA or class claims." *Id.* The court referred to its prior considerations at preliminary approval, which included that "courts have often exercised discretion to reduce PAGA verdicts below the statutory penalty." *Id.* at *8. This Court should, therefore, approve the $50,000 allocation for the PAGA claim as adequate and reasonable, especially since the LWDA has filed no objection despite being served with notice of settlement on May 9, 2019. Renick Decl. ¶ 59.

*Class Member Payments*—The formula in the Settlement Agreement provides to each Class Member a cash payment which equates to a percentage of the Net Settlement Amount calculated based upon the number of Qualifying Shifts worked during the class period. Renick Decl. ¶ 31.  Credits are allocated to each Class Member based on the Class Member's number of "Qualifying Shift," which is defined as: "a rotating 8-hour, 10-hour, or 12-hour shift in operations at any time during the Class Period." Renick Decl., Ex. 1, ¶ 44. The Administrator shall calculate the total number of Qualifying Shifts worked by all Class Members during the Class Period where shifts of 12 hours or more shall be awarded 1.2 credits, shifts of more than 8 hours but less than 12 hours shall be awarded 1.0 credit, and shifts of at 8 hours shall be awarded .8 credits.  *Id.* at ¶ 88.a. The value of each credit equals the Net Settlement Amount divided by the total number of credits for all Class Members. *Id.* at ¶ 88.b. Renick Decl. ¶ 31. "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."  *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 18, 1994). The formula here is reasonable as it relies on a "neutral and uniform metric by which to allocate the Settlement."  *See In re High-Tech*, 2015 U.S. Dist. LEXIS 118051, at *23-24 (finding plan of allocation appropriate where formula was based on each Class Member's relative share of base salary, a "neutral and uniform metric" ).

Following the issuance of an order granting final approval of the settlement and plan of allocation, the Claims Administrator will pay from the fund the court-ordered amounts and carry out the distribution of the Net Settlement Amount by mailing individual checks to the Settlement Class Members. Renick Decl., Ex. 1, ¶¶ 100-102. If any checks remain uncashed, the Claims Administrator will attempt to locate the Class Member, after which any unclaimed funds will be awarded *cy pres* to the Loyola Law School Worker's Rights Clinic in Los Angeles, California. Renick Decl., ¶ 64, and Ex. 1, ¶¶

104-106. The law school clinic is a proper *cy pres* awardee because the nexus between the clinic, which provides training on workers' rights and advocacy, and the California labor laws at issue in this case is sufficiently direct. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (a *cy pres* award should be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class).

For all of the reasons set forth herein and the accompanying declarations, the plan of allocation is fair, reasonable, and should be approved.

### D.     The Requested Service Payment for the Five Named Plaintiffs Should Be Approved

In January and October 2017, Plaintiffs Jon Valliere, Eileen Foster, Antonio Garcia, and Samantha West and in March 2017, Plaintiff Jinetra Bonner all came forward to represent the interests of a class of oil field and refinery operators against their employer, Tesoro Refining & Marketing Company LLC, and Tesoro Logistics GP, LLC.  Because of Plaintiffs' commitment to prosecute the consolidated class action complaint against Tesoro for its failure to authorize and permit operators to take rest breaks at its oil refineries, over 1,557 class members will significantly benefit from the $15,250,000 non-reversionary settlement, which will pay, an average individual payment of $7,239.37, and highest payment of $14,110.24. Johnson Decl. ¶ 6, 16.

Each Plaintiff has provided relevant and unique information to Class Counsel regarding the day-to-day practices and operations at each of their particular facilities as well as facilitated communications with co-workers/Class Members, all of which was essential for bringing and pursuing this litigation on a class-wide basis.  Renick Decl. ¶ 33.

