UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON VALLIERE, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>TESORO REFINING & MARKETING COMPANY LLC, et al.,<br><br>　　　　Defendants. | Case No. 17-cv-00123-JST<br><br>**ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND MOTION FOR FINAL APPROVAL**<br><br>Re: ECF Nos. 120, 123 |

Before the Court is Plaintiffs' unopposed motion for final approval of class action settlement, ECF No. 123, and unopposed motion for a service award, attorney's fees, and costs, ECF No. 120. The Court will grant the motions.

## I.　BACKGROUND

### A.　Parties and Claims

In this putative class action, Plaintiffs allege that Defendants Tesoro Refining and Marketing Company LLC and Tesoro Logistics GP, LLC (collectively, "Tesoro") violated the California Labor Code and the Unfair Competition Law. First Amended Complaint ("FAC"), ECF No. 89. Plaintiffs are or were employed as operators at Tesoro's oil refineries and facilities in Martinez, Carson, Long Beach, Signal Hill, or Wilmington, California. *Id.* ¶ 10. Plaintiffs allege that they were scheduled for 8-hour, 10-hour, or 12-hour shifts during which Tesoro uniformly required them to stay on duty the entire shift. *Id.* ¶ 21. Because they were required to monitor their radios and respond to emergencies at all times during their shifts, they did not receive off-duty rest breaks for every four-hour work period, as required by California law. *Id.* ¶¶ 22-23. Plaintiffs further allege that Tesoro failed to maintain complete and accurate payroll records. *Id.* ¶ 26. Plaintiffs' operative complaint seeks damages, an injunction, and declaratory

relief. *Id.* at 16-17.

### B. Procedural History

Plaintiffs Chris Azpeitea, Eileen Foster, Antonio Garcia, and Samantha Scott filed this suit on January 10, 2017. ECF No. 1. On March 21, 2017, Tesoro filed a motion to dismiss, ECF No. 16, which was mooted by the filing of an amended complaint, ECF No. 21. On March 22, 2017, Jinetra Bonner filed suit in Sacramento Superior Court, alleging the same claims and an additional claim for meal break violations. *Bonner v. Tesoro Refining & Marketing Co., LLC*, Case No. 17-cv-3850-JST, ECF No. 1. On May 3, 2017, Defendants removed *Bonner* to the United States District Court for the Eastern District of California. *Id.* On June 12, 2017, Bonner filed a motion to change venue to the Northern District of California. *Bonner*, ECF No. 6. Pursuant to stipulation, the *Bonner* Court dismissed Bonner's meal break claims to limit her complaint to the same claims alleged in this action. *Bonner*, ECF No. 12. The *Bonner* Court then granted the motion to change venue. *Bonner*, ECF No. 14.

This Court related the two actions on July 25, 2017. *Bonner*, ECF No. 22. On Plaintiffs' motion, ECF No. 49, the Court consolidated the two cases and appointed Hadsell Stormer & Renick, LLP as interim lead counsel. ECF No. 52. Plaintiffs filed a consolidated complaint, ECF No. 56, and Defendants answered, ECF No. 57. On November 23, 2018, Plaintiffs filed a notice of settlement. ECF No. 75. On May 7, 2019, Plaintiffs filed the operative FAC, ECF No. 89, followed by a motion for preliminary approval of class action settlement, ECF No. 90. The Court denied the motion. ECF No. 106.

On November 18, 2019, Plaintiffs filed an unopposed renewed motion for preliminary settlement approval and requested that the Court conditionally certify the class, approve the proposed Notice of Settlement, and set a hearing for final approval. ECF No. 107. The Court granted the motion on June 26, 2020. ECF No. 117. On September 4, 2020, Plaintiffs filed an unopposed motion for attorney's fees, costs, and service award. ECF No. 120. On November 6, 2020, Plaintiffs filed an unopposed motion for final approval of settlement. ECF No. 121.[1]

---

[1] Plaintiffs submitted a corrected motion for settlement, ECF No. 123, on November 10, 2020.

2

1  Tesoro submitted a statement of non-opposition to Plaintiffs' motion for final approval on
2  November 23, 2020.  ECF No. 124.