Each Plaintiff spent considerable time pursuing the litigation, which included: gathering documents and providing them to Class Counsel; numerous meetings and calls with Class Counsel to discuss documents, the company practices and policies, and other facts relevant to the legal claims; reaching out to co-workers to gather information and documents; being available to Class Counsel to provide information and answer questions, including during two days of mediation on April 11, 2018 and July 16, 2018. Plaintiff Foster attended one day of mediation and Plaintiff Valliere attended both days. Valliere Decl., ¶¶ 5-8, Foster Decl., ¶¶ 5-7; Garcia Decl. ¶¶ 5-7; West Decl. ¶¶ 5-7; and Bonner Decl. ¶¶ 6-9.  Tesoro took videotaped depositions of Plaintiffs Bonner and Valliere on February 12,

2018 and February 14, 2018, respectively.  Valliere Decl., ¶ 7; Bonner Decl., ¶ 9.  Each Plaintiff took his / her responsibilities to the Class seriously, having spent numerous hours throughout the litigation maintaining contact with Class Counsel and keeping class members up to date regarding the status of the litigation. Valliere Decl., ¶¶ 5-8, Foster Decl., ¶¶ 5-7; Garcia Decl. ¶¶ 5-7; West Decl. ¶¶ 5-7; and Bonner Decl. ¶¶ 6-9.  Furthermore, Plaintiffs Valliere, Foster, Garcia, and West attended multiple union meetings and two 12-hour days of ratification votes at United Steelworkers Locals 5 and 675, in order to answer class members' questions about the going-forward agreement and support changes to the collective bargaining agreement to comply with Cal. Lab. Code 226.75. Valliere Decl., ¶ 9, Foster Decl., ¶ 8; Garcia Decl. ¶ 8; and West Decl. ¶ 8.

The retaliation and reputational risk Plaintiffs have undertaken by agreeing to be representatives for the Class are real.  By associating their names with this litigation, each has put themselves at risk of retaliation with respect to their jobs while employed by Defendant and future job opportunities. Valliere Decl., ¶ 3, Foster Decl., ¶ 3; Garcia Decl. ¶ 3; West Decl. ¶ 3; and Bonner Decl. ¶ 3-4.  To this point, Plaintiff Bonner adds that since this litigation was initiated, she has applied four times for promotions to positions she was well-qualified, however, each was awarded to lesser qualified co-workers. Bonner Decl. ¶ 5.  It is unknown whether initiating this litigation was directly related to her not being promoted. *Id.*  Moreover, the oil industry in California has a well-connected network.  Plaintiffs took on the reputation of employees who will file a lawsuit against their employer, which has the real potential of jeopardizing future employment, particularly with a connected pool of likely employers in the oil industry.  Valliere Decl., ¶ 3, Foster Decl., ¶ 3; Garcia Decl. ¶ 3; West Decl. ¶ 3; and Bonner Decl. ¶ 3. Plaintiffs have experienced and will continue to endure the stress of knowing that their initiation and prosecution of this lawsuit on behalf of the Class, which has cost their employer millions may negatively impact future employment opportunities.  *Id.*

The Settlement Agreement authorizes a Service Payment of $7,500 to each of the five Plaintiffs. "[T]he Ninth Circuit has recognized that service awards to plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris,* 2011 U.S. Dist. LEXIS 48878, at *28 (citing *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003)); *see also Resnick v. Frank*, 779 F.3d 934, 943 (9th Cir. 2015) ("Incentive payments to class representatives do not, by themselves, create an

impermissible conflict between class members and their representatives."). Courts routinely approve such service payments to compensate plaintiffs for the work done on behalf of the class, the risks they incurred during the course of the class action litigation, and sometimes, to recognize their willingness to act as a private attorney general. *Resnick,* 779 F.3d at 943.

The purpose of service payments is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59.

Subject to this Court's approval, Class Counsel requests the sum of $7,500 to be awarded to each of the five Plaintiffs for their commitment to prosecuting this litigation,  their efforts for nearly four years, risks undertaken for the payment of attorneys' fees and costs if the litigation had been lost, general releases of all claims arising from their employment, stigma upon future employment opportunities for having sued a former employer, as well as having obtained substantial recoveries for every Class Member. *See,* Declarations of Jon Valliere, Eileen Foster, Antonio Garcia, Samantha West and Jinetra Bonner.