### C. Terms of the Settlement

The proposed settlement agreement ("Settlement") resolves claims between Tesoro and the settlement class, defined as follows:

> [A]ll current and former employees of Defendants (or any of their affiliates or successors) who worked a rotating 8-hour, 10-hour, or 12-hour shift in operations at any time during the Class Period at the i) Martinez Refinery or Chem Plant in Martinez, California; ii) the Los Angeles Refinery, Carson Operations, in Carson and Long Beach, California; iii) the Los Angeles Refinery, Wilmington Operations, in Wilmington, California; iv) the Tesoro Logistics terminal facilities at the Martinez Refinery; and v) the Long Beach Terminal, T2, Berth 121, and East Hynes in Long Beach, Carson, Signal Hill, and/or Wilmington, California.

ECF No. 121-2 ¶ 23.  "Class Period" is defined as the period from July 19, 2013 through the date of preliminary approval, June 26, 2020.  *Id.* ¶ 24.

Under the Settlement, Defendants agree to pay $15,250,000 (the "Settlement Amount"), as well as the employer's share of any payroll taxes on individual settlement payments.  *Id.* ¶ 32.  The Settlement Amount includes the individual payments to participating class members, the statutory Private Attorneys General Act ("PAGA") payment, service awards to the class representatives, attorney's fees and costs, and administrative costs.  *Id.*  The parties agree to seek approval for a payment of $50,000 to resolve Plaintiffs' PAGA claims, 75% of which ($37,500) shall be paid to the State of California Labor Workforce Development Agency, with the remainder ($12,500) distributed to class members.  *Id.* ¶¶ 39, 59.  Defendants agree not to oppose a service award to each of the named plaintiffs in an amount not to exceed $7,500 apiece.  *Id.* ¶ 58.  The amount awarded to class counsel shall be left to the Court's discretion and Defendants agree only that they will not oppose a reasonable request for attorney's fees and costs.[2]  *Id.* ¶ 51.  Finally, the Settlement originally estimated $45,000 for administrative costs.[3]  *Id.* ¶ 18.  No portion of the

---

[2] Class Counsel seek attorney's fees in the amount of $3,812,500.00 or 25% of the Settlement Amount and $49,093.73 in costs.  ECF No. 120 at 9.

[3] As of November 10, 2020, CAC Services Group, LLC, the settlement administrator, estimates

United States District Court
Northern District of California

Settlement Amount shall revert to Defendants. *Id.* ¶ 32.

After the above deductions, Plaintiffs estimate that the net settlement to be distributed to class members is $11,293,409.44. ECF No. 121-11 ¶ 16. Each class member's payment will be calculated on a *pro rata* basis, based on the number of qualifying shifts worked by each class member during the Class Period. ECF No. 121-2 ¶ 88. After removal of two individuals who submitted requests for exclusion, there are 1,561[4] class members who will receive individual settlement payments ranging from approximately $161.09 to $14,110.24. ECF No. 121-11 ¶ 16. The average net payment to class members is $7,239.37. *Id.* If there are unclaimed funds due to the inability to locate a class member or a class member's failure to cash a settlement check, the funds will be awarded *cy pres* to the Loyola Law School Clinical and Experiential Learning Programs. ECF No. 121-2 ¶ 106.

In exchange, class members will release the following claims against Defendants:

> [T]hose claims that were alleged in the Action and that arose during the Class Period, including in the original complaint filed in the *Valliere* action on January 10, 2017; the complaint filed in the *Bonner* action on March 22, 2017; the First Amended Class Action Complaint; the Second Amended Class Action Complaint; the original Consolidated Class Action Complaint filed on October 12, 2017; the First Amended Consolidated Class Action Complaint; claims for the failure to provide an off-duty rest period (Cal. Lab. Code §§ 226.7, 512, 558), failure to furnish timely and accurate wage statements arising from the failure to provide rest periods (Cal. Lab. Code §§ 226 and 226.3), all claims in connection with rest periods arising under the California Labor Code, California Industrial Welfare Commission Wage Order No. 1-2001, and California's Unfair Competition Law (California Bus. & Prof. Code § 1700 - 17208, *et seq.*), all claims in connection with rest periods and inaccurate wage statements arising under PAGA, California Labor Code §§ 2698, 2699, *et seq.*, for violations of the California Labor Code, including §§ 226, 226.3, 558, 226.7 and Wage Order 1-2001, all claims for attorneys' fees and costs arising from the prosecution of all of the above claims, and all claims for restitution, disgorgement, and injunctive relief.