The Service Payments requested are consistent with the range of those approved by this District Court. *See Willner v. Manpower Inc.*  No. 11-cv-02846-JST, 2015 U.S. Dist. LEXIS 80697 *30 (N.D. Cal. June 20, 2015) (approving $7,500 service payment as part of $8,750,000 of a wage and hour class action settlement); *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 266 (N.D. Cal. Mar. 19, 2015) (courts typically approve incentive awards up to $10,000); *see also Covillo v. Specialty's Café,* No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837, at *28–29 (N.D. Cal. Mar. 6, 2014) (ordering an $8,000 incentive award for each of the three named plaintiffs); *Chu v. Wells Fargo Invs., LLC,* Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 U.S. Dist. LEXIS 15821, at *15–16 (N.D. Cal. Feb. 16, 2011) (awarding a $10,000 incentive award to two named plaintiffs). In 2018, Judge Gonzalez Rogers approved incentive awards in the amount of $7,500 to each of the named plaintiffs in a similar rest break case filed by Plaintiffs' Counsel, Hadsell Stormer & Renick and Gilbert & Sackman, against Phillips 66 Company, in *Buzas v. Phillips 66 Company*, Case No. 4:17-cv-00163-YGR (March 6, 2018), ECF No. 47.

Service payments awarded in other district courts in California are comparable, *e.g.*, *Boyd v. Bank of Am. Corp.*, No. SACV 13–561 DOC, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) (approving $15,000 for named plaintiff as part of $5.8 million settlement of wage and hour misclassification class action); *La Fleur v. Med. Mgmt. Int'l, Inc.*, No. EDCV 13-00398-VAP, 2014 WL 2967475, at *8 (C.D. Cal. June 25, 2014) (approving enhancement award of $15,000 for each of two named plaintiffs as part of $535,000 wage and hour class action settlement); *Glass v. UBS Financial Services, Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) (Chesney, J.) (approving $25,000 incentive award to each of four named plaintiffs in FLSA overtime wage class action).

Courts have found that an incentive award in this range is warranted particularly when the class representatives have, as here, have demonstrated "a strong commitment to the class." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *17 & n.8 (N.D. Cal. Apr. 22, 2010) (citing *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 430 (2d Cir. 2007) (approving incentive awards of $25,000 to named plaintiffs who were deposed); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award); *In re Conn. Gen. Life Ins. Co.*, 1997 WL 910387, at *14 (C.D. Cal. Feb.13, 1997) (approving $25,000 incentive payments).

In assessing whether a service payment is reasonable, courts may balance "the number of named plaintiffs receiving service payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Staton v. Boeing, Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Here, the aggregate Service Payment of $37,500 (five Plaintiffs at $7,500 each) constitutes approximately 0.24% percent of the gross settlement amount of $15,250,000. Moreover, each Service Payment is about equal to the average class member payment of $7,239.37, which is well within the range of reasonable.

Plaintiffs have invested much personal time and effort in the investigation - both before and after the Action was commenced - and prosecution, and settlement of the case. *See*, Valliere, Foster, Garcia, West, and Bonner Declarations. The requested Service Payments are justified, fair and reasonable, particularly in light of the substantial Settlement Payments to be enjoyed by the Class averaging $7,239.37. Tesoro does not oppose these payments and there is no opposition by any Class Member, which further supports their reasonableness.

E.    **Final Certification of the Class for Settlement Purposes Is Proper.**

The Court should reaffirm its finding at preliminary approval that certification of the class for settlement is proper under Rule 23. *See* Dkt. #117 at 2, 7-9. A district court must give "'undiluted, even heightened, attention in the settlement context' to scrutinize proposed settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, Nos. 15-56014, 15-56025, 15-56059, 15-56061, 15-56064, 15-56067, 2018 U.S. App. LEXIS 1626, at *36 (9th Cir. Jan. 23, 2018) (citation omitted). Here, the numerosity, commonality, typicality, and adequacy of representation prerequisites under Rule 23(a) are met, and common questions of law and fact predominate under Rule 23(b)(3).