Amendment to Settlement, ECF No. 121-2 at 53-54. In addition, each of the named plaintiffs, Valliere, Foster, Garcia, West, and Bonner, will release a broader scope of individual claims:

---

the administrative costs to be $19,996.83. ECF No. 123 at 11; ECF No. 121-11 ¶ 17.

[4] At the final approval hearing, Plaintiffs' counsel indicated that an additional member of the class had been identified, bringing the total from 1,560 to 1,561.

4

> [A]ny and all claims, demands, rights, liabilities and causes of action each has had or ever had against any of the Released Parties, whether for economic damages, noneconomic damages, punitive damages, penalties, restitution, injunctive or declaratory relief, interest, attorneys' fees, costs or any other forms of monetary or non-monetary relief in any way arising out of or relating to any facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act at any time on or before the Effective Date, including, but not limited to, any claims arising from or related to their employment or separation of employment, contractual, and/or quasi-contractual relationship with the Defendants and the Released Parties, or any of them; any allegations as to disputed wages, remuneration and/or other compensation due by operation of statute, ordinance, contract, or quasi-contract; any federal, state, or local law prohibiting discrimination or retaliation on the basis of age, race, color, ancestry, religion, disability, sex, national origin, or citizenship or any other protected category, including, without limitation, claims under Title VII, the California Fair Employment and Housing Act, the California Labor Code, FLSA, the California IWC Orders, the Employee Retirement Income Security Act, and the Americans With Disabilities Act or any other similar statutes whatever the city, county, state, or country of enactment; any claims under the Family and Medical Leave Act of 1993 and/or the California Family Rights Act; and any transactions, occurrences, acts, statements, disclosures, or omissions, occurring during the Class Period. Plaintiffs' General Release specifically excludes claims for workers' compensation.

ECF No. 121-2 ¶ 114.

## II.     FINAL APPROVAL OF SETTLEMENT

### A.     Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. Under Ninth Circuit precedent, the district court must balance several factors in this analysis:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). There is no governmental

participant in this case, so the Court does not consider that factor.[5]

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (internal quotation marks, alteration, and citation omitted).

### B. CAFA Compliance

This action is subject to the requirements of the Class Action Fairness Act of 2005 ("CAFA") which requires that, within ten days of the filing of a proposed settlement, each defendant serve a notice containing certain required information upon the appropriate State and Federal officials. 28 U.S.C § 1715(b). CAFA also prohibits a court from granting final approval until ninety days have elapsed since notice was served under § 1715(b). *Id.* § 1715(d). The parties mailed the CAFA notices on May 17, 2019 and again on November 22, 2019. *See* ECF No. 121-2 at 73-83.

### C. Discussion

For the reasons that follow, the Court will grant final approval of the settlement.

#### 1. Adequacy of Notice

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The parties must provide class members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.

---

[5] The 2018 amendments to Rule 23 require the district to court to consider a similar list of factors, including the adequacy of representation by class representatives and class counsel, whether the proposal was negotiated as arm's length, and the adequacy of the relief and equitable treatment of class members. Fed. R. Civ. P. 23(e)(2). These factors were "not intended 'to displace any factor [developed under existing circuits' precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

23(c)(2)(B). "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).

The Court approved the parties' proposed notice plan when it granted preliminary approval. *See* ECF No. 117 at 12. Under the approved notice plan, Plaintiffs retained CAC Services Group, LLC ("CAC") as Claims Administrator. ECF No. 121-11 ¶ 4. As of November 6, 2020, CAC has performed the following services for this action. Starting with the contact information of 1,557 potential class members provided by Defendant, CAC updated the class list using the National Change of Address system. *Id.* at ¶¶ 6(a), (b). On August 7, 2020, CAC mailed the Notice Packets via first-class mail, and posted the Notice and settlement documents to the settlement website.[6] *Id.* ¶¶ 6(d), (e). On September 4, 2020, CAC posted Plaintiffs' Motion for Attorney's Fees, ECF No. 120, to the settlement website. ECF No. 121-11 ¶ 6(f). The Notice informed class members of the deadlines and instructions to dispute the number of qualifying shifts and to object to or opt out of the settlement. *See* ECF No. 121-12 at 7-9.