1.    **The Settlement Class Satisfies the Rule 23(a) Requirements**

*Numerosity*—Based on the Claims Administrator's review of the data from Defendants, the Settlement Class includes 1,560 members. Johnson Decl. ¶ 16.  The proposed class is, therefore, so large that joinder is not practicable and disposition of their claims as a class will benefit the parties and the Court.  *See Slaven v. BP America, Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000) ("As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members. . . .").

*Commonality*—To show commonality, a plaintiff "must demonstrate that there are questions of fact and law that are common to the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(2)).  Here, Plaintiffs assert that there are common questions of fact and law arising from the putative class members' employment, including whether Defendants failed to authorize and permit class members to take rest periods in accordance with applicable California law because it failed to relieve class members of all work duties during their rest periods.

*Typicality*—"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The claims alleged by the Named Plaintiffs arise out of the challenged practices and common course of conduct by Defendants and are based on the same legal theories as the claims of the putative class members; thus, they are typical of those claims which could be alleged by any member of the proposed class.  Further, the relief sought by Named Plaintiffs is typical of the relief which would be sought by each member of the proposed class if they were to file separate actions.

*Adequacy of Representation*—To determine whether named plaintiffs will adequately represent a class, courts look to (a) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (b) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 462 (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Here, Named Plaintiffs are proper representatives of the proposed class because neither the Named Plaintiffs nor their counsel have any apparent conflicts of interest with the absent members of the Settlement Class and their claims arise out of the same set of facts as those of the Settlement Class. The Named Plaintiffs have been committed to the vigorous prosecution of this case and have reached a resolution they believe is in the best interests of the Settlement Class. Renick Decl. ¶ 62. Moreover, Plaintiffs' counsel, Hadsell Stormer Renick & Dai, Gilbert & Sackman, and Cohelan Khoury & Singer, are highly experienced class counsel, having handled dozens of similar wage and hour class actions, as well as other types of class and complex litigation. Renick Decl., ¶¶ 52-58, 63.

## 2.    The Settlement Class Meets the Requirements of Rule 23(b)

Pursuant to Rule 23(b)(3), class adjudication is proper if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Sandoval v. Roadlink United States Pac., Inc.*, No. EDCV 10-00973 VAP(DTBx), 2011 U.S. Dist. LEXIS 130378, at *2 (C.D. Cal. Oct. 9, 2011).

*Predominance of common issues*—"Common issues predominate over individual issues when the common issues represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Edwards v. The First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015).

Under California law, an employer is required to authorize and permit all employees to take duty free rest periods of 10 minutes per four hours of work or major fraction thereof. Wage Order 1-2001 §12(A); *see Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1032 (2012). In *Augustus*, the California Supreme Court held that "an employer cannot satisfy these obligations under Wage Order 4, subdivision 12(A) while requiring the employees to remain on call." *Id.* at 270. Plaintiffs' primary claim, that Defendants' lack of a rest break policy or practice which authorizes and permits duty-free rest

breaks and its uniform failure to provide such breaks violate California law. This issue is suitable for class adjudication because it pertains to all members of the class. *See Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129, 1150 (2012) ("The lack of a meal/rest break policy and the uniform failure to authorize such breaks are matters of common proof."). Common issues, therefore, predominate over any individual issues.

*Superiority*—"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* at 1023. Here, Plaintiffs assert that the prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendants, and resulting in the impairment of putative class members' rights and the disposition of their interests through actions to which they are not parties. The prosecution of separate actions and individualized litigation would also increase the delay and expense to all parties and the court system. Finally, compared with other methods such as intervention or the consolidation of individual actions, a class action is fairer and more efficient.

## IV. <u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order granting Plaintiffs' Motion for Final Approval of Settlement and enter Judgment.

DATED: November 10, 2020                    Respectfully submitted,

HADSELL STORMER RENICK & DAI LLP
GILBERT & SACKMAN, A LAW CORPORATION
COHELAN KHOURY & SINGER


*/s/- Randy Renick*
Randy Renick
Attorneys for Plaintiffs and Conditionally Certified Class