Twelve individuals who were not part of the original mailing communicated with CAC or Plaintiffs' counsel with requests to be added to the class. ECF No. 121-11 ¶ 6(g). The names of these individuals were submitted to Defendants for investigation, and it was determined that five of the twelve should be added as potential class members. *Id.* One of the five supplemental class members opted out, so CAC sent the additional four Notice Packets via first-class mail on November 4, 2020. *Id.* ¶ 6(h). The seven members who were not added as class members were sent denial letters. *Id.* ¶ 6(g).

Of the 1,561 Notice Packets mailed by CAC, 35 were returned by USPS. *Id.* ¶ 9. For 22 of those 35, CAC was able to locate new addresses, and the Notice Packets were successfully re-mailed. *Id.* Thus, in total, only 13 Notice Packets were ultimately undeliverable. *Id.*

The deadline for class members to dispute their individual information or to object to or opt out of the settlement was October 9, 2020. ECF No. 123 at 17; *see also* ECF No. 121-12 at 9-

---

[6] The settlement website established for this action is www.tesororestbreakclassactionsettlement.com. ECF No. 121-11 ¶ 6(e).

10. As of November 6, 2020, CAC had received no objections and only two class members had chosen to opt out. ECF No. 121-11 ¶¶ 11-12. CAC received communications from 78 class members who disputed their dates worked or qualifying shifts. *Id.* ¶ 13. In response to these disputes, Defendants provided additional qualifying shifts for 429 class members, which included adjustments for 71 of those individuals who submitted disputes. *Id.* ¶¶ 13-14. CAC communicated to the 71 people eligible for adjustments and with the remaining 7 people who disputed their qualifying shifts stating the results of the investigation. *Id.* ¶ 14. As a result of the new data provided by Defendants, 163 class members who did not file a dispute will be entitled to additional qualified shifts and will be compensated based on the adjusted data. *Id.* The new data also showed that there were 192 class members whose qualifying shift information decreased; however, these individuals will still be compensated based on the original data provided in their Notice Packets. *Id.*

In light of the above procedures, which adhere to the previously approved notice plan, the Court finds that the parties have sufficiently provided notice to the settlement class members.

### 2. Fairness, Adequacy, and Reasonableness

#### a. Adequate Representation of the Class

The Ninth Circuit has explained that "adequacy of representation . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego*, 213 F.3d at 462 (citation omitted).

During the preliminary approval stage, the Court found no evidence of a conflict between the class and the representatives or counsel, ECF No. 117 at 8-9, and no contrary evidence has emerged. Indeed, Class Counsel has vigorously prosecuted this case through extensive investigation and discovery, and a series of formal mediation sessions. ECF No. 121-1 at 7-8. Likewise, class representatives have engaged with fellow class members, including at multiple union meetings and two 12-hour days of ratification votes at United Steelworkers Locals 5 and 675. ECF No. 123 at 30. The Court concludes that this factor weighs in favor of approval.

//

### b. Strength of Plaintiffs' Case and Risks of Litigation

Approval of a class settlement is appropriate when "there are significant barriers plaintiffs must overcome in making their case." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez v. West Publ'ng Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

Plaintiffs here face significant obstacles if the case were to proceed toward trial, as they acknowledge. ECF No. 123 at 21. For example, federal court interpretation of California rest break requirements has not always been favorable to Plaintiffs' position. *See id.* at 21-22 (citing *Bell v. Home Depot U.S.A., Inc.*, No. 2:12-cv-02499 JAM-CKD, 2017 WL 1353779 (E.D. Cal. Apr. 10, 2017) and *Stewart v. San Luis Ambulance, Inc.*, 878 F.3d 883, 886–87 (9th Cir. 2017)). In addition to this uncertainty, any relief for class members would be substantially delayed if the case went forward, based on the likelihood of summary judgment motion practice by Defendants, ECF No. 123 at 22, and the inherently complex and lengthy litigation involved in wage and hour class actions, *id.* at 22-23. The Court finds that this factor also weighs in favor of approval.

### c. Effectiveness of Distribution Method, Terms of Attorney's Fees, and Supplemental Agreements

The Court must consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). Under the Settlement, each class member will receive a cash payment calculated based on the number and length of qualifying shifts that the class member worked during the class period. ECF No. 123 at 28. In the Notice Packet, class members were provided with their number of qualifying shifts and estimated settlement share, ECF No. 121-12 at 4, and were given instructions on how to dispute the information, *id.* at 7. Seventy-eight class members filed disputes, and CAC adjusted the number of qualifying periods for 71 of those individuals, as well as for 163 other class members, based on new information from Defendants. ECF No. 121-11 ¶¶ 13-14. If the final settlement is approved, CAC will issue payments based on these qualifying periods. *Id.* ¶ 16. This process was a proper and effective method for the calculation and confirmation of the settlement distribution.

The Court must also evaluate in detail "the terms of [the] proposed award of attorney's

fees," Fed. R. Civ. P. 23(e)(2)(C)(iii), and must determine whether there are supplemental "agreement[s] required to be identified under Rule 23(e)(3)," Fed R. Civ. P. 23(e)(2)(C)(iv). As discussed below in evaluation of Plaintiffs' motion for fees and costs, the requested attorney's fees are reasonable. Plaintiffs have not identified any other agreements made in connection with the Settlement. These factors weight in favor of approval.

### d. Equitable Treatment of Class Members

Consistent with Rule 23's instruction to consider whether "the proposal treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D), the Court considers whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class," *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted).

The Settlement uses the same formula to calculate the settlement share for each class member, and, accordingly, treats all class members equally. ECF No. 123 at 28; *see also* ECF No. 121-2 at 26-27. Accordingly, the Court finds that the Settlement treats class members equitably and that this factor supports approval. *See Hefler*, 2018 WL 6619983, at *8; *see also In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. Jul. 22, 2019) (finding equitable to class members an allocation based on pro rata distribution).

### e. Range of Recovery

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting *Officers for Justice*, 688 F.2d at 628). "In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

The Settlement provides that Defendants will pay a total of $15,250,000.00. ECF No. 121-2 at 12. Based on the records before the parties during the mediation sessions in June 2018, a maximum recovery for Plaintiffs' rest break and derivative claims would have totaled

1   $30,939,490.00. ECF No. 123 at 23. Therefore, the gross settlement recovers approximately 50%
2   of the potential damages. *Id.* This settlement avoids the litigation challenges and delays discussed
3   above, and is consistent with or better than settlements approved in similar class actions. *See, e.g.,*
4   *Dynabursky v. Alliedbarton Sec. Servs., LP*, No. SACV 12-2210-JLS (RNBx), 2016 WL 8921915,
5   at *5 (C.D. Cal. Aug. 15, 2016) (approving a settlement representing 27.5% of defendants'
6   maximum potential liability in wage and hour action); *Vasquez v. Packaging Corp. of Am.*, No.
7   CV 19-1935 PSG (PLAx), 2020 WL 2559490, at *8 (C.D. Cal. Mar. 27, 2020) (collecting cases
8   showing approving settlements for between 25 and 35 percent of total potential liability in wage
9   and hour cases). The Court concludes that the Settlement falls within the range appropriate for
10  approval.

### f. Extent of Discovery

"[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego*, 213 F.3d at 459 (internal quotation marks and citations omitted). However, the extent of discovery completed supports approval of a proposed settlement, especially when litigation has "proceeded to a point at which both plaintiffs and defendants ha[ve] a clear view of the strengths and weaknesses of their cases." *Chun-Hoon*, 716 F. Supp. 2d at 852 (internal quotation marks and citation omitted).

Here, the parties conducted sufficient discovery to make an informed decision about the adequacy of the Settlement. The parties have spent almost four years engaged in this litigation, during which Class Counsel exchanged and reviewed extensive discovery, took and defended several depositions, and conducted dozens of interviews with putative class members. ECF No. 123 at 15-16, 24; *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (finding the parties were sufficiently informed about the case prior to settling because they engaged in discovery, took depositions, briefed motions, and participated in mediation). This factor weighs in favor of approval.

### g. Counsel's Experience

Class Counsel recommends the proposed settlement be approved as serving the best

11

interests of the class. ECF No. 123 at 24-25. Class Counsel's advocacy in favor of the Settlement supports its approval.[7]

### h.  Absence of Collusion and Arm's Length Negotiations

"Where . . . the parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness," *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048-49 (9th Cir. 2019) (internal quotations omitted), and the Court must examine the risk of collusion with "an even higher level of scrutiny for evidence of collusion or other conflicts of interest," *In re Bluetooth*, 654 F.3d at 946. Signs of potential collusion include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing provision"; and (3) an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund. *Id.* at 947. If "multiple indicia of possible implicit collusion" are present, the Court has a "special 'obligat[ion] to assure itself that the fees awarded in the agreement [are] not unreasonably high.'" *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

These factors do not point to collusion here. Counsel request an award of 25% of the common fund, which is the "benchmark award for attorney fees," *Hanlon*, 150 F.3d at 1029, and an amount that "does not raise any concerns regarding collusion." *Woodard v. Labrada*, No. EDCV 16-00189 JGB (SPx), 2019 WL 4509301, at *11 (C.D. Cal. Apr. 23, 2019); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-05944-JST, 2020 WL 1873554, at *9 (N.D. Cal. Mar. 11, 2020) (request for 23.66% award not an indicium of collusion). The settlement agreement does contain a clear sailing provision, which provides that "Defendants will not oppose a reasonable[8] request for attorneys' fees and costs." ECF No. 121-2 at 16. Nonetheless, "the

---

[7] As the Court has frequently acknowledged before, it considers this factor but gives it little weight. "Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." *Principles of the Law of Aggregate Litigation* § 3.05 cmt. a (2010).

[8] The parties' use of the word "reasonable" in this sentence may actually create an opportunity for Defendants to object, but the Court assumes to the contrary in order to give the greatest effect to the class-protection policies underlying *Bluetooth*.

1 Court finds no cause for concern because Class Counsel's fee will be awarded from the same
2 common fund as the recovery to the class." *Cathode Ray Tube*, 2020 WL 1873554 at *9. Lastly,
3 the settlement does not contain a reversion clause.

### i. Reaction of the Class

Finally, the Court considers the class's reaction to the Settlement. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1043 (citation omitted).

The class reaction to this settlement was very favorable. No class member filed an objection to the Settlement and only two class members requested exclusion. ECF No. 121-11 ¶¶ 11-12. Although three class members submitted objections to Plaintiffs' first motion for preliminary approval on the ground that the Settlement interfered with collective bargaining agreements with Defendant, ECF No. 96 at 2, the Court determined in granting preliminary approval that "[t]he issue of dues deductions will not be resolved in this forum," ECF No. 117 at 12 n.6. The deadline to object to final approval of the Settlement has now passed and the previous objectors have not raised their prior or any other objection. ECF No. 121-1 ¶ 24. The Court therefore concludes this factor weighs in favor of approval. *See Chun-Hoon*, 716 F. Supp. 2d at 852 (finding that a 4.86% opt out rate strongly supported approval).

### 3. Balance of Factors

All of the above factors support granting final approval. The Court finds that the Settlement is fair, adequate, and reasonable, and grants Plaintiffs' motion for final approval.

## III. ATTORNEY'S FEES

### A. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either

13

the lodestar method or the percentage-of-recovery method" to assess the reasonableness of the requested attorney's fee award. *Id.* at 942. "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.* The Ninth Circuit maintains a well-established "benchmark for an attorneys' fee award in a successful class action [as] twenty-five percent of the entire common fund." *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). Courts in the Ninth Circuit generally start with the 25 percent benchmark and adjust upward or downward depending on:

> the extent to which class counsel "achieved exceptional results for the class," whether the case was risky for class counsel, whether counsel's performance "generated benefits beyond the cash settlement fund," the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)). In addition, courts often crosscheck the amount of fees against the lodestar. "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. Regardless whether the court uses the lodestar or percentage approach, the main inquiry is whether the fee award is "reasonable in relation to what the plaintiffs recovered." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

**B.    Discussion**

Class Counsel seeks the Court's approval of a $3,812,500.00 attorney's fee award, representing 25% of the gross settlement amount. ECF No. 120 at 9. Class Counsel argue that this award is reasonable based on the "high caliber skill and expertise of Class Counsel, and efficient litigation of the action, [which] resulted in a settlement that confers a substantial benefit to the Class." *Id.* at 9. In addition, Class Counsel points out the risk of this litigation, taken on a

contingency basis, and the potential for lengthy litigation but for the successfully negotiated settlement. *Id.* at 9-10.

The award requested aligns with the Ninth Circuit's 25% benchmark attorney's fee. *See In re High-Tech Employee Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5158730, at *6 (N.D. Cal. Sept. 2, 2015) ("Where the percentage-of-recovery method is employed, it is well established that 25% of a common fund is a presumptively reasonable amount of attorney's fees." (citing *In re Bluetooth*, 654 F.2d at 1311)). The Court finds this request reasonable and sees no reason for a downward adjustment.

The lodestar for this award further confirms its reasonableness. Among the three Class Counsel firms, the combined lodestar as of September 4, 2020 was $2,078,203.50. ECF No. 120 at 21. To reach the requested award, Class Counsel asked the Court to approve a multiplier of 1.84. *Id.* However, as of November 10, 2020, at the time the motion for final approval was submitted, the updated lodestar totaled $2,203,088.50, bringing the multiplier to 1.73. ECF No. 123 at 27. Class Counsel have submitted information detailing the hours expended in this action. ECF No. 121-1 at 11-12; ECF No. 121-2 at 65; ECF No. 121-3 at 3; ECF No. 121-4; ECF No. 121-5. They have also demonstrated that the hourly rates used in their calculations are consistent with billing rates for similarly experienced attorneys in their legal market. ECF No. 120-1 at 15-16; ECF No. 120-4 at 9; ECF No. 120-6 at 16. For the purposes of the lodestar cross-check, the Court finds that the billing rates and hours billed are reasonable. Moreover, awards of between one and four times the lodestar are typical in common fund cases. *See Vizcaino*, 290 F.3d at 1051 n.6 (finding a multiplier range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the 1.0 to 4.0 range and 54% in the 1.5 to 3.0 range). The Court approves the $3,812,500.00 attorney's fee award.

**IV. COSTS**

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted). To support an expense award, plaintiffs should file an itemized list of their expenses by category and the total amount advanced for each category,

allowing the court to assess whether the expenses are reasonable. *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

Class Counsel submit that they have incurred $49,093.73 in costs. ECF No. 120 at 24. The three firms each submitted a detailed list of expenses. *See* ECF No. 120-3 at 27-29; ECF No. 120-5 at 8; ECF No. 120-7 at 22. The Court has reviewed Class Counsel's expenses and finds them reasonable. Therefore, the Court grants the request for reimbursement of costs.

## V.   SERVICE AWARD

### A.   Legal Standard

"[Incentive] awards are discretionary and are intended to compensate class representatives for work done on behalf of the class . . . ." *Rodriguez*, 563 F.3d at 958 (internal citation omitted). The Court should consider:

> (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in purs[uing] it; and (4) the risks to the plaintiff in commencing the litigation, including reasonable fears of workplace retaliation, personal difficulties, and financial risks.

*Wren*, 2011 WL 1230826, at *32 (citations omitted). Indeed, "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

### B.   Discussion

The five named plaintiffs each request an incentive awards of $7,500. ECF No. 123 at 27. This award amount exceeds the typical incentive award in the Ninth Circuit, where $5,000 is presumptively reasonable. *See Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount."). Plaintiffs argue, however, that $7,500 is appropriate because each of the named plaintiffs "provided relevant and unique information to Class Counsel," "spent considerable time pursuing the litigation," and because each named plaintiff faced "retaliation and

reputational risk . . . by agreeing to be representatives for the Class." ECF No. 123 at 29-30. The aggregate incentive awards account for 0.24% of the gross settlement. *Id.* at 32. Defendants do not oppose the awards, nor have any class members objected. *Id.*

To determine the reasonableness of a requested incentive payment, courts consider the proportionality between the incentive payment and the range of class members' settlement awards. *Burden v. SelectQuote Ins. Servs.*, No. 10-cv-5966-LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013). Here, the 1,557 class members will receive settlement payments of, on average, $7,239.37, and the highest individual payment will be approximately $14,110.24. ECF No. 123 at 29. In other words, the requested incentive awards are roughly equal to the average amount that class members will recover, and some class members will receive settlement payments that exceed the requested awards. *See Wren*, 2011 WL 1230826, at *36-37 (approving $5,000 awards to each of 24 class representatives, noting that although a majority of class members received less than $5,000, many received more than $5,000).

Courts will grant an award that exceeds $5,000 when warranted. *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014). In *Dyer*, the court awarded two $10,000 service awards where the defendant would pay incentive awards separately, rather than pulling from the common fund, and where the award was within one order of magnitude of the average class pay-out. *Id.* at 336. In *Bellinghausen*, the court awarded a $15,000 incentive payment, which was 2% of the gross settlement fund, where the plaintiff invested 73 hours in the case and jeopardized job opportunities to discharge his role as class representative. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015).

Here, each of the five named plaintiffs provided varied but significant support to this matter over the course of the litigation. For example, Plaintiff Valliere estimates having spent 65 hours on this matter, which included attending two days of mediation and having his deposition taken by Defendants. ECF No. 121-6 at 4-5. The remaining named plaintiffs estimate spending between 35-45 hours. *See* ECF No. 121-10 at 5 (Plaintiff Bonner estimates 35 hours, which also included having her deposition taken); ECF No. 121-8 at 4 (Plaintiff Garcia estimates 40 hours); ECF No. 121-9 at 4 (Plaintiff West estimates 40 hours); ECF No. 121-7 at 4 (Plaintiff Foster

estimates 45 hours). Plaintiffs Valliere, Foster, Garcia and West attended multiple union meetings and participated in two days with United Steelworkers Locals 5 and 675 to support the ratification vote and answer class member questions. *Id.* at 30. All five named plaintiffs have been involved in the matter since 2017, ECF No. 123 at 29, and each of them spent time gathering information for Class Counsel, providing information to fellow class members, and reviewing the settlement prior to its approval. *Id.* at 29-30.

Additionally, Plaintiffs argue that each of these individuals put their reputations at risk by associating their names with this litigation. ECF No. 123 at 30. They explain that "the oil industry in California has a well-connected network" and that named plaintiffs "took on the reputation of employees who will file a lawsuit against their employer, which has the real potential of jeopardizing future employment, particularly with a connected pool of likely employers in the oil industry." *Id.* Plaintiff Bonner contends that she has applied four times for promotions that she believes she is qualified for, and has been denied, which she believes may be related to this litigation. ECF No. 121-10 at 4. In sum, arguing that "[t]he purpose of service payments is to 'compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertak[en] in bringing the action, and sometimes, to recognize their willingness to act as a private attorney general,'" Plaintiffs argue that the requested awards are justified, fair and reasonable. ECF No. 123 at 31 (quoting Rodriguez, 563 F.3d at 958-59).

The Court concludes that service awards of $7,500 are reasonable, given the effort expended by each of the named plaintiffs; the fact that two of them sat for depositions; the potential for, and perhaps even evidence of, adverse consequences to their employment; and the low ratio between the service awards and the average recovery by individual class members. The Court therefore approves service awards to each of the named plaintiffs in the amount of $7,500.

## CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

1. For the reasons set forth in its June 26, 2020 order, ECF No. 117, the Court confirms its certification of the class for settlement purposes only.

2. The Court grants final approval of the proposed settlement agreement.

18

3. The Court awards Class Counsel $3,812,500.00 in attorney's fees.

4. The Court awards Class Counsel $49,093.73 in costs.

5. The Court grants named plaintiffs Jon Valliere, Eileen Foster, Antonio Garcia, Samantha West, and Jinetra Bonner each a service award of $7,500.00.

6. The individuals who elected to opt out of the settlement are excluded from the class.

7. The Court retains continuing jurisdiction over this settlement solely for the purposes of enforcing the agreement, addressing settlement administration matters, and addressing such post-judgment matters as may be appropriate under the Court rules and applicable law.

**IT IS SO ORDERED.**

Dated: December 16, 2020



JON S. TIGAR
United States District Judge